In the United States Court of Appeals
for the Seventh Circuit

_____

LISA JOHNSON, ET AL.
*Plaintiffs-Appellants,*

v.

AMAZON.COM SERVICES LLC,
*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 1:23-cv-00685, Hon. Thomas M. Durkin

_____

**PLAINTIFFS-APPELLANTS' OPENING BRIEF
AND MOTION FOR CERTIFICATION TO THE ILLINOIS SUPREME
COURT PURSUANT TO CIRCUIT RULE 52**

_____

Maureen A. Salas
   *Counsel of Record*
Douglas M. Werman
John J. Frawley
WERMAN SALAS. P.C.
77 W. Washington St.
Suite 1402
Chicago, IL 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
msalas@flsalaw.com
dwerman@flsalaw.com
jfrawley@flsalaw.com

Don J. Foty
HODGES & FOTY, LLP
2 Greenway Plaza
Suite 250
Houston, TX 77046
Tel: (713) 523-0001
Fax: (713) 523-1116
dfoty@hftrialfirm.com

*Counsel for Plaintiffs-Appellants*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1028

Short Caption: Lisa Johnson, et al v. Amazon.com Services LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

　　Lisa Johnson and Gale Miller Anderson

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

　　Werman Salas P.C., Hodges & Foty, LLP

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　　　N/A

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　　N/A

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

　　N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

　　N/A

Attorney's Signature: *Maureen A Salas*　　Date: 03/20/2024

Attorney's Printed Name: Maureen A. Salas

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ✓　**No** ☐

Address: Werman Salas P.C. 77 W. Washington St., Suite 1402, Chicago, IL 60602

Phone Number: 312-419-1008　　Fax Number: 312-419-1025

E-Mail Address: msalas@flsalaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1028

Short Caption: Lisa Johnson, et al v. Amazon.com Services LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐       **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Lisa Johnson and Gale Miller Anderson

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Werman Salas P.C., Hodges & Foty, LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)        Identify all its parent corporations, if any; and

        N/A

    ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: _DougWa_     Date: 03/20/2024

Attorney's Printed Name: Douglas M. Werman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: Werman Salas P.C. 77 W. Washington St., Suite 1402, Chicago, IL 60602

Phone Number: 312-419-1008     Fax Number: 312-419-1025

E-Mail Address: dwerman@flsalaw.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1028

Short Caption: Lisa Johnson, et al v. Amazon.com Services LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Lisa Johnson and Gale Miller Anderson

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Werman Salas P.C., Hodges & Foty, LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: _John J. Frawley (signature)_    Date: 03/20/2024

Attorney's Printed Name: John J. Frawley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]  No [X]

Address: Werman Salas P.C. 77 W. Washington St., Suite 1402, Chicago, IL 60602

Phone Number: 312-419-1008    Fax Number: 312-419-1025

E-Mail Address: jfrawley@flsalaw.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1028

Short Caption: Lisa Johnson, et al. v. Amazon.com Services, LLC

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

<br>

☐　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

　　Lisa Johnson and Gale Miller Anderson

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

　　Hodges & Foty, LLP, Werman Salas P.C.

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　　　N/A

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　　N/A

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

　　N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

　　N/A

Attorney's Signature: _Dn_　　　　Date: 3/20/2024

Attorney's Printed Name: Don J. Foty

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). 　Yes ☐　No ☑

Address: 2 Greenway Plaza, Suite 250, Houston TX 77046

Phone Number: 713 523 0001　　　　Fax Number: 713 523 1116

E-Mail Address: dfoty@hftrialfirm.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

JURISDICTIONAL STATEMENT ............................................................................ 1

STATEMENT ON ISSUES PRESENTED FOR REVIEW ......................................... 2

STATEMENT OF THE CASE....................................................................................... 2

SUMMARY OF ARGUMENT .....................................................................................5

STANDARD OF REVIEW............................................................................................6

ARGUMENT ................................................................................................................7

    I.    The Court should certify the question of whether the IMWL incorporates the PPA to the Illinois Supreme Court. ............................ 7

        A.    Plaintiffs' proposed question is outcome determinative. ............. 8

        B.    Plaintiffs' proposed question is of vital public concern. ............... 8

        C.    Plaintiffs' proposed question is likely to recur. ......................... 10

        D.    The Illinois Supreme Court has not offered guidance on Plaintiffs' proposed question and there is "genuine uncertainty" regarding that question. ....................................... 11

        E.    Additional factors often considered by the Seventh Circuit support certification of Plaintiffs' proposed question................. 12

        F.    Persuasive authority from other federal circuit courts supports certification of Plaintiffs' proposed question. .............. 14

    II.    Alternatively, the Court should reverse the dismissal of Plaintiffs' IMWL claims because the IMWL does not incorporate the PPA. ........ 16

        A.    The IMWL's plain text shows it does not incorporate the PPA because it is silent as to the PPA....................................... 16

        B.    The IMWL explicitly adopts non-PPA provisions of the FLSA, meaning its exclusion of the PPA is purposeful.............. 19

C.      Under the Illinois Department of Labor's interpretation of
        the IMWL, to which courts must defer, the IMWL does not
        generally incorporate the PPA. .................................................. 20

D.      The IMWL's history shows the Illinois legislature did not
        intend for the IMWL to incorporate the PPA. ........................... 24

E.      Other courts have repeatedly refused to read the PPA into
        state-based wage laws that parallel the IMWL. ........................ 26

CONCLUSION ........................................................................................ 28

# TABLE OF AUTHORITIES

## Cases

*Amaya v. DGS Construction, LLC,*
278 A.3d 1216 (Md. 2022) ............................................................. 27

*Anderson v. Mt. Clemens Pottery,*
328 U.S. 680 (1946) ........................................................................ 22

*Arizonans for Off. Eng. v. Arizona,*
520 U.S. 43 (1997) .......................................................................... 12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................... 6

*Bogie v. Rosenberg,*
705 F.3d 603 (7th Cir. 2013) .......................................................... 16

*Brucker v. Mercola,*
227 Ill. 2d 502, 886 N.E.2d 306 (2007) ................................... 24, 25

*Buero v. Amazon.com Servs., Inc.,*
21 F.4th 623 (9th Cir. 2021) ........................................................... 15

*Buero v. Amazon.com Servs., Inc.,*
369 Or. 339 P.3d 1182 (2022) ......................................................... 15

*Buero v. Amazon.com Servs., Inc.,*
370 Or. 502 P.3d 471 (2022) ........................................................... 15

*Busk v. Integrity Staffing Solutions, Inc.,*
905 F.3d 387 (6th Cir. Sept. 19, 2018) .......................................... 23

*Calderon-Ramirez v. McCament,*
877 F.3d 272 (7th Cir. 2017) ............................................................ 6

*Chagoya v. City of Chicago,*
992 F.3d 607 (7th Cir. 2021) ........................................... 4, 12, 27, 28

*Consolidation Coal Co. v. Dir., Off. of Workers' Comp. Programs, United
States Dep't of Lab.,*
911 F.3d 824 (7th Cir. 2018) ........................................................... 15

*Cortez v. Target Corporation,*
Case No. 1:23-cv-1435 (N.D. Ill. filed Jan. 22, 2024) .................... 11

*Cothron v. White Castle Sys., Inc.,*
20 F.4th 1156 (7th Cir. 2021) .............................................. 8, 12, 13

*Cothron v. White Castle Sys., Inc.,*
2023 IL 128004, 216 N.E.3d 918 (2023) .......................................... 8

*Craig v. FedEx Ground Package Sys., Inc.*,
300 Kan. 788, 335 P.3d 66 (2014)........................................................ 8, 13

*Craig v. FedEx Ground Package Sys., Inc.*,
686 F.3d 423 (7th Cir. 2012)........................................................ 8, 9, 10, 14

*Cutchin v. Beard*,
171 N.E.3d 991 (Ind. 2021)........................................................ 8

*Cutchin v. Robertson*,
986 F.3d 1012 (7th Cir. 2021)........................................................ 8, 10, 11

*DeGrand v. Motors Ins. Corp.*,
903 F.2d 1100 (7th Cir. 1990)........................................................ 14

*Department of Labor v. MCC Health Care*,
790 N.E.2d 38 (Ill. App. Ct. 2003)........................................................ 24

*Driver v. AppleIllinois, LLC*,
917 F. Supp. 2d 793 (N.D. Ill. 2013)........................................................ 18

*Finite Res., Ltd. v. DTE Methane Res., LLC*,
44 F.4th 680 (7th Cir. 2022) ........................................................ 7

*Five Points Rd. Joint Venture v. Johanns*,
542 F.3d 1121 (7th Cir. 2008)........................................................ 24

*Frlekin v. Apple, Inc.*,
8 Cal. 5th 1038, 457 P.3d 526 (2020) ........................................................ 15

*Frlekin v. Apple, Inc.*,
870 F.3d 867 (9th Cir. 2017)........................................................ 15, 27

*Garcia-Hernandez v. U.S.*,
915 F.3d 558 (8th Cir. 2019)........................................................ 28

*Graham v. City of Chicago*,
828 F. Supp. 576 (N.D. Ill. 1993)........................................................ 10, 11

*Harrington v. DeVito*,
656 F.2d 264 (7th Cir. 1981)........................................................ 28

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
280 F.R.D. 388 (N.D. Ill. 2011)........................................................ 10, 11

*Heimbach v. Amazon.com, Inc.*,
255 A.3d 191 (Pa. 2021)........................................................ 27

*Hines v. Dep't of Pub. Aid*,
221 Ill. 2d 222, 850 N.E.2d 148 (2006)........................................................ 16

*IBP, Inc. v. Alvarez*,
546 U.S. 21 (2005)........................................................ 22

*In re Amazon.com, Inc.,*
255 A.3d 191 (Pa. 2021) .................................................................................. 14

*In re Amazon.com, Inc.,*
942 F.3d 297 (6th Cir. 2019) ....................................................................... passim

*In re Hernandez,*
2020 IL 124661, 161 N.E.3d 135 (2020) ......................................................... 13

*In re Zimmer, NexGen Knee Implant Prod. Liab. Litig.,*
884 F.3d 746 (7th Cir. 2018) ............................................................................. 7

*In re: Amazon.Com, Inc.*
*Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*
905 F.3d 387 (6th Cir. 2018) ........................................................................... 19

*Iwan Ries & Co. v. City of Chicago,*
2019 IL 124469, 160 N.E.3d 916 (2019) ......................................................... 26

*Kean v. Wal-Mart Stores, Inc.,*
235 Ill. 2d 351, 919 N.E.2d 926 (2009) ........................................................... 21

*Kerbes v. Raceway Assocs., LLC,*
2011 IL App (1st) 110318, 961 N.E.2d 865 (2011) ................................... 22, 24

*Khan v. Deutsche Bank AG,*
2012 IL 112219, 978 N.E.2d 1020 (2012) ....................................................... 26

*Kuba v. Ristow Trucking Co.,*
811 F.2d 1053 (7th Cir. 1987) ......................................................................... 14

*Lax v. Mayorkas,*
20 F.4th 1178 (7th Cir. 2021) ........................................................................... 6

*League of Women Voters of Indiana, Inc. v. Sullivan,*
5 F.4th 714 (7th Cir. 2021) ............................................................................... 7

*Levy v. W. Coast Life Ins. Co.,*
44 F.4th 621 (7th Cir. 2022) ............................................................................. 6

*Lieb v. Judges' Ret. Sys. of Illinois,*
314 Ill. App. 3d 87, 731 N.E.2d 809 (2000) ................................................... 24

*Lora v. United States,*
599 U.S. 453 (2023) .................................................................................... 16, 17

*Merk v. Jewel Companies, Inc.,*
848 F.2d 761 (7th Cir. 1988) ........................................................................... 28

*Metzger v. DaRosa,*
209 Ill. 2d 30, 805 N.E.2d 1165 (2004) ..................................................... 13, 19

*Mitchell v. JCG Indust., Inc.*,
745 F.3d 837 (7th Cir. 2014) ............................................................ passim

*Molina v. First Line Solutions, LLC*,
566 F. Supp. 2d 770 (N.D. Ill. 2007) ........................................................ 18

*Moore v. Chicago Park Dist.*,
2012 IL 112788, 978 N.E.2d 1050 (2012) .................................................. 16

*Nehmelman v. Penn Nat. Gaming, Inc.*,
822 F. Supp. 2d 745 (N.D. Ill. 2011) .................................................. 10, 11

*Ochoa-Salgado v. Garland*,
5 F.4th 615 (5th Cir. 2021) .................................................................... 27

*People ex rel. Birkett v. City of Chicago*,
202 Ill. 2d 36, 779 N.E.2d 875 (2002) ...................................................... 22

*Pietrzycki v. Heights Tower Serv., Inc.*,
290 F. Supp. 3d 822 (N.D. Ill. 2017) ........................................................ 11

*Pisciotta v. Old Nat. Bancorp*,
499 F.3d 629 (7th Cir. 2007) ...................................................... 7, 26, 27

*Roberts v. State of Arizona*,
512 P.3d 1007 (Ariz. 2022) .................................................................... 26

*Rumsfeld v. United Techs. Corp.*,
315 F.3d 1361 (Fed. Cir. 2003) .............................................................. 27

*Shirley v. Russell*,
69 F.3d 839 (7th Cir. 1995) .................................................................... 14

*Spoerle v. Kraft Foods Global, Inc.*,
614 F.3d 427 (7th Cir. 2010) .................................................................. 18

*State Farm Mut. Auto. Ins. Co. v. Pate*,
275 F.3d 666 (7th Cir. 2001) ............................................................ 12, 13

*Stroe v. I.N.S.*,
256 F.3d 498 (7th Cir. 2001) .................................................................. 28

*Tennessen v. Illinois Bell Tel. Co.*,
No. 15 C 2784, 2016 WL 521046 (N.D. Ill. Feb. 10, 2016) ...................... 9, 11

*United States v. NCR Corp.*,
688 F.3d 833 (7th Cir. 2012) .................................................................... 6

*Wagner v. Air Methods Corporation*,
539 F. Supp. 3d 1157 (D. Colo. 2021) ...................................................... 23

*Williams-Green v. J. Alexander's Restaurants, Inc.*,
277 F.R.D. 374 (N.D. Ill. 2011) ........................................................ 10, 11

*Zahn v. N. Am. Power & Gas, LLC,*
815 F.3d 1082 (7th Cir. 2016)................................................................7, 8, 12

*Zahn v. N. Am. Power & Gas, LLC,*
2016 IL 120526, 72 N.E.3d 333 (2016)...................................................7

**Statutes**

18 U.S.C. § 924.............................................................................................17

28 U.S.C. § 1291.............................................................................................2

28 U.S.C. § 1331.............................................................................................2

28 U.S.C. § 1332.............................................................................................1

28 U.S.C. § 1367.............................................................................................2

29 U.S.C. § 201 *et seq.*.......................................................................... passim

29 U.S.C. § 203(o)........................................................................................17

29 U.S.C. § 254(a)..........................................................................................4

29 U.S.C. § 254(b)..........................................................................................4

35 ILCS § 5/201 *et seq.*...............................................................................10

755 ILCS § 5/27–6........................................................................................17

820 ILCS § 105/1 *et seq.*,..................................................................... passim

820 ILCS § 115/1 *et seq.*..........................................................................1, 4

Indiana Code § 34-462.................................................................................14

P.A. 77-1451, § 1, eff. Sept. 6, 1971............................................................25

Portal-to-Portal Act of 1947,
29 U.S.C § 251, *et seq.*......................................................................... passim

**Other Authorities**

79th Ill. Gen. Assem., Senate Proceedings,
June 4, 1976...........................................................................................25, 26

79th Ill. Gen. Assem., Senate Proceedings,
December 16, 1976.......................................................................................25

**Regulations**

19 Ill. Reg. 6573..........................................................................................22

26 FR 190......................................................................................................21

29 C.F.R. § 785.7.........................................................................................23

29 C.F.R. 785.33 – 785.41 ................................................................... 21

8 Ill. Reg. 18473 (Oct. 5, 1984) ......................................................... 22

Ill. Admin. Code tit. 56, § 200.115 .................................................... 22

Ill. Admin. Code tit. 56, § 210.110 ........................................ 20, 21, 22, 24

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant Lisa Johnson filed this action against Amazon.com Services LLC ("Amazon") in the Circuit Court of Cook County on December 22, 2022. Dkt. 1-1.[1]  She raised claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1 *et seq. Id.* ¶¶ 54–69.  Amazon removed the action to the U.S. District Court for the Northern District of Illinois on February 3, 2023.  Dkt. 1.  On February 28, 2023, Ms. Johnson and Plaintiff-Appellant Gale Miller Anderson ("Plaintiffs") filed an amended complaint, which added claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the principles of quantum meruit.  *See* A28–A30.

At all times, the district court had original jurisdiction over this matter under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  There is diversity of citizenship among the parties: Plaintiffs are Illinois citizens and Amazon is a citizen of Delaware (its state of incorporation) and Washington (its principal place of business).  App. Dkt. 11 at 6.  And this lawsuit satisfies CAFA's numerosity and amount-in-controversy requirements: Plaintiffs seek to recover over $5,000,000 for a class with more than 100 members.  *Id.* at 5–6.

---

[1] Documents filed in the district court and this Court that are not included in the Appendix to Plaintiffs-Appellants' Opening Brief ("Appendix") are cited, respectively, as "Dkt." and "App. Dkt."  Documents contained in the Appendix are cited using their page numbers within the Appendix (such as: "A1").

The district court had additional, independent grounds for jurisdiction over Plaintiffs' amended complaint under 28 U.S.C. §§ 1331 and 1367. Plaintiffs' FLSA claims gave rise to federal question jurisdiction. 28 U.S.C. § 1331. And the lower court had supplemental jurisdiction over Plaintiffs' remaining claims. 28 U.S.C. § 1367.

Amazon moved to dismiss the amended complaint on March 21, 2023. Dkt. 21. The district court granted the motion in its entirety on December 7, 2023. *See* A32. It then entered final judgment on January 4, 2024. A40. Plaintiffs timely filed a notice of appeal on January 5, 2024. App. Dkt. 1-1. Because Plaintiffs appeal from an opinion and order that disposed of all of their claims, this Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT ON ISSUES PRESENTED FOR REVIEW

1.      Should the U.S. Court of Appeals for the Seventh Circuit certify the question of whether the Illinois Minimum Wage Law incorporates the federal Portal-to-Portal Act to the Illinois Supreme Court?

2.      Alternatively, did the lower court err in dismissing Plaintiffs' claims under the Illinois Minimum Wage Law based on its assumption that the Illinois Minimum Wage Law incorporates the federal Portal-to-Portal Act?

## STATEMENT OF THE CASE

### A.      Background

Amazon owns fulfillment and distribution centers across the country. *See* A11. The centers are large warehouses at which Amazon stores packages that it eventually

delivers to customers. *Id.* The warehouses generally operate 24 hours per day, and they require significant staff to maintain. *Id.* In its Illinois warehouses alone, Amazon employs over 20,000 workers. *Id.*

Plaintiffs previously worked for Amazon in its Illinois warehouses. *See* A12. Both of them were hourly, non-exempt employees whose duties included moving, stacking, and loading packages. *Id.* Ms. Johnson worked for Amazon from January 2019 to May 2021. *Id.* Ms. Miller Anderson worked for Amazon from October 2017 to October 2021. *Id.*

Accordingly, Plaintiffs each worked for Amazon, in Illinois, when the COVID-19 pandemic began. *See* A11. During the pandemic, over 100 million Americans contracted COVID-19, and over one million Americans perished. *Id.* This included over four million infections and 40,000 deaths in Illinois. *Id.*

Amazon implemented new policies for its warehouse workers at the outset of the pandemic. *Id.* It required all hourly, non-exempt employees to undergo COVID-19 "screenings" at the start of each shift. *Id.* The screenings were physical and medical examinations intended to identify workers with COVID-19 symptoms. *Id.* Amazon conducted them on-site, at the warehouses. *Id.* Yet, even though employees had to arrive at work early for the screenings, Amazon did not compensate them for the time they spent on the screenings. *Id.*

### B. Proceedings Below

As a result, Ms. Johnson filed this action against Amazon in the Circuit Court of Cook County on December 22, 2022. Dkt. 1-1. She alleged Amazon's failure to

compensate Illinois employees for time spent on COVID-19 screenings violated the IMWL and the IWPCA. *See* A17–A20. She sought to represent a class of Amazon's similarly situated, current and former Illinois employees. *See* A13.

Amazon removed the action to the Northern District of Illinois on February 3, 2023. Dkt. 1. Plaintiffs subsequently filed an amended complaint, which added Ms. Miller Anderson as a named plaintiff and added quantum meruit and FLSA claims. *See* A28–A30.

Amazon moved to dismiss all claims in the amended complaint on March 21, 2023. Dkt. 21. The district court granted the motion in its entirety on December 7, 2023. *See* A32. It then entered a judgment on January 4, 2024. *See* A40.

The district court's decision to dismiss Plaintiffs' FLSA claims relied on the Portal-to-Portal Act of 1947 ("PPA"). *See* A35. Section 4(a) of the PPA "amended the FLSA" such that employers are "not liable" for "activities which are preliminary to or postliminary to" an employee's "principal activity or activities." *Chagoya v. City of Chicago*, 992 F.3d 607, 617 (7th Cir. 2021) (citing 29 U.S.C. § 254(a)). Put differently: "the FLSA, as amended, applies only to [an] employee's 'principal activity.'"[2] *Id.* at 618. Principal activities, themselves, are duties a worker "is employed to perform" and any activities "integral and indispensable" to those duties. *Id.*; 29 U.S.C. § 254(a). The district court found Plaintiffs' "principal activities" were "moving boxes, stacking packages, and loading boxes." *See* A35. It held a "COVID screening is neither

---

[2] This general rule has exceptions outlined in 29 U.S.C. § 254(b).

integral nor indispensable to that work" under the PPA, meaning the PPA bars Plaintiffs' FLSA claims. *Id.*

The district court then applied the same reasoning—relying on the federal PPA—to Plaintiffs' state-law IMWL claims. *See* A37. It said courts frequently "look to the Fair Labor Standards Act for guidance in interpreting the [IMWL]." *Id.* (quoting *Mitchell v. JCG Indust., Inc.*, 745 F.3d 837, 845 (7th Cir. 2014)). So, it dismissed Plaintiffs' IMWL claims under the PPA's "integral and indispensable" framework. *Id.*

Plaintiffs are appealing the district court's dismissal of their IMWL claims because the district court's decision rests on the incorrect assumption that the IMWL incorporates the PPA.

## SUMMARY OF ARGUMENT

The Court should certify, to the Illinois Supreme Court, the question of whether the IMWL incorporates the PPA. Certification to a state supreme court is proper where a case hinges on a question of vital public concern, the question is likely to recur, answering the question will determine the outcome of the proceedings, the state supreme court has yet to answer the question, and there is genuine uncertainty regarding how the state supreme court would answer the question. Those factors are all present. And the Illinois Supreme Court is best situated to evaluate the state-law question this appeal presents.

Alternatively, the Court should reverse the district court's dismissal of Plaintiffs' IMWL claims. The district court's decision assumes the IMWL

incorporates the PPA. It does not. To start, the IMWL does not mention the PPA, and one statute cannot incorporate another through silence. Further, the IMWL explicitly adopts *non*-PPA provisions of the FLSA and the regulations interpreting the IMWL only adopt select PPA provisions concerning the compensability of travel time, meaning their exclusion of the other PPA provisions is purposeful. Finally, the IMWL's legislative history shows the Illinois legislature never intended for the IMWL to adopt the PPA and, in similar circumstances, courts have held state wage laws do not incorporate the PPA.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of a motion to dismiss for failure to state a claim *de novo*." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017). Thus, it examines the complaint directly and determines whether it "contain[s] sufficient factual matter" to make the plaintiff's claims "plausible.'" *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 627 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In this examination, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Under *de novo* review, the Court owes no deference to the lower court's resolution of a "question of law." *United States v. NCR Corp.*, 688 F.3d 833, 837 (7th Cir. 2012).

When answering questions of state law, the Court's "task is to determine how the state's highest court would rule." *In re Zimmer, NexGen Knee Implant Prod. Liab.*

*Litig.*, 884 F.3d 746, 751 (7th Cir. 2018). It has "a range of tools at [its] disposal" to accomplish this task. *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007). It may evaluate state supreme court decisions (if any). *In re Zimmer*, 884 F.3d at 751. It may apply "the principles of statutory construction that the [state] Supreme Court follows." *League of Women Voters of Indiana, Inc. v. Sullivan*, 5 F.4th 714, 723 (7th Cir. 2021). And it may examine decisions of "intermediate appellate courts of the state" and "courts in other jurisdictions." *Pisciotta*, 499 F.3d at 635. Of course, the Court may also certify questions of state law directly to a state supreme court. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1085 (7th Cir. 2016), *certified question answered*, 2016 IL 120526, 72 N.E.3d 333 (2016).

## ARGUMENT

### I. The Court should certify the question of whether the IMWL incorporates the PPA to the Illinois Supreme Court.

The Court should certify, to the Illinois Supreme Court, the question of whether the IMWL incorporates the PPA. Certification is appropriate where (1) "the case concerns a matter of vital public concern," (2) "the issue in the case is likely to recur in other cases," (3) "the question to be certified is outcome determinative of the case," and (4) "the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *Finite Res., Ltd. v. DTE Methane Res., LLC*, 44 F.4th 680, 685 (7th Cir. 2022). If those factors are present, the Seventh Circuit considers additional factors to determine whether to certify a question, the "most important" of which is whether the Court is "genuinely uncertain about the answer to the state-law

question." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1166 (7th Cir. 2021), *certified question answered*, 2023 IL 128004, 216 N.E.3d 918 (2023) (citation and quotation marks omitted). Each of the above factors support certification in this case.

### A. Plaintiffs' proposed question is outcome determinative.

Whether the IMWL incorporates the PPA is outcome determinative. An issue is outcome determinative if resolving it "will control" the case's resolution. Seventh Circuit Rule 52(a). An inquiry into whether a statute's terms bar a cause of action satisfies this standard. *E.g.*, *Cutchin v. Robertson*, 986 F.3d 1012, 1029 (7th Cir. 2021), *certified question answered sub nom. Cutchin v. Beard*, 171 N.E.3d 991 (Ind. 2021). For example, in *Cutchin*, whether an individual "qualif[ied] as a 'patient'" under a state medical malpractice law was "outcome determinative" because, if they did not, then the appellant could "not assert a claim" against the appellee. *Id.*

This case is similar. If the IMWL incorporates the PPA, then Plaintiffs' IMWL claims are barred. *See* A35–A37. And those are the only claims remaining in this case. Thus, the first certification factor favors sending this case to the Illinois Supreme Court. *See Zahn*, 815 F.3d at 1085 (question of whether law barred action for electricity overcharges was outcome determinative and warranted certification).

### B. Plaintiffs' proposed question is of vital public concern.

Plaintiffs' proposed question is also vitally important to the public. Questions impacting employee rights, and large numbers of workers, generally satisfy this standard. *E.g.*, *Craig v. FedEx Ground Package Sys., Inc.*, 686 F.3d 423, 430 (7th Cir. 2012), *certified question answered*, 300 Kan. 788, 335 P.3d 66 (2014).

*Craig* is illustrative. It considered drivers' claims that FedEx "improperly classified [them] as independent contractors rather than employees" under a Kansas wage statute. *Id.* at 425. *Craig* determined the question was of vital public concern, and certified it to the Kansas Supreme Court, for several reasons. *Id.* at 431. Resolving the question would impact numerous employees, as there were "approximately 15,000 [FedEx] delivery drivers in the U.S." *Id.* It would also have "ramifications beyond" the "particular case" because "employers in other industries" likely had "similar arrangements with [their] workers." *Id.* Further, answering the question would provide clarity where employers' "economic incentives" created the "potential for abuse." *Id.* And it would ensure "tax revenues" did not go "uncollected due to the misclassification of workers." *See id.* In sum: the question was of "great importance" because it concerned the very "structure of the American workplace." *Id.*

Each of the *Craig* factors are present here. Resolving Plaintiffs' proposed question will directly impact numerous workers. *Id.* As discussed, Amazon employs approximately 20,000 individuals in its Illinois warehouses. *See* A11. If the IMWL does not incorporate the PPA, all these employees are likely owed compensation for the time they spent in pre-shift COVID-19 screenings.

Answering Plaintiffs' question will also have ramifications beyond this case. Many Illinois employers require workers to complete pre- or post-shift activities, from COVID-19 screenings to security screenings and beyond. *E.g.*, *Tennessen v. Illinois Bell Tel. Co.*, No. 15 C 2784, 2016 WL 521046, at *3 (N.D. Ill. Feb. 10, 2016) (discussing claims for unpaid wages for pre/post shift activities); *Williams-Green v. J.*

*Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 379 (N.D. Ill. 2011) (same); *Graham v. City of Chicago*, 828 F. Supp. 576, 578 (N.D. Ill. 1993) (same); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 398 (N.D. Ill. 2011) (same); *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 758 (N.D. Ill. 2011) (same). Determining whether the IMWL incorporates the PPA will provide much-needed guidance for these employers.

This guidance is urgently needed because employers' "economic incentives" currently create the "potential for abuse." *Craig*, 686 F.3d at 431. Employers, prima facie, are motivated to avoid paying for pre- and post-shift activities. That practice undermines the IMWL's policy objectives. *Infra* Section II.C (discussing the IMWL's worker-protection objectives); 820 ILCS § 105/2 ("It is against public policy for an employer to pay to his employees an amount less than that fixed by this Act."). Yet it will continue so long as employers believe that the IMWL permits it.

Finally, resolving Plaintiffs' question will ensure employers do not improperly deprive Illinois of tax revenue. Income generated from pre- and post-shift activities like COVID-19 screenings is, of course, taxable. 35 ILCS § 5/201 *et seq.* Employers who avoid paying for those activities, therefore, reduce Illinois' tax receipts.

### C. Plaintiffs' proposed question is likely to recur.

Next, Plaintiffs' proposed question will undoubtedly recur. Courts use the "existing body of . . . case law" to determine an issue's likelihood of recurrence. *Cutchin*, 986 F.3d at 1029. Numerous cases involve Illinois workers' claims for unpaid wages connected to pre- and post-shift activities. *E.g.*, *Tennessen*, 2016 WL

521046, at *3; *Williams-Green*, 277 F.R.D. at 379; *Graham*, 828 F. Supp. at 578; *Hawkins*, 280 F.R.D. at 398; *Nehmelman*, 822 F. Supp. 2d at 758.  At least one pending case involves a dispute over whether the IMWL incorporates Section 4(a) of the PPA.  *See* Def. Target Corporation's Mtn. for Judgment on the Pleadings, *Cortez v. Target Corporation,* Case No. 1:23-cv-1435 (N.D. Ill. filed Jan. 22, 2024), ECF No. 68.[3]  Prior cases have raised the same question.  *E.g.*, *Pietrzycki v. Heights Tower Serv., Inc.*, 290 F. Supp. 3d 822, 844 n.10 (N.D. Ill. 2017) ("Defendants argue they are entitled to summary judgment under a provision of the IMWL concerning ridesharing that they seem to believe is analogous to the PPA.").  Further, this Court has twice considered claims that Plaintiffs' question concerning the IMWL would impact (though the Court did not explicitly evaluate whether the IMWL incorporates the PPA in either case).  *Infra* Section I.D.  There is every likelihood that litigants will bring similar cases in the future, meaning Plaintiffs' proposed question is eligible for certification.  *Cutchin*, 986 F.3d at 1029.

> **D.** **The Illinois Supreme Court has not offered guidance on Plaintiffs' proposed question and there is "genuine uncertainty" regarding that question.**

The Illinois Supreme Court has not considered, or ruled upon, whether the IMWL incorporates the PPA.  As a result, this Court's prior decisions reflect "genuine

---

[3] In *Cortez*, the defendant argued the "FLSA, including its amendment by the Portal-to-Portal Act apply here, and those principles, as a matter of law, preclude Plaintiffs' class action IMWL claims."  Def. Target Memorandum of Law in Support of Mtn. for Judgment on the Pleadings at 9, *Cortez v. Target Corporation*, Case No. 1:23-cv-1435 (N.D. Ill. filed Jan. 22, 2024), ECF No. 69.

uncertainty" as to how the Illinois Supreme Court would resolve the question. In 2014, the Court evaluated parallel IMWL and FLSA claims for unpaid compensation for pre- and post-shift activities. *Mitchell v. JCG Industries, Inc.*, 745 F.3d 837, 843–44 (7th Cir. 2014). It analyzed the IMWL and FLSA claims separately, implying the IMWL does not incorporate the PPA. *Infra* Section II.A. Yet, three years later, the Court analyzed parallel IMWL and FLSA claims together. *Chagoya v. City of Chicago*, 992 F.3d 607, 615 n.1 (7th Cir. 2021). As discussed herein, *Chagoya* only did so based on an agreement between the parties, meaning *Chagoya* should not impact this case if the Court resolves Plaintiffs' proposed question itself. *Infra* Section II.E. Still, the Court's disparate approaches in *Mitchell* and *Chagoya* show Plaintiffs' question is well-suited for certification to the Illinois Supreme Court.

### E. Additional factors often considered by the Seventh Circuit support certification of Plaintiffs' proposed question.

The above factors, by themselves, justify certification. *Zahn*, 815 F.3d at 1086. But this Court sometimes looks to additional factors to determine whether to certify a question. *E.g.*, *Cothron*, 20 F.4th at 1166. They all support certification.

First, in certification analyses, the Court often considers "whether the issue is of interest to the state supreme court in its development of state law."[4] *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). State supreme courts

---

[4] After all, "[s]peculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when . . . the state courts stand willing to address questions of state law on certification from a federal court." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 79 (1997) (citation and quotation omitted).

are generally interested in developing laws impacting in-state employees. *E.g.*, *Craig v. FedEx Ground Package Sys., Inc.*, 300 Kan. 788, 789, 335 P.3d 66, 71 (2014) (accepting and answering certified question from Seventh Circuit regarding Kansas wage statute). And the Illinois Supreme Court is no exception. *E.g.*, *In re Hernandez*, 2020 IL 124661, ¶¶ 1–3, 161 N.E.3d 135, 137 (2020) (accepting and answering certified question from Seventh Circuit regarding Illinois Workers' Compensation Act); *Metzger v. DaRosa*, 209 Ill. 2d 30, 45, 805 N.E.2d 1165, 1173 (2004) (accepting and answering certified question from Seventh Circuit concerning whether there is a "private right of action for state employees who are retaliated against by other state employees"). Plaintiffs have no doubt their IMWL question "is of interest" to the Illinois Supreme Court. *Pate*, 275 F.3d at 672.

Second, the Court sometimes considers whether a question is "purely legal" to determine whether to certify it. *Cothron*, 20 F.4th at 1166. This is because "unique and fact bound" questions are poor vehicles for certification. *Id.* Here, the Illinois Supreme Court can resolve Plaintiffs' question without referencing *any* case-specific facts. The question is, at its core, one of statutory construction. *Infra* Sections II.A–B. And if it requires any further inquiry, the inquiry will concern the IMWL's legislative history, not this case's pleadings or procedural background. *Infra* Section II.D.

Third, "[c]ertification to a state supreme court" is especially warranted "when the result of the decision will almost exclusively impact citizens of that state." *Pate*, 275 F.3d at 672. Plaintiffs' question concerns the IMWL, which is an Illinois statute

13

concerning Illinois employees' wage rights.  820 ILCS § 105/1.  Resolving it will, almost exclusively, impact Illinois citizens.

Fourth, questions that turn on "legislative intent and policy considerations" are often "better left to decision by the state court."  *Craig*, 686 F.3d at 430.  Hence, questions concerning the interpretation of a state statute are exceptional vehicles for certification to the state's highest court (assuming that court has not provided prior guidance on the issue).  *E.g.*, *DeGrand v. Motors Ins. Corp.*, 903 F.2d 1100, 1103 (7th Cir. 1990) (certifying question to Illinois Supreme Court as to whether Illinois Insurance Code requires insurers to offer  underinsured motorist coverage to automobile purchasers who opt for minimum uninsured motorist coverage); *Shirley v. Russell*, 69 F.3d 839, 844–45 (7th Cir. 1995) (certifying question to Indiana Supreme Court as to whether a monthly survivor benefit paid to a surviving spouse is a collateral source payment that is admissible into evidence under Indiana Code § 34-462); *Kuba v. Ristow Trucking Co.*, 811 F.2d 1053, 1056 (7th Cir. 1987) (certifying question as to whether treble damages are available under Indiana wrongful death statute to Indiana Supreme Court).  This case fits the bill.  *Infra* Sections II.A–D.

### F.  Persuasive authority from other federal circuit courts supports certification of Plaintiffs' proposed question.

Several federal appellate courts have certified, to state supreme courts, the question of whether a state's wage law incorporates the PPA.  *E.g.*, *In re Amazon.com, Inc.*, 942 F.3d 297, 304 (6th Cir. 2019), *certified question answered*, 255 A.3d 191 (Pa. 2021) (certifying question regarding whether Pennsylvania wage law incorporates

PPA to Pennsylvania Supreme Court); *Buero v. Amazon.com Servs., Inc.*, 21 F.4th 623, 626 (9th Cir. 2021), *certified question accepted*, 369 Or. 339, 504 P.3d 1182 (2022), *and certified question answered*, 370 Or. 502, 521 P.3d 471 (2022) (certifying question regarding whether Oregon wage law incorporates PPA to Oregon Supreme Court); *Frlekin v. Apple, Inc.*, 870 F.3d 867, 869 (9th Cir. 2017), *certified question answered*, 8 Cal. 5th 1038, 457 P.3d 526 (2020) (certifying question regarding whether California wage law incorporates PPA to California Supreme Court).[5] They applied certification standards mirroring this Court's certification framework. *In re Amazon.com, Inc.*, 942 F.3d at 301 (discussing certification standards, including whether the question to be certified is "one of first impression" and is of "substantial public importance"); *Buero*, 21 F.4th at 626 (certifying question, in part, because it might "be determinative" of the case and "there [was] no controlling precedent" on the issue from state supreme court); *Frlekin*, 870 F.3d at 868 (certifying question because it "would be dispositive of the appeal," "no clear controlling California precedent exist[ed]," and it was of "extreme importance to numerous employees and employers in California"). They thereby provide strong persuasive authority demonstrating the Court should certify Plaintiffs' question to the Illinois Supreme Court. *See Consolidation Coal Co. v. Dir., Off. of Workers' Comp. Programs, United States Dep't of Lab.*, 911 F.3d 824, 845 (7th Cir. 2018) (decisions from "other courts of

---

[5] Although the Ninth Circuit did not specifically name the PPA in *Frlekin*, the question it certified required the California Supreme Court to clarify that "the Portal-to-Portal Act differs substantially from the state scheme, and should be given no deference." *Frlekin v. Apple Inc.*, 457 P.3d at 534 n.4 (2020) (citation, quotation marks, and brackets omitted).

appeals" were "persuasive authority" where they "considered th[e] precise issue" before the Court).

## II. Alternatively, the Court should reverse the dismissal of Plaintiffs' IMWL claims because the IMWL does not incorporate the PPA.

If the Court does not certify the above question, it should reverse the district court's decision to dismiss Plaintiffs' IMWL claims. The decision assumes the IMWL incorporates the PPA. But the IMWL's text and history show otherwise.

### A. The IMWL's plain text shows it does not incorporate the PPA because it is silent as to the PPA.

The plain text of the IMWL demonstrates it does not incorporate the PPA. When interpreting a statute, courts' "primary goal is to ascertain and give effect to the intention of the legislature." *Moore v. Chicago Park Dist.*, 2012 IL 112788, ¶ 9, 978 N.E.2d 1050, 1054 (2012). They "seek that intent first from the plain language used in the statute," *id.*, and they "may not annex new provisions" which "the legislature did not express" to that language. *Hines v. Dep't of Pub. Aid*, 221 Ill. 2d 222, 230, 850 N.E.2d 148, 153 (2006). Therefore, if one statute is silent as to another, courts will not assume the former incorporates the latter. *See Moore*, 2012 IL 112788, ¶ 13; *Lora v. United States*, 599 U.S. 453, 459 (2023). The IMWL is silent as to the PPA, 820 ILCS § 105/1 *et seq.*, so it does not incorporate the PPA.

This Court must interpret the IMWL as it predicts the Illinois Supreme Court would interpret it. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Precedent shows the state's highest court would hold that the IMWL does not incorporate the PPA by silence. In *Moore*, the estate of Sylvia Moore alleged the Chicago Park

District caused Ms. Moore's slip-and-fall death by "negligently and carelessly shovel[ing] and plow[ing] snow into mounds" in its parking lot. 2012 IL 112788, ¶ 4. The district argued Section 3–106 of Illinois' Tort Immunity Act ("TIA") barred the estate's claims. *Id.* (citing 755 ILCS § 5/27–6). The trial court certified a question to the Illinois Supreme Court, which required the Court to determine whether Section 3-106 incorporates the "natural accumulation rule" codified in another TIA section. *Id.* ¶¶ 12–13. Section 3-106 does not mention that rule. *Id.* So, "based on the plain text of the statute," the Court held "section 3–106 does not incorporate the natural accumulation rule." *Id.* ¶ 13. Here too, a statute cannot incorporate another by remaining silent as to it.

The U.S. Supreme Court agrees that silence is not incorporation. In *Lora*, the Court examined 18 U.S.C. § 924, which contains penalties for firearm offenses. 599 U.S. at 456. It held § 924(j) does not "incorporate[]" § 924(c)'s penalties. *Id.* at 459. Why? Simple: "Subsection (j) nowhere mentions . . . subsection (c)'s penalties." *Id.* The IMWL nowhere mentions the PPA, so it does not adopt the PPA.

Indeed, the Seventh Circuit has implicitly acknowledged the IMWL does not, through silence, incorporate the PPA. *Mitchell* considered whether time spent changing clothes before shifts, during breaks, and after shifts is compensable under the FLSA and the IMWL. 745 F.3d at 843–44. It applied the PPA standard from 29 U.S.C. § 203(o) to the FLSA claims. *Id.* at 843. But it said the IMWL "contains no counterpart to section 203(o)," so it applied a different standard to the IMWL claims. *Id.* at 844. *Mitchell* thereby recognized the IMWL's silence as to the PPA does not

17

incorporate the PPA.[6] *See also*, *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 799–800 (N.D. Ill. 2013) ("[I]nterpreting the meaning and language of the IMWL is entirely different from incorporating into the IMWL an obligation [from the FLSA] not expressed in that statute.").

*Mitchell* also recognized that where the IMWL is more generous than the FLSA, it is possible to find that the IMWL was violated but federal law was not. *Mitchell*, 745 F.3d at 838; *see also Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 429 (7th Cir. 2010) (FLSA does not preclude states from setting more generous overtime standards than the FLSA provides). Indeed, "where the FLSA and the IMWL differ, they must be interpreted differently." *Driver*, 917 F. Supp. 2d at 799. Contrary to the district court's holding, therefore, absent a textual basis for doing so, courts may not import a provision that is unique to the FLSA into the IMWL. *Driver*, 917 F. Supp. 2d at 800; *see also id.* at 805 (refusing to apply FLSA requirements for tip credit notice to the IMWL); *Molina v. First Line Solutions, LLC*, 566 F. Supp. 2d 770, 783 (N.D. Ill. 2007) (finding motor carrier exclusion applicable to FLSA claims but not IMWL claims). This is particularly true where, like here, the language and history of the IMWL and its implementing regulations provide evidence that the Illinois General Assembly purposely omitted the PPA provisions because the legislature intended that state and federal law would differ on this point. *Infra*

---

[6] The district court opinion in this case misreads Plaintiffs' argument concerning *Mitchell*. It asserts Plaintiffs' position is "based on [the] dissenting opinion" in *Mitchell*. *See* A38. It is not. The foregoing language from *Mitchell*—which Plaintiffs cited below—is from the majority opinion. Dkt. 25 at 29 (citing *Mitchell*, 745 F.3d at 844).

Sections II.B–D.

**B.    The IMWL explicitly adopts non-PPA provisions of the FLSA, meaning its exclusion of the PPA is purposeful.**

The IMWL's silence as to the PPA is not the only textual evidence supporting Plaintiffs' position.  Under the maxim of *expressio unius est exclusio alterius*, "the expression of one thing" in a statute implies "the exclusion of another."  *Metzger v. DaRosa*, 209 Ill. 2d 30, 44, 805 N.E.2d 1165, 1172 (2004); *see In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.* ("*In re: Amazon*"), 905 F.3d 387, 402 (6th Cir. 2018).

The IMWL expressly incorporates several non-PPA provisions of the FLSA.  It contains an exemption for "bona fide executive, administrative or professional" employees "as defined by or covered by the Federal Fair Labor Standards Act."  820 ILCS § 105/4a(2)(E).  It also exempts any "commissioned employee as described in paragraph (i) of Section 7 of the Federal Fair Labor Standards Act" and any "employee of a governmental body" subject to the exclusion in "paragraph (e)(2)(C) of Section 3 of the Federal Fair Labor Standards Act."  *Id.* §§ 105/4a(2)(D), 105/4a(2)(F).  And it defines "employee" to exclude certain "student[s] who [are] covered under the provisions of the Fair Labor Standards Act."  *Id.* § 105/3(d)(6).

Yet the IMWL contains no reference to the FLSA's PPA provisions.  820 ILCS § 105/1 *et seq.*  This shows the IMWL's exclusion of the PPA is intentional.  *See Metzger*, 209 Ill. 2d at 44; *see In re: Amazon*, 905 F.3d at 402.

*In re: Amazon* illustrates this point. There, workers sought compensation under Nevada wage laws "for time spent undergoing or waiting to undergo mandatory onsite security screenings at the Amazon facilities where they worked." *In re: Amazon*, 905 F.3d at 391. The district court held the workers' claims "were barred by Nevada's incorporation of the Portal-to-Portal Act." *Id.* at 394.

The Sixth Circuit disagreed. It noted Nevada law does not "affirmatively" mention the PPA "anywhere." *Id.* at 404. But it "expressly include[s] references" to other provisions of federal law, including other FLSA provisions. *Id.* at 403 (pointing out that "Nevada minimum wage provisions do not apply to '[a] person employed as a trainee for a period not longer than 90 days . . . pursuant to section 6(g) of the Fair Labor Standards Act'"). Per the Sixth Circuit: "That the Nevada legislature expressly adopted some federal regulations indicates that its failure to adopt others was intentional." *Id.* Hence, as this Court should, *In re: Amazon* held a state wage law did not incorporate the PPA. *Id.* at 402–04.

## C. Under the Illinois Department of Labor's interpretation of the IMWL, to which courts must defer, the IMWL does not generally incorporate the PPA.

The Illinois Department of Labor (the "Department") enforces the IMWL. 820 ILCS § 105 *et seq*. The Director of the Department has the authority to "make and revise administrative regulations, including definitions of terms, as he deems appropriate to carry out the purposes of th[e] Act." *Id.* § 105/10. Section 210.110 of the Department's IMWL regulations, to which courts must defer, resolves the question presented in this appeal. *See* Ill. Admin. Code tit. 56, § 210.110.

20

Section 210.110 defines "hours worked" as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." *Id.* It also describes when employees are entitled to compensation for meal periods, on-call time, and travel time. *Id.* The regulation makes one singular reference to the PPA, adopting certain PPA rules governing the compensability of travel time. *Id.* ("An employee's travel, performed for the employer's benefit . . . is compensable work time as defined in 29 C.F.R. 785.33 – 785.41 (1994, no subsequent dates or editions), as amended at 26 FR 190."). Aside from adopting these travel time rules, the Department's regulations do not adopt any of the other rules governing the compensability of the activities enumerated in Section 4(a) of the PPA. Under the Department's interpretation of the IMWL, therefore, the IMWL does not generally incorporate the PPA. *Supra* Section II.B (discussing maxim of *expressio unius est exclusio alterius*); *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 368, 919 N.E.2d 926, 936 (2009) ("[T]he familiar rules that govern construction of statutes also apply to the construction of administrative regulations.").

The district court erred in not giving controlling deference to the Department's regulation defining "hours worked." *Mitchell,* 745 F.3d at 844 (deferring to the IDOL's definition of "hours worked"); *Kean,* 919 N.E.2d at 936 (agency's reasonable regulations carry the "force and effect of law"). The Illinois Supreme Court directs courts to "give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with administering and enforcing that statute." *People*

*ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 46, 779 N.E.2d 875, 881 (2002); *see also Kerbes v. Raceway Assocs., LLC*, 2011 IL App (1st) 110318, ¶ 23, 961 N.E.2d 865, 870 (2011) ("administrative rules" are "entitled to weight and deference so long as they are not inconsistent with the statute pursuant to which they are adopted"). Indeed, an agency's "reasonable construction" of a statute creates "a presumption of correctness that is only slightly less persuasive than a judicial construction of the same act."[7]  *Birkett*, 202 Ill. 2d at 46.

The Department's definition of "hours worked" is reasonable.  It is consistent with the IMWL's text and policy objectives.  *See Supra* Sections II.A–B; *Infra* Section II.D.  And it parallels the definition of "workweek" first articulated by the Supreme Court in *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946).  *See id.* at 690–91 ("[T]he statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."). The definition of "workweek" from *Mt. Clemens* remains valid today, and it did not change when Congress passed the PPA in 1947.  The PPA only excepted certain work activities from being compensable under the FLSA and did not alter the definition of the terms "work" or "workweek."  *IBP, Inc. v. Alvarez,* 546 U.S. 21, 28 (2005) ("[T]he Portal-to-Portal Act does not purport to change this Court's earlier descriptions of the

[7]  For such a presumption to take effect, the agency's interpretation must be "contemporaneous, consistent, long-continued, and in concurrence with legislative acquiescence."  *Birkett*, 202 Ill. 2d at 46.  Section 210.110 qualifies.  The current version of the regulation was codified in 1995.  *See* 19 Ill. Reg. 6573.  An earlier version was codified in 1984 at Ill. Admin. Code tit. 56, § 200.115.  *See* 8 Ill. Reg. 18473 (Oct. 5, 1984).  The regulation also aligns with legislative intent for the IMWL, as discussed herein.

terms 'work' and 'workweek,' or to define the term 'workday.'"); *Busk v. Integrity Staffing Solutions, Inc.,* 905 F.3d 387, 399-401 (6th Cir. Sept. 19, 2018); *see* 29 C.F.R. § 785.7 ("The workweek ordinarily includes 'all time during which an employee is necessarily required to"be on the Employer's premises, on duty or at a prescribed work place.' The Portal-to-Portal Act did not change the rule except to provide an exception for preliminary and postliminary activities.").

Other courts have given deference to the Department's regulations, including the meaning of "hours worked," when statutory questions were left unanswered by the text of the IMWL. In *Wagner v. Air Methods Corporation,* 539 F. Supp. 3d 1157 (D. Colo. 2021), the court considered importing the FLSA's sleep time exception into the IMWL. *Id.* at 1167. It did not, choosing instead to "defer to the Illinois Department of Labor in its definition of 'hours worked.'" *Id.* It noted Illinois adopted exclusions under the FLSA for meal periods and travel time, but it did not adopt the sleep time rule, despite being aware of it, suggesting a conscious decision to depart from the FLSA. *Id.* at 1168–69 ("The Seventh Circuit's decision in *Mitchell* suggests the most logical reason of the 'hours worked' definition. It is 'broad,' and if it would encompass time employees spend changing during a meal break on an employer's premises (but-for the meal period and *de minimus* exceptions)."). Thus, like here, "[n]othing indicate[d] that the Illinois regulation at issue [was] inconsistent with the MWL," so the regulation controlled. *Id.* at 1167.

*Wagner* is far from the only opinion to accord the Department's regulations controlling deference. In *Department of Labor v. MCC Health Care,* 790 N.E.2d 38

(Ill. App. Ct. 2003), the court relied on the Department's regulations to decide whether a worker was properly classified as an independent contractor or an "employee" under the IMWL. *See id.* at 46 (deferring to Ill. Admin. Code, tit. 56, § 210.110). The court explained that the Department's "regulations have the force and effect of law." *Id.* Similarly, in *Kerbes*, because the IMWL did not define the meaning of "workweek," the court deferred to the Department's reasonable interpretation of that term. 961 N.E. 2d at 870.

Because the Department promulgated its regulation pursuant to explicit statutory authority *after* Congress passed the PPA, and because the Department's definition is reasonable and not inconsistent with the statute, the district court committed reversible error in failing to defer to the Department's regulation. Ill. Admin. Code tit. 56, § 210.110.

### D.     The IMWL's history shows the Illinois legislature did not intend for the IMWL to incorporate the PPA.

The IMWL's history also supports Plaintiffs' position.[8] Courts may look to a "statute's background" and "remarks made by the legislators during their debates on the legislation" to "discern the meaning" of a statute. *Lieb v. Judges' Ret. Sys. Of Illinois*, 314 Ill. App. 3d 87, 92, 731 N.E.2d 809, 813 (2000). They may also consider

---

[8] The Court need not look to the IMWL's history to resolve this appeal because the IMWL's "statutory language is clear and unambiguous." *Brucker v. Mercola*, 227 Ill. 2d 502, 513, 886 N.E.2d 306, 313 (2007); *Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1128 (7th Cir. 2008) ("Resort to the legislative history . . . is only necessary if the language of the statute is ambiguous; if the statutory language is clear, then the legislative history is only relevant if it shows a clear intent to the contrary."). Still, Plaintiffs discuss the IMWL's history out of an abundance of caution.

"the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved." *Brucker v. Mercola*, 227 Ill. 2d 502, 514, 886 N.E.2d 306, 313 (2007).

The IMWL's background shows the Illinois legislature never intended for the IMWL to adopt the PPA. Illinois enacted the IMWL in 1971, twenty-four years after Congress enacted the PPA. P.A. 77-1451, § 1, eff. Sept. 6, 1971. Yet, as discussed, it chose not to reference the PPA within the IMWL. *Supra* Section II.A. In 1977, the Illinois legislature then amended the IMWL to add, by specific reference, a provision adopting the FLSA's white collar exemptions. *See* 820 ILCS § 105/4a(2)I; 79th Ill. Gen. Assem., Senate Proceedings, December 16, 1976, at 52–53, 58–89 (Statements of Senators McCarthy, Harris, Hall and Bruce). Clearly, when the Illinois legislature intends to incorporate federal law into the IMWL, it does so explicitly. It simply has not done so for the PPA.

Remarks from legislative sessions also show Illinois lawmakers never intended for the IMWL to parallel the FLSA in all respects. When discussing an amendment to the IMWL in 1976, one representative said: "If we just followed the Federal Act, we wouldn't need a state law." 79th Ill. Gen. Assem., Senate Proceedings, June 4, 1976, at 118 (Statement of Representative Hanahan). He then re-confirmed the IMWL is "not identical to the Federal Act," even though certain provisions in both laws align. *Id.*

Lastly, the IMWL's policy objectives weigh against a finding that the IMWL incorporates the PPA. As one Illinois legislator put it in 1976, the IMWL provides "the only system we know that . . . could guarantee that the exploitation of those who

haven't got the privileges of a lobby, haven't got the privileges of a union representing [them], that they would have the opportunity to be guaranteed under law a very basic minimum wage." 79th Ill. Gen. Assem., House Proceedings, June 4, 1976, at 116–117 (Statement of Representative Hanahan). Because the very purpose of the IMWL is to protect workers and their right to a living wage, courts should not read new, *implicit* restrictions into the law that prevent workers from accessing such wages. *See Iwan Ries & Co. v. City of Chicago*, 2019 IL 124469, ¶ 19, 160 N.E.3d 916, 920 (2019) (when "construing a statute" courts should "remain mindful of the subject it addresses and the legislature's apparent purpose in enacting the statute"); *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 69, 978 N.E.2d 1020, 1043 (2012) ("The primary goal in construing a statute is to give effect to the intention of the legislature.").

### E. Other courts have repeatedly refused to read the PPA into state-based wage laws that parallel the IMWL.

Where, as here, a state's supreme court has yet to rule on a matter of state law, this Court may "examine the reasoning of courts in other jurisdictions addressing the same issue and applying their own law for whatever guidance about the probable direction of state law they may provide." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007). Multiple federal circuit and state supreme court decisions hold that state wage laws silent as to the PPA do not incorporate it. *In re: Amazon*, 905 F.3d at 402 (Nevada law does not "incorporate the federal Portal-to-Portal Act"); *Roberts v. State of Arizona*, 512 P.3d 1007, 1014 (Ariz. 2022) (PPA restrictions do not apply to Arizona wage statute); *Amaya v. DGS Construction, LLC*, 278 A.3d 1216,

1240 (Md. 2022) (PPA restrictions do not apply to Maryland wage statutes); *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191, 201–02 (Pa. 2021) (PPA restrictions do not apply to Pennsylvania minimum wage law); *Frlekin v. Apple Inc.*, 457 P.3d 526, 532–33 (Cal. 2020) (refusing to apply PPA restrictions to California Wage Order 7). Because this Court is evaluating the "same issue," it should likewise hold the IMWL does not incorporate the PPA. *See Pisciotta*, 499 F.3d at 635.

Amazon may argue this Court has *already* determined the IMWL incorporates the PPA based on its decision in *Chagoya*. This is because the lower court cited the following footnote from *Chagoya*: "Because the IMWL parallels the language of the FLSA, the parties agree that the same standard applies to the operators' claims under the FLSA and the IMWL. Accordingly, we analyze the FLSA and IMWL claims together." *See* A37 (quoting *Chagoya*, 992 F.3d at 615 n.1). Prima facie, *Chagoya* assumed—without holding—that the IMWL incorporates the PPA, based on the parties' agreement. *Id.* As the full opinion shows, *Chagoya* did no analysis into whether the IMWL, in fact, incorporates the PPA. *Chagoya*, 992 F.3d at 615–25.

That means *Chagoya* is irrelevant to this appeal. A prior "panel's assumption is not binding if the adverse party did not challenge and [the panel] did not consider that issue." *Ochoa-Salgado v. Garland*, 5 F.4th 615, 619 (5th Cir. 2021) (citation and quotation marks omitted); *see also Rumsfeld v. United Techs. Corp.*, 315 F.3d 1361, 1373 n.16 (Fed. Cir. 2003) ("Such a decision, merely accepting the parties' agreement, is not binding on later panels."); *Garcia-Hernandez v. U.S.*, 915 F.3d 558, 560 n.1 (8th

27

Cir. 2019) (when an issue is not squarely addressed in a prior decision, it does not become binding case law).

After all, this Court "resolve[s] [a] case on the terms on which it [is] presented," and need not decide issues that "the parties have not briefed." *Merk v. Jewel Companies, Inc.*, 848 F.2d 761, 764 (7th Cir. 1988); *see also Stroe v. I.N.S.*, 256 F.3d 498, 501 (7th Cir. 2001) ("We may assume, without having to decide because the issue is not raised, that the Board's decision to allow aliens to claim ineffective assistance of counsel as a basis for reopening deportation proceedings is within the scope of the Board's discretionary authority."); *Harrington v. DeVito*, 656 F.2d 264, 266 (7th Cir. 1981) (noting the Court "need not decide an issue raised in oral argument, but not briefed by the parties"). The *Chagoya* parties did not challenge or brief the issue of whether the IMWL incorporates the PPA. *Chagoya*, 992 F.3d at 615 n.1. And as noted, there is no basis for finding that it does.

## CONCLUSION

For these reasons, this Court should certify, to the Illinois Supreme Court, the question of whether the IMWL incorporates the PPA. Otherwise, it should hold the IMWL does not incorporate the PPA, reverse the district court's order dismissing Plaintiffs' IMWL claims, and remand this case for further proceedings.

Dated: March 20, 2024     Respectfully submitted,

/s/ *John J. Frawley*

Maureen A. Salas
Douglas M. Werman
John J. Frawley

28

WERMAN SALAS P.C.
77 W. Washington St.
Suite 1402
Chicago, IL. 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
msalas@flsalaw.com
dwerman@flsalaw.com
jfrawley@flsalaw.com

Don J. Foty
HODGES & FOTY, LLP
2 Greenway Plaza
Suite 250
Houston, TX 77046
Tel: (713) 523-0001
Fax: (713) 523-1116
dfoty@hftrialfirm.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32(c) because this brief contains 8,138 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a) and Local Rule 32(b). It uses proportionally spaced, 12-point Century Schoolbook font in the body of the brief. And it uses proportionally spaced, 11-point Century Schoolbook font in footnotes.

Dated: March 20, 2024

*/s/ John J. Frawley*
John J. Frawley

**CERTIFICATE OF SERVICE**

I certify that on March 20, 2024, I caused the foregoing Plaintiffs-Appellants'

Opening Brief and Motion for Certification to the Illinois Supreme Court Pursuant

to Circuit Rule 52 to be served on all parties, or their counsel, by filing it via the

Court's electronic filing system.

/s/ *John J. Frawley*
John J. Frawley

## In the United States Court of Appeals
## for the Seventh Circuit

LISA JOHNSON, ET AL.
*Plaintiffs-Appellants,*

v.

AMAZON.COM SERVICES LLC,
*Defendant-Appellee.*

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 1:23-cv-00685, Hon. Thomas M. Durkin

## APPENDIX TO PLAINTIFFS-APPELLANTS' OPENING BRIEF

Maureen A. Salas
    *Counsel of Record*
Douglas M. Werman
John J. Frawley
WERMAN SALAS. P.C.
77 W Washington St.
Suite 1402
Chicago, IL 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
msalas@flsalaw.com
dwerman@flsalaw.com
jfrawley@flsalaw.com

Don J. Foty
Hodges & Foty, LLP
2 Greenway Plaza
Suite 250
Houston, TX 77046
Tel: (713) 523-0001
Fax: (713) 523-1116
dfoty@hftrialfirm.com

*Counsel for Plaintiffs-Appellants*

## CIRCUIT RULE 30(d) STATEMENT OF COMPLIANCE

I certify that all the materials required by Circuit Rule 30(a) and (b) are included within this Appendix to Plaintiffs-Appellants' Opening Brief.

/s/ *John J. Frawley*
John J. Frawley

# TABLE OF CONTENTS

| Docket Number | Filing Date | Document | Page |
|---|---|---|---|
| | | Docket | A1 |
| 16 | 2/28/2023 | Plaintiffs' Second Amended Class and Collective Action Complaint | A7 |
| 33 | 12/7/2023 | Memorandum Opinion and Order Granting Defendant's Motion to Dismiss | A32 |
| 36 | 1/4/2024 | Final Judgment | A40 |

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.7.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00685

| | |
|---|---|
| Johnson v. Amazon.Com Services, LLC. | Date Filed: 02/03/2023 |
| Assigned to: Honorable Thomas M. Durkin | Date Terminated: 01/04/2024 |
| Case in other court: Circuit Court of Cook County, 2022-ch-12303 | Jury Demand: Both |
| 24-01028 | Nature of Suit: 790 Labor: Other |
| Cause: 28:1332 Diversity-Petition for Removal | Jurisdiction: Diversity |

**Plaintiff**

**Lisa Johnson**                     represented by   **Don J. Foty**
Hodges & Foty, LLP
2 Greenway Plaza
Suite 250
Houston, TX 77046
713-523-0001
Fax: 713-523-1116
Email: dfoty@hftrialfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas M. Werman**
Werman Salas P.C.
77 West Washington
Suite 1402
Chicago, IL 60602
(312)419-1008
Fax: Active
Email: dwerman@flsalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maureen Ann Salas**
Werman Salas P.C.
77 W. Washington
Suite 1402
Chicago, IL 60602
(312) 419-1008
Fax: Active
Email: msalas@flsalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gale Miller Anderson**              represented by   **Don J. Foty**
*on Behalf of Themselves and on Behalf of*                              (See above for address)
*All Others Similarly Situated*                                         *ATTORNEY TO BE NOTICED*

A1

V.

**Defendant**

Amazon.Com Services, LLC.                    represented by    **Sari M. Alamuddin**
                                                                Morgan, Lewis & Bockius LLP
                                                                110 N. Wacker Dr.
                                                                Suite 2800
                                                                Chicago, IL 60606
                                                                (312) 324- 1158
                                                                Fax: Active
                                                                Email: sari.alamuddin@morganlewis.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Alexandra Giselle Belzley**
                                                                Morgan, Lewis & Bockius Llp
                                                                110 N. Wacker Drive
                                                                Suite 2800
                                                                Chicago, IL 60606-1511
                                                                (312) 324-1714
                                                                Fax: Not a member
                                                                Email:
                                                                alexandra.belzley@morganlewis.com
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Kevin Francis Gaffney**
                                                                Morgan, Lewis & Bockius LLP
                                                                110 N. Wacker Drive
                                                                Suite 2800
                                                                Chicago, IL 60606
                                                                (312)324-1000
                                                                Fax: Not a member
                                                                Email: kevin.gaffney@morganlewis.com
                                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/03/2023 | 1 | NOTICE of Removal from Circuit Court of Cook County, case number (2022ch12303) filed by Amazon.Com Services, LLC. Filing fee $ 402, receipt number AILNDC-20316520. (Attachments: # 1 Exhibit A - Complaint, # 2 Exhibit B - Anderson Complaint, # 3 Exhibit C - Summons and Affidavit of Service, # 4 Exhibit D - Motion for Leave, # 5 Exhibit E - Agreed Order, # 6 Exhibit F - Amended Complaint, # 7 Exhibit G - Cook County Circuit Court Docket, # 8 Exhibit H - Hoffman Declaration, # 9 Exhibit I - Woods Declaration)(Gaffney, Kevin) (Entered: 02/03/2023) |
| 02/03/2023 | 2 | CIVIL Cover Sheet (Gaffney, Kevin) (Entered: 02/03/2023) |
| 02/03/2023 | 3 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Amazon.Com Services, LLC. (Gaffney, Kevin) (Entered: 02/03/2023) |
| 02/03/2023 | 4 | ATTORNEY Appearance for Defendant Amazon.Com Services, LLC. by Sari M. Alamuddin (Alamuddin, Sari) (Entered: 02/03/2023) |

A2

| 02/03/2023 | 5 | ATTORNEY Appearance for Defendant Amazon.Com Services, LLC. by Alexandra Giselle Belzley (Belzley, Alexandra) (Entered: 02/03/2023) |
| 02/03/2023 | 6 | ATTORNEY Appearance for Defendant Amazon.Com Services, LLC. by Kevin Francis Gaffney (Gaffney, Kevin) (Entered: 02/03/2023) |
| 02/06/2023 | 7 | MAILED Rule 77d Letter to counsel of record. (gcy, ) (Entered: 02/06/2023) |
| 02/06/2023 | 8 | ATTORNEY Appearance for Plaintiff Lisa Johnson by Douglas M. Werman (Werman, Douglas) (Entered: 02/06/2023) |
| 02/06/2023 | 9 | ATTORNEY Appearance for Plaintiff Lisa Johnson by Maureen Ann Salas (Salas, Maureen) (Entered: 02/06/2023) |
| 02/06/2023 | | CASE ASSIGNED to the Honorable Thomas M. Durkin. Designated as Magistrate Judge the Honorable Jeffrey I Cummings. Case assignment: Random assignment. (jb, ) (Entered: 02/06/2023) |
| 02/06/2023 | 10 | MINUTE entry before the Honorable Thomas M. Durkin: By 2/27/2023, the parties are to file a joint status report. The parties may refer to the format detailed on the Court's website under New and Reassigned cases. Mailed notice. (ecw, ) (Entered: 02/06/2023) |
| 02/06/2023 | 11 | ATTORNEY Appearance for Plaintiff Lisa Johnson by Donny J. Foty (Foty, Donny) (Entered: 02/06/2023) |
| 02/08/2023 | 12 | MOTION by Defendant Amazon.Com Services, LLC. for extension of time to file answer *or Otherwise Respond to the Amended Complaint (AGREED MOTION)* (Belzley, Alexandra) (Entered: 02/08/2023) |
| 02/08/2023 | 13 | MINUTE entry before the Honorable Thomas M. Durkin: Agreed motion for extension of time to answer 12 is granted. Amazon is to answer or otherwise respond to Plaintiff's First Amended Complaint by 2/17/2023. Mailed notice. (ecw, ) (Entered: 02/08/2023) |
| 02/15/2023 | 14 | MOTION by Plaintiff Lisa Johnson for leave to file *a Second Amended Complaint, Setting a Responsive Pleading Deadline, and a Briefing Schedule (AGREED)* (Werman, Douglas) (Entered: 02/15/2023) |
| 02/15/2023 | 15 | MINUTE entry before the Honorable Thomas M. Durkin: Agreed motion for leave to file a second amended complaint, setting a responsive pleading deadline, and a briefing schedule 14 is granted. Plaintiff is to file her Second Amended Complaint on or before 2/28/2023. Amazon is to file its responsive pleading or Rule 12 motion on or before 3/21/2023. In the event Amazon files a Rule 12 motion, Plaintiff is to file her response to the motion on or before 4/11/2023, and Amazon is to file its reply in support of the motion on or before 4/28/2023. The 2/27/2023 joint status report deadline is extended to 3/14/2023. Mailed notice. (ecw, ) (Entered: 02/15/2023) |
| 02/28/2023 | 16 | *Second* AMENDED complaint by Lisa Johnson, Gale Miller Anderson against All Defendants *with Jury Demand* (Attachments: # 1 Exhibit Consent Form for Lisa Johnson, # 2 Exhibit Consent Form for Gale Miller Anderson)(Foty, Donny) (Entered: 02/28/2023) |
| 03/09/2023 | 17 | MOTION by Defendant Amazon.Com Services, LLC. for leave to file excess pages *JOINT Motion* (Belzley, Alexandra) (Entered: 03/09/2023) |
| 03/10/2023 | 18 | MINUTE entry before the Honorable Thomas M. Durkin: Joint motion for leave to file excess pages 17 is granted. Mailed notice. (ecw, ) (Entered: 03/10/2023) |
| 03/14/2023 | 19 | STATUS Report *(New Case Joint Status Report)* by Lisa Johnson, Gale Miller Anderson (Salas, Maureen) (Entered: 03/14/2023) |

A3

| | | |
|---|---|---|
| 03/14/2023 | 20 | MINUTE entry before the Honorable Thomas M. Durkin: Discovery is stayed by agreement of the parties. The briefing schedule set forth in Minute Entry 15 on Amazon's motion to dismiss stands. A telephone status hearing is set for 6/20/2023 at 9:00 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Members of the public and media will be able to call in to listen to this hearing. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 03/14/2023) |
| 03/21/2023 | 21 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Amazon.Com Services, LLC. (Belzley, Alexandra) (Entered: 03/21/2023) |
| 03/21/2023 | 22 | MEMORANDUM of Law by Defendant Amazon.Com Services, LLC's In Support of Its Motion to Dismiss the Second Amended Complaint (Belzley, Alexandra) Modified on 3/22/2023 (ecw, ). (Entered: 03/21/2023) |
| 04/05/2023 | 23 | MOTION by Plaintiffs Lisa Johnson, Gale Miller Anderson for leave to file excess pages *(Plaintiffs' Unopposed Motion for Extension of Page Limitations for Their Response to Defendant's Motion to Dismiss the Second Amended Complaint)* (Werman, Douglas) (Entered: 04/05/2023) |
| 04/06/2023 | 24 | MINUTE entry before the Honorable Thomas M. Durkin: Unopposed motion for leave to file excess pages 23 is granted. Mailed notice. (ecw, ) (Entered: 04/06/2023) |
| 04/11/2023 | 25 | RESPONSE by Lisa Johnson, Gale Miller Andersonin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Amazon.Com Services, LLC. 21 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Werman, Douglas) (Entered: 04/11/2023) |
| 04/21/2023 | 26 | MOTION by Defendant Amazon.Com Services, LLC. for leave to file excess pages *unopposed* (Belzley, Alexandra) (Entered: 04/21/2023) |
| 04/21/2023 | 27 | MINUTE entry before the Honorable Thomas M. Durkin: Unopposed motion for leave to file excess pages 26 is granted. Mailed notice. (ecw, ) (Entered: 04/21/2023) |
| 04/28/2023 | 28 | REPLY by Defendant Amazon.Com Services, LLC. to Motion to Dismiss for Failure to State a Claim 21 (Gaffney, Kevin) (Entered: 04/28/2023) |
| 05/01/2023 | 29 | MINUTE entry before the Honorable Thomas M. Durkin: The telephone status hearing set for 6/20/2023 is reset for 6/22/2023 at 9:00 a.m. The dial-in information will remain the same. Mailed notice. (ecw, ) (Entered: 05/01/2023) |
| 06/20/2023 | 30 | MINUTE entry before the Honorable Thomas M. Durkin: The telephone status hearing set for 6/22/2023 is reset for 10/20/2023 at 9:00 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Throughout the hearing, each speaker will be expected to identify themselves for the record before speaking. Counsel must be in a quiet area while on the line. Please be sure to keep your phone on mute when you are not speaking. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 06/20/2023) |

A4

| 10/18/2023 | [31] | MINUTE entry before the Honorable Thomas M. Durkin: The telephone status hearing set for 10/20/2023 is stricken and reset to 12/7/2023 at 9:00 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Throughout the hearing, each speaker will be expected to identify themselves for the record before speaking. Counsel must be in a quiet area while on the line. Please be sure to keep your phone on mute when you are not speaking. Members of the public and media will be able to call in to listen to this hearing. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (kp, ) (Entered: 10/18/2023) |
| 12/06/2023 | [32] | MINUTE entry before the Honorable Thomas M. Durkin: The telephone status hearing set for 12/7/2023 is stricken. The Court will enter a written order on the motion to dismiss [21] shortly. Mailed notice. (ecw, ) (Entered: 12/06/2023) |
| 12/07/2023 | [33] | MEMORANDUM Opinion and Order: For the reasons stated in the attached order, Amazon's motion to dismiss [21] is granted. Plaintiffs' claims are dismissed without prejudice to filing an amended complaint by 1/11/2024. If Plaintiffs fail to file an amended complaint by 1/11/2024, the dismissal with be with prejudice. If Plaintiffs decided not to file an amended complaint, they should inform the Court by email to the Courtroom Deputy as soon as possible so judgment can be entered and the case closed. Signed by the Honorable Thomas M. Durkin on 12/7/2023. Mailed notice. (ecw, ) (Entered: 12/07/2023) |
| 12/28/2023 | [34] | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/28/2023) |
| 01/04/2024 | [35] | MINUTE entry before the Honorable Thomas M. Durkin: Plaintiff's counsel reported that they do not intend to file an amended complaint. Case is dismissed with prejudice. Civil case terminated. Mailed notice. (ecw, ) (Entered: 01/04/2024) |
| 01/04/2024 | [36] | ENTERED JUDGMENT on 1/4/2024. Mailed notice. (ecw, ) (Entered: 01/04/2024) |
| 01/05/2024 | [37] | NOTICE of appeal by Lisa Johnson, Gale Miller Anderson regarding orders [33] , [36] Filing fee $ 605, receipt number AILNDC-21492246. Receipt number: n (Salas, Maureen) (Entered: 01/05/2024) |
| 01/05/2024 | [38] | DOCKETING Statement by Lisa Johnson, Gale Miller Anderson regarding notice of appeal [37] (Salas, Maureen) (Entered: 01/05/2024) |
| 01/08/2024 | [39] | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal [37] . (ph, ) (Entered: 01/08/2024) |

A5

| 01/08/2024 | [40](#) | TRANSMITTED to the 7th Circuit the short record on notice of appeal [37](#) . Notified counsel (ph, ) (Entered: 01/08/2024) |
|---|---|---|
| 01/09/2024 | [41](#) | ACKNOWLEDGMENT of receipt of short record on appeal regarding notice of appeal [37](#) ; USCA Case No. 24-1028 (nsf, ) (Entered: 01/09/2024) |

|  | **PACER Service Center** |  |  |
|---|---|---|---|
|  | **Transaction Receipt** |  |  |
|  | 03/13/2024 13:30:09 |  |  |
| **PACER Login:** | jfrawley3 | **Client Code:** |  |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00685 |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

A6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA JOHNSON AND GALE MILLER ANDERSON, on Behalf of Themselves and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | Case No.: 1:23-CV-00685 |
| V. | § § | Honorable Judge Thomas M. Durkin |
| AMAZON.COM SERVICES, LLC, | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

## PLAINTIFFS' SECOND AMENDED CLASS AND <u>COLLECTIVE ACTION COMPLAINT</u>

### I.       <u>INTRODUCTION</u>

1.       This is a class action lawsuit brought by Plaintiffs Lisa Johnson and Gale Miller Anderson ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members") to recover unpaid wages, penalties, and attorneys' fees and costs. Defendant Amazon.Com Services, LLC ("Amazon") implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift without pay. This physical and medical examination constitutes compensable time that was worked by the Plaintiffs, Illinois Class Members and FLSA Collective Action Members. By failing to pay for this time worked, Amazon has violated Illinois law. In addition to the Plaintiffs, Amazon has failed to pay for the time spent undergoing COVID-19 screenings by thousands of other workers across the State of Illinois.

2.       Amazon's conduct violates the state laws of Illinois because, for the time Plaintiffs and other employees worked over forty (40) hours a week, Amazon failed to pay overtime wages as required by the Illinois Minimum Wage Law ("IMWL"). *See* 820 ILCS § 105/1 *et seq*.

1

3.      Amazon's conduct also violates the state laws of Illinois because Amazon failed to pay Illinois employees all their earned wages as required by the Illinois Wage Payment and Collection Act ("IWPCA"). 820 ILCS 115/1 *et seq.*

4.      Members of the Illinois class action are referred to hereinafter as the "Illinois Class Members."

5.      Amazon's conduct also violates the Fair Labor Standards Act ("FLSA"), which requires non-exempt employees to be compensated for all hours worked in excess of forty in a workweek at one and one-half times their regular rate. *See* 29 U.S.C. § 207(a).  On behalf of themselves and all others similarly situated employees, Plaintiffs bring this action as a collective action under the FLSA, 29 U.S.C. § 216(b).  Members of the collective action are referred to hereinafter as the "FLSA Collective Members."

6.      In the alternative to the claims they bring under the IWPCA, Plaintiffs allege Amazon's conduct violated Illinois law and they are owed compensation under the theory of Quantum Meruit.

## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C §§ 201, *et seq.* The Court has supplemental jurisdiction over the state law wage and hour claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact.

8.      Venue is proper in this District because a substantial portion of the events forming the basis of this suit occurred in or near Chicago, Illinois. Plaintiffs worked in this District and were denied wages in this District.

9.      Amazon is subject to personal jurisdiction before this Court because it has

2

purposefully availed itself of the privileges of conducting activities in the State of Illinois and established minimum contacts sufficient to confer jurisdiction. Amazon does business in Illinois, advertises in Illinois, markets to Illinois consumers, and the violations of the law forming the basis of this lawsuit occurred in Illinois. Further, Amazon maintains offices in Illinois and employs Illinois residents. Therefore, the assumption of jurisdiction over Amazon will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

10.     This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III.     PARTIES AND PERSONAL JURISDICTION

11.     Plaintiff Lisa Johnson is an individual residing in Chicago, Illinois. At all relevant times, Plaintiff Johnson has been domiciled in and is a resident of the State of Illinois. Her consent form to join this action is attached hereto as "Exhibit A."

12.     Plaintiff Gale Miller Anderson is an individual residing in Chicago, Illinois. At all relevant times, Plaintiff Miller Anderson has been domiciled in and is a resident of the State of Illinois. Her consent form to join this action is attached hereto as "Exhibit B."

13.     The "Illinois Class Members" are all current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Illinois in the three-year period before the filing of the Original Complaint until final resolution of this Action.

14.     The "FLSA Collective Members" are all current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Illinois in the three-year period before the filing of the Original Complaint until final resolution of this Action.

15.     The Illinois Class Members and the FLSA Collective Members shall be collectively

referred to as the "Class Members."

16.     Defendant Amazon.com Services, LLC is a Delaware limited liability company with its principal place of business located in Seattle, Washington.  Defendant has been served and has made an appearance in this case.

17.     At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiffs and the Class Members.

18.     At all material times, Amazon has been governed by and subject to the FLSA, 29 U.S.C. § 207.

19.     At all material times, Amazon has been an employer within the meaning of section 3(d) of the FLSA.  29 U.S.C. § 203(d).

20.     At all material times, Amazon has been an enterprise within the meaning of section 3(r) of the FLSA.  29 U.S.C. § 203(r).

21.     At all material times, Amazon has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA because Amazon has had and continues to have employees engaged in commerce.  29 U.S.C. § 203(s)(1). At all material times, the unlawful conduct against Plaintiffs and the Class Members as described in this Complaint was actuated, in whole or in part, by a purpose to serve Amazon.  At all relevant times, the unlawful conduct described in this Complaint was reasonably foreseeable by Amazon and committed under actual or apparent authority granted by Amazon such that all unlawful conduct is legally attributable to Amazon.

22.     At all material times, Amazon has had an annual gross business volume of not less than $500,000.

23.     At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiffs and Class Members. *See* Illinois Minimum Wage Law, 820 ILCS § 105/3(c); Illinois Wage Payment and Collection Act, 820 ILCS § 115/2.

24.     At all material times, Plaintiffs and Class Members were employees of Amazon within the meaning of the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. 820 ILCS § 105/3; 820 ILCS § 115/2.

## IV.     FACTS

25.     The novel Coronavirus has infected over 100 million Americans and caused the death of over one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited February 24, 2023).[1] Following the outbreak of the Coronavirus, Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Amazon as a requirement to work each shift. The examination was conducted on the premises of Amazon, was required by Amazon, and was necessary for each employee to perform his/her work for Amazon. Amazon did not pay employees for the time they spent undergoing the examination.  Amazon's conduct violates Illinois law.

26.     Amazon operates fulfillment centers and distribution centers in Illinois and across the country. These Amazon facilities are large warehouses that normally operate 24 hours per day. These Amazon facilities are the warehouses where Amazon stores the packages that are delivered to customers. Upon information and belief, Amazon employs more than 20,000

---

[1]     In Illinois, the Coronavirus has infected nearly four million Illinois residents, and has resulted in approximately 40,000 confirmed deaths. (*See* https://coronavirus.jhu.edu/region/us/illinois, last visited October 25, 2022).

5

workers in Illinois at distribution centers and fulfillment centers throughout the state.

27.    Plaintiff Johnson worked for Amazon as an hourly, non-exempt employee at the delivery center in Chicago, Illinois. She worked from approximately January 2019 to May 2021. She worked for Amazon as an order picker and packer.  Her job duties included moving boxes, stacking packages, and loading boxes.  Plaintiff Johnson primarily worked a schedule from Monday to Friday between 10:00 p.m. to 6:00 a.m. or 11:00 p.m. to 7:00 a.m.  On occasion, Plaintiff Johnson also worked on Saturdays or Sundays.  In one or more individual workweeks during her employment, Plaintiff Johnson worked 40 or more hours.  When adding the unpaid work described in this Complaint, Plaintiff Johnson regularly worked more than 40 hours each week she went through a COVID-19 screening.

28.    Plaintiff Johnson worked with hundreds of other Amazon workers at the Chicago fulfillment center locations.

29.    Plaintiff Miller Anderson worked for Amazon as an hourly, non-exempt employee in Joliet, Illinois and in Chicago, Illinois. She worked from approximately October 2017 to October 2021.  She worked as a fulfillment center associate. Her job duties included moving boxes, stacking packages, and loading boxes. She worked a schedule that was four days on and three days off.  Each shift was scheduled for 11 hours and was normally 7:00 a.m. to 6:00 p.m. Thus, she normally worked more than 40 hours per week.

30.    Plaintiff Miller Anderson worked with hundreds of other Amazon workers at the Joliet and Chicago fulfillment center locations.

**PLAINTIFFS AND CLASS MEMBERS WERE NOT PAID FOR ALL WORK TIME AS A RESULT OF COMPLETING COVID-19 SCREENINGS "OFF THE CLOCK"**

31.    As an hourly, non-exempt employee, Amazon agreed to pay Plaintiffs an hourly rate of pay for the time they worked at Amazon's facility.

32.     Amazon required Plaintiffs to clock-in and clock-out each day.

33.     Following the outbreak of the Coronavirus, Amazon prevented Plaintiffs from clocking in when they first arrived at Amazon's facility.

34.     Instead, prior to allowing Plaintiffs to clock in each day, Amazon required Plaintiffs to undergo a physical and medical examination to screen for symptoms of COVID-19.

35.     Although the COVID-19 screening was required by Amazon, Amazon did not pay any of its employees, including Plaintiffs, for the time spent undergoing the COVID-19 screening.

36.     In addition, there were times that Plaintiff Miller Anderson reported to Amazon's facility prior to her scheduled start time, but Amazon's COVID-19 screening prevented her from clocking in until after her scheduled start time. In instances when Plaintiff Miller Anderson clocked in late due to Amazon's COVID-19 screen, Plaintiff Miller Anderson suffered a loss of the wages Amazon agreed to pay her.

37.     As a direct result of Amazon's COVID-19 screening, Amazon did not pay Plaintiffs and other Class Members for all hours they worked at Amazon's facilities.

38.     Prior to the start of their shifts, Amazon employees were required to form a line at the entrance to the facility and to stand six feet apart.  Amazon employees were then called one-by-one to a checkpoint where the COVID-19 screening took place.  Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to the next station where the employee was allowed to clock-in for the day.

39.     The amount of time it takes to wait in line and undergo the COVID-19 examination

7

was approximately 10 minutes to 15 minutes on average. This amount of time could be longer depending upon the number of other Amazon employees in line for the COVID-19 screening. The COVID-19 screening occurred each day at each Amazon facility in Illinois and no Amazon employee could work without first passing the COVID-19 screening.

40.     Plaintiffs know and are aware that other Amazon facilities in Illinois have COVID-19 screening procedures because there were multiple notices posted around the facility indicating that COVID-19 screening and prevention practices were being instituted across Amazon at a corporate-wide level.

41.     This COVID-19 screening should have been paid by Amazon because it constitutes compensable time worked. During this time, Plaintiffs and Class Members were subject to Amazon's control.

42.     Plaintiffs and the Class Members were required to follow Amazon's instructions while awaiting and during the COVID-19 screening. Amazon required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Amazon and its employees were required to comply under threat of discipline, including possible termination.

43.     Additionally, Plaintiffs and the Class Members were confined to the premises of Amazon when they waited for the examination and during the examination.

44.     Moreover, Amazon compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

45.     In other words, Amazon directed, commanded, and restrained its employees during the COVID-19 examinations; prevented them from using that time effectively for their own

8

purposes; and Plaintiffs and the Class Members remained subject to Amazon's control during the examinations.

46.     The COVID-19 screenings were also necessary to the principal work performed by Plaintiffs and the Class Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Amazon's premises, were controlled and required by Amazon, and undertaken primarily for the benefit of Amazon.

47.     Indeed, Amazon required Plaintiffs and the Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent Plaintiffs and the Class Members from inadvertently and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers. Likewise, the job duty of Plaintiffs and the Class Members was to serve the customers of Amazon and the screening was necessary to ensure that Plaintiffs and the Class Members safely provide that service to Amazon's customers.

48.     The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiffs and the Class Members or affect the business operations of Amazon. If Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon. Plaintiffs and the Class Members could not perform their work for Amazon if there was a mass breakout of the virus at the Amazon facilities. Furthermore, the COVID-19 virus directly affects the health of workers. If Plaintiffs and the Class Members became infected with the virus, their health would suffer. Symptoms of the virus include fatigue, lack of strength, coughing, headaches, and other symptoms. Plaintiffs and the Class Members could not perform their work for Amazon if they

were infected with the virus.

49.     Moreover, the COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiffs and the Class Members, which was to serve and assist Amazon customers receiving their purchased items. The COVID-19 screenings were necessary for Plaintiffs and Class Members to perform their primary job duty for Amazon. If Amazon cancelled the COVID-19 screenings, the Amazon facilities could get contaminated with the virus, the items that Amazon sold could get contaminated with the virus, the customers could get infected, and other employees of Amazon could get infected. In that event, Amazon's business would be disrupted, and Plaintiffs and Class Members would not be able to do their work. Therefore, the COVID-19 screenings were necessary to ensure that Plaintiffs and Class Members could do their jobs for Amazon.

50.     The COVID-19 screenings were also integral and indispensable to the principal activity and primary job duty performed by Plaintiffs and the Class Members because the COVID-19 screenings were necessary to ensure that Amazon workers could perform their work safely, to prevent contamination from the virus, and to keep the customers of Amazon safe.  If employees became infected with the virus, they would not be able to provide their services to Amazon.  Moreover, if Amazon customers received packages that were infected with the virus, the customers would likely no longer use Amazon's services.

51.     Thus, the COVID-19 screenings were necessary for the Plaintiffs and Class Members to do their work for Amazon and without the screenings, their ability to do their jobs would have been compromised.  Plaintiffs and the Class Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired.  The screenings prevented the COVID-19 virus from spreading through Amazon's

10

facilities and infecting employees and products, thereby allowing Amazon employees to continue to work.

52.     Under these facts, the COVID-19 screenings were also for the benefit of Amazon and its customers. The COVID-19 screenings allowed Amazon's operations to continue and therefore, allowed Amazon to earn a profit. Similarly, the COVID-19 screenings benefited Amazon's customers by allowing them to receive products in a timely basis and to receive products that were not contaminated. Indeed, the COVID-19 screenings were conducted by Amazon with the intent for Amazon to benefit, to earn more profits, and to continue its business. In fact, Amazon's business substantially grew during the pandemic and it appears that the pandemic provided a windfall for Amazon's operations.

53.     The COVID-19 screenings were also primarily for the benefit of Amazon because Amazon's COVID-19 screening policy was intended to keep its fulfillment centers and distribution centers as safe of a workplace as possible given the circumstances of the global pandemic. Amazon's COVID-19 screening policy was also intended to ensure the safety of Amazon's workers and to ensure that Amazon complied with the law.  By making the workplace safe, Amazon increased the efficiency of Amazon's operations and allowed it to make billions in profits during the pandemic.  Indeed, having business operations continue without interruption undoubtedly increased the profits of Amazon.  Similarly, complying with all laws ensured Amazon could continue to operate and earn profits.  Moreover, having employees who are healthy and able to perform their work ensures that Amazon can continue to operate and earn profits.

54.     The COVID-19 screenings were to ensure that the virus did not disrupt the work performed by the Plaintiffs/Class Members or affect the business operations of Amazon.  If

11

Amazon facilities suffered an infection outbreak, Amazon would potentially have to find new employees or shut down its warehouses until it was safe to open again. Such an outbreak would harm Amazon directly and cause it to lose significant profits. Given this substantial risk to Amazon's business operations, Amazon primarily benefitted from the COVID-19 screenings.

55. Under Illinois law, "hours worked" includes "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110.

56. Amazon's requirement for its employees to complete a COVID-19 screening prior to clocking in each shift constitutes "hours worked" under Illinois law. *See Boone v. Amazon*, 562 F.Supp.3d 1103 (E.D. Cal. 2022) (holding that time spent completing COVID-19 screenings is compensable under similar California state law).

57. Similarly, the time spent completing the COVID-19 screenings is compensable under the FLSA.

58. The Department of Labor has issued regulations stating that physical and health examinations, like the COVID-19 examination, constitutes time that should be paid for by employers. *See* 29 CFR § 785.43.

> In an opinion letter, the Department of Labor has further stated as follows: Time spent undergoing a physical examination is time during which the employee's freedom of movement is restricted for the purpose of serving the employer and time during which the employee is subject to the employer's discretion and control. It is immaterial whether the time spent in undergoing the required physical examination is during the employee's normal working hours or during nonworking hours. The physical examination is an essential requirement of the job and thus primarily for the benefit of the employer. **Therefore, it is our opinion that the time so spent must be counted as hours worked under the FLSA.**

DOL Wage and Hour Opinion Letter, January 26, 1998 (emphasis added).

59.     In light of Amazon's conduct, Plaintiffs and Class Members are owed significant unpaid wages and penalties.

60.     Plaintiffs and Class Members are and were non-exempt employees.

61.     Plaintiffs and Class Members are paid on an hourly rate basis.

62.     When they work more than forty (40) hours in a workweek, they are entitled to overtime pay.

63.     The COVID-19 screenings identified above were not incidental activities for the Plaintiffs and Class Members, but instead, this time was integral and indispensable to their principal activity, was controlled by Amazon, was required by Amazon, was conducted on Amazon's premises, and was performed primarily for the benefit of Amazon and its customers. Therefore, the time spent by the Plaintiffs and Class Members completing the COVID-19 screenings is compensable.

64.     Although Amazon employs electronic "clocking-in" technology, this technology was not made accessible to Plaintiffs and Class Members before the COVID-19 screenings.

65.     As a result of Amazon's company-wide policies, Plaintiffs and Class Members were not paid for all time worked each day and are owed significant unpaid wages.

66.     Amazon's method of paying Plaintiffs and Class Members in violation of Illinois law and federal law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Amazon knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## V.     RULE 23 CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the Illinois Class, which is comprised of:

### Illinois Minimum Wage Law Class

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening and worked at least 40 hours during at least one week in Illinois in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

### Illinois Wage Payment and Collection Act Class

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening in Illinois.**

68. In the alternative to the claim filed under the Illinois Wage Payment and Collection Act, Plaintiffs bring a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Quantum Meruit Class, which is comprised of:

### Quantum Meruit Class

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening in Illinois.**

69. <u>Numerosity</u>:  The number of members in the Illinois Class is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the Illinois Class before this Court impracticable. Likewise, joining each individual member of the Illinois Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Illinois Class will be determined from Amazon's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Illinois Class Members and Amazon.

70. <u>Typicality</u>:  Plaintiffs' claims are typical of the Illinois Class Members' claims because like the members of the Illinois Class, Plaintiffs were subject to Amazon's uniform

policies and practices and were compensated in the same manner as others in the Illinois Class. Amazon failed to pay the Illinois Class Members for all overtime hours they worked. Additionally, members of the Illinois Class worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiffs and the Illinois Class Members have been uncompensated and/or under-compensated as a result of Amazon's common policies and practices which failed to comply with Illinois law. As such, Plaintiffs' claims are typical of the claims of the Illinois Class Members. Plaintiffs and all members of the Illinois Class sustained damages arising out of and caused by Amazon's common course of conduct in violation of law as alleged herein.

71.    <u>Adequacy</u>:  Plaintiffs are representative parties who will fairly and adequately protect the interests of the Illinois Class Members because it is in their interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Illinois law. Plaintiffs have retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Illinois Class Members they seek to represent.

72.    <u>Commonality</u>:  Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

      a.    Whether Plaintiffs and the Illinois Class Members are entitled to compensation for the time spent in the COVID-19 screenings;

      b.    The amount of time spent in the COVID-19 screenings;

      c.    Whether Plaintiffs and the Illinois Class Members worked more than forty (40) hours in a workweek;

      d.    Whether Amazon failed to pay Plaintiffs and the Illinois Class Members wages

15

for all overtime hours worked; and

e.   The proper measure of damages sustained by Plaintiffs and the Illinois Class

Members.

73.   Superiority:  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Illinois Class could afford to pursue individual litigation against a company the size of Amazon, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Illinois Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Amazon.

74.   A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Illinois Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Illinois Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the Illinois Class is readily identifiable from Amazon's records.

75.   This type of case is well-suited for class action treatment because: (1) Amazon's practices, policies, and/or procedures were uniform; (2) the burden is on Amazon to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Amazon to accurately record hours worked by employees. Ultimately, a class

16

action is a superior form to resolve the Illinois claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Amazon to pay Plaintiffs and the Class per applicable Illinois laws.

## VI.    COLLECTIVE ACTION ALLEGATIONS

76.    Plaintiffs have actual knowledge that the FLSA Collective Members have also been denied pay for hours worked over forty (40) per workweek.  Plaintiffs worked with and communicated with other hourly, non-exempt employees and as such, have personal knowledge of their existence, status as Amazon's employees, pay structure, and the overtime violations.

77.    Amazon has employed numerous other employees throughout Illinois during the last three years, who were paid on an hourly basis, were classified as not exempt from overtime, and who underwent the COVID-19 medical screening without pay.

78.    As such, the "FLSA Collective" is properly defined as follows:

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening and worked at least 40 hours during at least one week in the three-year period before the filing of this Complaint to the present.**

79.    Although Amazon permitted and/or required the FLSA Collective Members  to work in excess of forty (40) hours per workweek, Amazon has denied them compensation for their hours worked over forty (40).

80.    Plaintiffs are representatives of the FLSA Collective in that they were classified as non-exempt from overtime, were paid on an hourly basis and underwent the COVID-19 screening without pay.  Plaintiffs are acting on behalf of the FLSA Collective's interests as well as Plaintiffs' own interests in bringing this action.

81.    The FLSA Collective Members  were classified as non-exempt.

82.    The FLSA Collective Members  were paid on an hourly basis.

83.     The FLSA Collective Members underwent the COVID-19 screenings.

84.     The FLSA Collective Members  regularly work or have worked in excess of forty (40) hours during a workweek.

85.     The FLSA Collective Members were not paid for the time spent in the COVID-19 screenings.

86.     The policy of failing to pay for the time spent in the COVID-19 screenings is universal across the defined FLSA Collective and forms the basis of the overtime violation.

87.     The FLSA Collective Members  are not exempt from receiving overtime pay under the FLSA.

88.     As such, the FLSA Collective Members  are similar to the Plaintiffs in terms of pay structure and/or the denial of overtime compensation.

89.     Amazon's failure to pay overtime compensation at the rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Collective Members.

90.     The experiences of the Plaintiffs with respect to their pay and process for completing the COVID-19 screenings is typical of the experiences of the FLSA Collective Members.

91.     The specific job titles or precise job responsibilities of each FLSA Collective Member does not prevent collective treatment.

92.     All FLSA Collective Members, irrespective of their particular job requirements, are entitled to overtime compensation at the rate of time and a half for hours worked in excess of forty (40) during a workweek.

93.     Although the exact amount of damages may vary among FLSA Collective Members, the damages can be easily calculated by a simple formula.  The claims of all FLSA Collective Members arise from a common nucleus of facts.   Liability is based on a systematic course of wrongful conduct by Amazon that caused harm to all FLSA Collective Members.

94.     The similarly situated FLSA Collective Members are known to Amazon, are readily identifiable, and can be located through Amazon's records.  They should be notified and allowed to opt into this action pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages and/or prejudgment interest, and attorneys' fees and costs.

95.     Unless the Court promptly issues such notice, the numerous similarly situated workers nationwide will be unable to secure unpaid overtime pay, which has been unlawfully withheld by Amazon.

**VII.     CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**

**Failure to Pay Overtime as Required by the Illinois Minimum Wage Law**

96.     All previous paragraphs are incorporated as though fully set forth herein.

97.     The Illinois Minimum Wage Law ("IMWL") entitles covered employees to overtime compensation of not less than one and one-half ($1^1/_2$) times the employee's regular rate of pay for all hours worked in excess of forty (40) in one workweek. *See* 820 Ill. Comp. Stat § 105/4a(1).

98.     Amazon is subject to the IMWL's overtime requirements because Amazon is an employer under 820 Ill. Comp. Stat § 105/3(c).

99.     During all relevant times, Plaintiffs and the Illinois Class Members were covered employees entitled to the above-described IMWL protections. *See* 820 Ill. Comp. Stat. § 105/3(d).

100.    Plaintiffs and the Illinois Class Members are not exempt from the IMWL.

101.    Plaintiffs and the Illinois Class Members routinely worked in excess of 40 hours per workweek.

102.    As described in the foregoing paragraphs, Amazon's compensation policies and practices are in violation of the IMWL. *See* 820 ILCS § 115/1 *et seq.*

103.    Amazon knowingly failed to compensate Plaintiffs and the Illinois Class Members for all hours worked and hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL. *See* 820 Ill. Comp. Stat. § 105/4a(1).

104.    Pursuant to 820 Ill. Comp. Stat. § 105/12(a), employers such as Amazon who fail to pay an employee wages in conformance with the IMWL, shall be liable to the employee for, inter alia, unpaid wages for three years prior to the filing of the lawsuit, statutory penalties in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Violation of the Illinois Wage Payment and Collection Act

105.    All previous paragraphs are incorporated as though fully set forth herein.

106.    This count arises under the Illinois Wage Payment and Collection Act for Amazon's failure and refusal to pay Plaintiffs and Illinois Class Members for all the wages they earned.

107.    The Illinois Wage Payment and Collection Act ("IWPCA") requires employers to pay employees all wages earned within 13 days after the end of a semi-monthly or bi-weekly pay period or within seven days after a weekly pay period in full at the lawful rate. *See* 820 Ill. Comp. Stat. § 115/4.

108.    If an employer fails to pay an employee all wages earned by the statutory deadline, the employee may commence a civil action to recover the amount of any underpayment and damages in the amount of five percent (5%) of each underpayment compounded monthly, plus costs and reasonable attorneys' fees. *See* 820 Ill. Comp. Stat. § 115/14.

109.    Pursuant to 735 Ill. Comp. Stat. § 5/13-206, the statute of limitations applicable to the IWPCA is ten years after accrual of the cause of action.

110.    Amazon agreed to pay Plaintiffs an hourly rate of pay for the time they spent performing the duties and/or tasks Amazon directed them to perform.

111.    Amazon agreed to pay Illinois Class Members an hourly rate of pay for the time they spent performing the duties and/or tasks Amazon directed them to perform.

112.    During the course of their employment with Amazon, and as a result of Amazon's COVID-19 screen, Amazon did not compensate Plaintiffs for all time they spent performing the duties and/or tasks Amazon directed them to perform.

113.    Amazon also failed to pay other Illinois Class Members for all time they spent performing the duties and/or tasks Amazon directed them to perform.

114.    Amazon's actions, policies and/or practices as described above violate the IWPCA by failing to compensate Plaintiffs and the Illinois Class Members for all wages they earned.

115.    As a direct and proximate result of this practice, Plaintiffs and the Illinois Class Members have suffered loss of income and other damages to be determined at trial.

116.    As such, Plaintiffs and the Illinois Class Members are entitled to the underpayment, damages in the amount of five percent (5%) per month of the amount of the underpayment, and reasonable attorneys' fees and costs. *See* 820 Ill. Comp. Stat. § 115/14.

### THIRD CLAIM FOR RELIEF

### Violation of the Fair Labor Standards Act

117.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

118.    The FLSA requires each covered employer, such as Amazon, to compensate all non-exempt employees at a rate of not less than one-and-a-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek.

119.    Plaintiffs and the FLSA Collective Members were entitled to be paid overtime compensation for all overtime hours worked at the rate of one and one-half times their regular rate of pay.

120.    At all relevant times, Amazon required and/or permitted Plaintiffs and the FLSA Collective Members to work in excess of forty (40) hours per workweek. Despite the hours worked by them, Amazon willfully, in bad faith, and knowingly violated the FLSA, failed and refused to pay Plaintiffs and the FLSA Collective Members the appropriate overtime wages for all compensable time worked in excess of forty (40) hours per workweek.

121.    Plaintiffs and the FLSA Collective Members were not paid the full amount of overtime wages due under the FLSA as a result of Amazon's failure and refusal to classify the time spent in the COVID-19 screening as compensable time.

122.    By failing to compensate Plaintiffs and the FLSA Collective Members at a rate of not less than one-and-a-half times the regular rate of pay for work performed in excess of forty

A28

(40) hours in a workweek, Amazon has violated the FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. § 207(a).

123.    Plaintiffs and the FLSA Collective Members seek recovery of their damages, unpaid overtime pay, liquidated damages, attorneys' fees, costs and expenses.

124.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

## FOURTH CLAIM FOR RELIEF

### Quantum Meruit (Pleaded in the Alternative to the IWPCA Count)

125.    Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Amazon as a requirement to work each shift. The examination was conducted on the premises of Amazon, was required by Amazon, and was necessary for each employee to perform his/her work for Amazon.

126.    Amazon did not pay employees for the time they spent undergoing the COVID-19 screenings.

127.    Plaintiffs and other current and former hourly paid employees of Amazon who underwent a COVID-19 screening in Illinois (the Quantum Meruit Class) provided and furnished Amazon their valuable time and services by submitting to required COVID-19 screenings.

128.    Amazon benefitted from the time Plaintiffs and the Quantum Meruit Class spent in COVID-19 screenings.

129.    It would be unjust for the Amazon to retain the benefit of Plaintiffs' time and the time of the Quantum Meruit Class spent in Amazon's required COVID-19 screenings without paying for such time.

130.    Plaintiffs and the Quantum Meruit Class, by providing unpaid labor, conveyed a benefit to Amazon which Amazon knowingly received.

131.    Instead of incurring significant business, operating, and labor costs by paying for these services, Amazon knowingly shifted that responsibility, risk, and considerable cost to Plaintiffs and the Quantum Meruit Class. As a result, Amazon was unjustly enriched because those shifted costs were borne and absorbed by Plaintiffs and the Quantum Meruit Class.

132.    Amazon is not entitled to this benefit without payment to Plaintiffs and the Quantum Meruit Class, and retention of such benefits, without payment, would be unjust to Plaintiffs and the Quantum Meruit Class.

133.    By the course of conduct set forth above, Amazon is liable to Plaintiffs and the Quantum Meruit Class under Quantum Meruit.

134.    Due to Amazon's actions, Plaintiffs and the Quantum Meruit Class are entitled to recover all of their unpaid regular (but not overtime) compensation, and such other legal and equitable relief stemming from Amazon's conduct.

## VIII. **JURY DEMAND**

135.    Plaintiffs hereby demand a trial by jury on all issues.

## IX.    **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all Class Members, pray that the Court:

1.    Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2.    Certify that this action may proceed as a collective action under 29 U.S.C. § 216(b);

3.    Appoint Plaintiffs as Representatives of the Illinois Class and FLSA Collective, and appoint their counsel as Class Counsel;

4.    Find and declare that Amazon's policies and/or practices described above violate

Illinois law;

5.    Award all unpaid wages, unpaid overtime, liquidated damages, penalties, interest, and/or restitution to be paid by Amazon for the causes of action alleged herein;

6.    Award costs, and expenses, including reasonable attorneys' fees and expert fees;

7.    Award pre-judgment and post-judgment interest, as provided by law; and

8.    Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Date: February 28, 2023                    Respectfully submitted,

s/Don J. Foty
Don J. Foty- dfoty@hftrialfirm.com
HODGES & FOTY, LLP
Bar No. 24050022
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Tel: (713) 523-0001

AND

Douglas M. Werman- dwerman@flsalaw.com
Maureen A. Salas – msalas@flsalaw.com
WERMAN SALAS P.C.
77 W. Washington, Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LISA JOHNSON and GALE MILLER ANDERSON, individually and on behalf of all other similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>      Defendant. | No. 23 C 685<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that Amazon failed to pay them for time spent being screened for COVID, in violation of: the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment Collection Act. Amazon has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. That motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual

allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

Plaintiffs worked at an Amazon warehouse in Chicago. Their "job duties included moving boxes, stacking packages, and loading boxes." With the COVID outbreak, Amazon began requiring employees "to undergo a temperature check and to answer questions about [their] health. If the employee passed the examination, he/she was then given a mask to wear." This process took "approximately" 10-15 minutes.

Plaintiffs allege that the "COVID-19 screenings were . . . necessary to the principal work performed by Plaintiffs and the Class Members and were necessary to ensure a safe workplace." They also allege that "Amazon required Plaintiffs and the Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent Plaintiffs and the Class Members from inadvertently

and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers."

## Analysis

## I.  Fair Labor Standards Act ("FLSA")

The FLSA's minimum wage and overtime compensation requirements do not apply to "activities which are preliminary to or postliminary to" the "principal activity or activities which [the] employee is employed to perform." 29 U.S.C. § 254(a). "The Supreme Court consistently has interpreted 'principal activity' to include all activities which are 'integral and indispensable' to the principal activity." *Chagoya v. City of Chicago*, 992 F.3d 607, 618 (7th Cir. 2021) (quoting *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014)). The Supreme Court has also held that an activity is "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Busk*, 574 U.S. at 33.

Supreme Court precedent provides examples. For instance, the time meat-packers spend sharpening their knives is "integral and indispensable." *See Busk*, 574 U.S. at 518 (citing *Mitchell v. King Packing Co.,* 350 U.S. 260, 262 (1956)). So is changing clothes and showering for workers dealing with toxic materials. *See Busk*, 574 U.S. at 518 (citing *Steiner v. Mitchell,* 350 U.S. 247, 252-53 (1956)). However, the time spent by meat-processing plant workers *waiting* for the opportunity to dress in protective gear was not compensable because it was "two steps removed from the

productive activity on the assembly line." *See Busk*, 574 U.S. at 518 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 42 (2005)). Furthermore, the time warehouse workers spent "undergoing post-shift security screenings," i.e., to check whether they were stealing, was not part of their principal activity "to retrieve products from warehouse shelves and package those products for shipment." *See Busk*, 574 U.S. at 518. Neither was a pre-shift search of employees in a "rocket-powder plant" when they were searched "for matches, spark producing devices such as cigarette lighters, and other items which have a direct bearing on the safety of the employees." *See Busk*, 574 U.S. at 519 (citing with approval Department of Labor guidance).

Here, there is no dispute that Plaintiffs' "principal activities" are "moving boxes, stacking packages, and loading boxes." A COVID screening is neither integral nor indispensable to that work. It is not indispensable like sharpening a meat-packers knife or putting on the protective clothing for work with toxic materials. And the screening is not integral to the functioning of the warehouse generally.

COVID screenings are much more like the security screenings for theft or safety. Those screenings are concerned with aspects of society generally, i.e., the temptation to steal and possession of devices which might create sparks. The screenings enabled to the businesses to function more efficiently or safely, but they are not necessary for the business to function on any given day.

Plaintiffs argue that COVID screenings were necessary to protect the workers in the warehouse and prevent the potential infection of customers through packages. Perhaps these are legitimate reasons for Amazon to impose the screenings on its

employees. But this kind of protection for workers and customers is not necessary for the workers to do their jobs in the warehouse. Because the screenings are not necessary for the warehouse to function, the screenings are not integral or indispensable, and the FLSA does not require compensation for the time spent on COVID screenings.

Plaintiffs cite one district court case which held that the FSLA required compensation for COVID screenings at an Amazon warehouse. *See Boone v. Amazon.com Servs., LLC*, 562 F. Supp. 3d 1103 (E.D. Cal. Mar. 11, 2022). In *Boone*, the court found that the plaintiffs had plausibly alleged that "the screenings prevent the COVID-19 virus from spreading throughout defendant's fulfillment centers and infecting employees and products," and that "foregoing [the screenings] would substantially impair the workplace safety at the fulfillment centers." *Id.* at 1120-21. Even assuming the plaintiffs in *Boone* and the Plaintiffs here have plausibly alleged that COVID is a material risk to the operations of an Amazon warehouse, it is not a risk that is integral to warehouse work. COVID and other health issues are a risk of life in general that must be accounted for in all human activities. There is nothing special about COVID that makes it of particular concern for an Amazon warehouse because of the work performed there, as opposed to any other workplace where many people come into contact with each other.[1]

---

[1] Additionally, it appears that the court in *Boone* allowed outdated case law to influence its application of the *Busk* standard. This is an additional reason *Boone* does not persuade this Court.

Therefore, the FLSA does not require compensation for the COVID screening time Plaintiffs allege and their FLSA claim must be dismissed.

## II. Illinois Minimum Wage Law ("IMWL")

"Illinois courts frequently say that they look to the Fair Labor Standards Act for guidance in interpreting the state's minimum wage law." *Mitchell v. JCG Indust., Inc.*, 745 F.3d 837, 845 (7th Cir. 2014). The Seventh Circuit has applied *Busk's* "integral and indispensable" standard to claims under the IMWL. *See Chagoya*, 992 F.3d at 615 n.21 ("Because the IMWL parallels the language of the FLSA, the parties agree that the same standard applies to the operators' claims under the FLSA and the IMWL. Accordingly, we analyze the FLSA and IMWL claims together."). Courts in this District that dismiss FLSA claims under the "integral and indispensable" standard also dismiss IMWL claims. *See Bartlett v. City of Chicago*, 2019 WL 4823532, at *4 (N.D. Ill. Oct. 1, 2019) (analyzing "FLSA and IMWL claims together" because both statutes use the federal definition of work, as modified by the Portal-to-Portal rule, to determine whether pre- or post-shift activities require wages); *Meadows v. NCR Corp.*, 2017 WL 5192009, at *4-8 (N.D. Ill. Nov. 9, 2017) (same); *Pizano v. Big Top & Party Rentals, LLC*, 2017 WL 1344526, at *1-3 & n.1 (N.D. Ill. Apr. 12, 2017) (same); *Guzman v. Laredo Sys., Inc.*, 2012 WL 5197792, at *5 (N.D. Ill. Oct. 19, 2012) (same); *Rix v. UPS*, 2007 WL 9813347, at *4 (N.D. Ill. Apr. 24, 2007) (same); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1882449, at *3-4 (N.D. Ill. Aug. 18, 2004) (same); *O'Brien v. Encotech Constr.*, 2004 WL 609798, at *4-7 (N.D. Ill. Mar. 23, 2004) (same).

Plaintiffs' only argument to the contrary is based on a dissenting opinion to the Seventh Circuit's decision in *Mitchell* applying federal FLSA standard to Illinois Minimum Wage Law claims. This Court follows the majority and dismisses Plaintiffs' Illinois Minimum Wage Law claim.

## III.   Illinois Wage Payment Collection Act ("IWPCA")

The IWPCA allows for a cause of action to recover "any compensation owed an employee by an employer pursuant to an employment contract or agreement." 820 ILCS 115/2. Plaintiffs allege and argue that "Amazon agreed to pay Plaintiffs an hourly rate of pay for the time they worked at Amazon's facility." R. 25 at 24. But as just discussed, Amazon disputes whether the time spent on COVID screening is "work." Plaintiffs do not allege that Amazon ever agreed that the COVID screening would constitute compensable work. Without a plausible allegation of such an agreement, Plaintiffs' IWPCA claim fails.

## IV.   Quantum Meruit

To state a claim for quantum meruit, Plaintiffs must allege that that they spent time on the COVID screening for Amazon's benefit and that Amazon unjustly retained this benefit. *See Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 825-26 (Ill. App. Ct. 1st Dist. 2010). As discussed, the COVID screening conferred a benefit not just on Amazon, but on Plaintiffs, their co-workers, and society as a whole, because it—according to Plaintiffs' own allegations—helped mitigate a global pandemic. Further, Plaintiffs' allegation of unjust or improper conduct "rests on the same improper conduct" alleged to violate the federal and state statutes.

Because the benefit was not Amazon's alone, and because the alleged unjust conduct is premised on statutes which the Court has held do not prohibit the conduct, Plaintiffs' quantum meruit claims must fall with those claims. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

## Conclusion

Therefore, Amazon's motion to dismiss [21] is granted. Plaintiffs' claims are dismissed without prejudice to filing an amended complaint by 1/11/2024. If Plaintiffs fail to file an amended complaint by 1/11/2024, the dismissal with be with prejudice. If Plaintiffs decided not to file an amended complaint, they should inform the Court by email to the Courtroom Deputy as soon as possible so judgment can be entered and the case closed.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 7, 2023

ILND 450 (Rev. 10/13) Judgment in a Civil Action

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

Lisa Johnson,

Plaintiff(s),

v.

Amazon.Com Services, LLC,

Defendant(s).

Case No. 1:23-cv-00685
Judge Thomas M. Durkin

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐      in favor of plaintiff(s)
        and against defendant(s)
        in the amount of $      ,

              which ☐ includes     pre–judgment interest.
                     ☐ does not include pre–judgment interest.

        Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

        Plaintiff(s) shall recover costs from defendant(s).

---

☒      in favor of defendant(s) Amazon.Com Services, LLC
        and against plaintiff(s) Lisa Johnson, Gale Miller Anderson

.

        Defendant(s) shall recover costs from plaintiff(s).

---

☐      other:

---

This action was *(check one)*:

☐ tried by a jury with Judge     presiding, and the jury has rendered a verdict.
☐ tried by Judge    without a jury and the above decision was reached.
☒ decided by Judge Thomas M. Durkin on a motion to dismiss.

Date: 1/4/2024                  Thomas G. Bruton, Clerk of Court

                                 E. Wall, Deputy Clerk