# No. 24-1028

# In the United States Court of Appeals
## FOR THE SEVENTH CIRCUIT

LISA JOHNSON and GALE MILLER ANDERSON,
individually and on behalf of all others similarly situated,

*Plaintiffs - Appellants*

v.

AMAZON.COM SERVICES LLC,

*Defendant - Appellee*

On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:23-cv-00685 (Hon. Thomas M. Durkin)

## BRIEF OF APPELLEE

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

SARI M. ALAMUDDIN
KEVIN F. GAFFNEY
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000

*Counsel for Defendant-Appellee Amazon.com Services LLC*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1028

Short Caption: Lisa Johnson, et al v. Amazon.com Services LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Amazon.com Services LLC (Revised information.)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morgan, Lewis & Bockius LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Amazon.com Sales, Inc. is the sole member of Amazon.com Services LLC. Amazon.com Sales, Inc. is a wholly owned subsidiary of parent company Amazon.com, Inc.  (Revised information.)

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

For Amazon.com Services LLC: Amazon.com Sales, Inc.  For Amazon.com Sales, Inc.: Amazon.com, Inc.  For Amazon.com, Inc.: None.  (Revised information.)

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

Not applicable.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Not applicable.

Attorney's Signature: /s/ Sari M. Alamuddin          Date: April 19, 2024

Attorney's Printed Name:  Sari M. Alamuddin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  Morgan, Lewis & Bockius LLP

110 North Wacker Drive, Chicago, IL 60606

Phone Number: (312) 324-1158          Fax Number:  (312) 324-1001

E-Mail Address: sari.alamuddin@morganlewis.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1028

Short Caption: Lisa Johnson, et al v. Amazon.com Services LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

✓    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Amazon.com Services LLC (Revised information.)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morgan, Lewis & Bockius LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

Amazon.com Sales, Inc. is the sole member of Amazon.com Services LLC. Amazon.com Sales, Inc. is a wholly owned subsidiary of parent company Amazon.com, Inc.  (Revised information.)

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

For Amazon.com Services LLC: Amazon.com Sales, Inc.  For Amazon.com Sales, Inc.: Amazon.com, Inc.  For Amazon.com, Inc.: None.  (Revised information.)

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

Not applicable.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Not applicable.

Attorney's Signature: /s/ Michael E. Kenneally    Date: April 19, 2024

Attorney's Printed Name: Michael E. Kenneally

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✓

Address: Morgan, Lewis & Bockius LLP

1111 Pennsylvania Avenue, NW, Washington, DC 20004

Phone Number: (202) 739-5893    Fax Number: (202) 739-3001

E-Mail Address: michael.kenneally@morganlewis.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1028

Short Caption: Lisa Johnson, et al v. Amazon.com Services LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Amazon.com Services LLC (Revised information.)

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Morgan, Lewis & Bockius LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Amazon.com Sales, Inc. is the sole member of Amazon.com Services LLC. Amazon.com Sales, Inc. is a wholly owned subsidiary of parent company Amazon.com, Inc. (Revised information.)

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        For Amazon.com Services LLC: Amazon.com Sales, Inc. For Amazon.com Sales, Inc.: Amazon.com, Inc. For Amazon.com, Inc.: None. (Revised information.)

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    Not applicable.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    Not applicable.

Attorney's Signature: /s/ Kevin F. Gaffney    Date: April 19, 2024

Attorney's Printed Name: Kevin F. Gaffney

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Morgan, Lewis & Bockius LLP

    110 North Wacker Drive, Chicago, IL 60606

Phone Number: (312) 324-1138    Fax Number: (312) 324-1001

E-Mail Address: kevin.gaffney@morganlewis.com

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENTS.......................................................... i

TABLE OF AUTHORITIES ............................................................ vi

JURISDICTIONAL STATEMENT .....................................................1

INTRODUCTION ........................................................................2

STATEMENT OF THE ISSUES.......................................................4

STATEMENT OF THE CASE .........................................................5

    I.    In 2020, Amazon instituted pre-shift screenings for COVID symptoms to protect against possible spread of the virus.............5

    II.    The district court held that Plaintiffs' allegations failed to state a claim for relief.......................................................8

SUMMARY OF ARGUMENT ....................................................... 10

ARGUMENT ............................................................................ 12

    I.    The district court correctly held that Plaintiffs failed to state a claim under the IMWL. .................................... 12

        A.    The IMWL adheres to the PPA amendments to the FLSA. ................................................................. 13

            1.    Each branch of the Illinois government construes the IMWL to be consistent with the FLSA generally. ......................................... 13

            2.    Courts construe the IMWL to be consistent with the PPA's definition of work. ........................... 17

            3.    Plaintiffs' reliance on Ill. Admin. Code tit. 56, § 210.110 does not advance their cause................... 26

            4.    Plaintiffs' comparisons to select other states do not shed light on Illinois law. .................................... 29

        B.    These COVID screenings would not qualify as work even if the IMWL rejected the PPA. .................................. 31

    II.    There is no basis to certify a question to the Illinois Supreme Court. .............................................................. 34

iv

# TABLE OF CONTENTS
### (continued)

A.     Plaintiffs' proposed question will not control the outcome ........................................................................ 34

B.     The Court already has ample judicial guidance. ............... 36

CONCLUSION ..................................................................................... 38

CERTIFICATE OF COMPLIANCE ..................................................... 39

CERTIFICATE OF SERVICE .............................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaya v. DGS Constr., LLC,*
     278 A.3d 1216 (Md. 2022) ........................................................................... 29

*Anderson v. Mt. Clemens Pottery Co.,*
     328 U.S. 680 (1946) ................................................................... *passim*

*Barlett v. City of Chicago,*
     No. 14-cv-7225, 2019 WL 4823532 (N.D. Ill. Oct. 1, 2019) ........................ 19

*Bernardi v. Vill. of N. Pekin,*
     482 N.E.2d 101 (Ill. App. Ct. 1985) ............................................................ 14

*Buero v. Amazon.com Servs., Inc.,*
     521 P.3d 471 (Or. 2022) ................................................................................ 27

*Busk v. Integrity Staffing Sols., Inc.,*
     905 F.3d 387 (6th Cir. 2018) ........................................................................ 30

*Cannon v. Armstrong Containers Inc.,*
     92 F.4th 688 (7th Cir. 2024) ............................................................... 19, 37

*Chagoya v. City of Chicago,*
     992 F.3d 607 (7th Cir. 2021) ...................................................... *passim*

*Cothron v. White Castle Sys., Inc.,*
     20 F.4th 1156 (7th Cir. 2021) .............................................................. 35, 36

*Csomos v. Venetian Casino Resort, LLC,*
     381 P.3d 605 (Nev. 2012) .............................................................................. 30

*Del Rio v. Amazon.com Servs., Inc.,*
     No. 21-cv-1152, 2023 WL 6141140 (D. Conn. Sept. 20, 2023) ................... 27

*Driver v. AppleIllinois, LLC,*
     739 F.3d 1073 (7th Cir. 2014) .............................................................. 13, 16

*Driver v. AppleIllinois, LLC,*
     917 F. Supp. 2d 793 (N.D. Ill. 2013) .......................................................... 25

*Farmer v. DirectSat USA, LLC,*
No. 08-cv-3962, 2013 WL 12334777 (N.D. Ill. Oct. 17, 2013) ..................... 19

*Frlekin v. Apple Inc.,*
457 P.3d 526 (Cal. 2020) ................................................................ 29

*Guzman v. Laredo Sys., Inc.,*
No. 10-cv-1499, 2012 WL 5197792 (N.D. Ill. Oct. 19, 2012) ...................... 20

*Haynes v. Tru-Green Corp.,*
507 N.E.2d 945 (Ill. App. Ct. 1987) ................................................ 14

*Heimbach v. Amazon.com, Inc.,*
255 A.3d 191 (Pa. 2021) ............................................................... 29

*Hernandez v. Ill. Inst. of Tech.,*
63 F.4th 661 (7th Cir. 2023) ......................................................... 37

*Hughes v. UPS Supply Chain Sols., Inc.,*
677 S.W.3d 273 (Ky. 2023) ........................................................... 29

*IBP, Inc. v. Alvarez,*
546 U.S. 21 (2005) ................................................................ 23, 24

*Integrity Staffing Sols., Inc. v. Busk,*
574 U.S. 27 (2014) ............................................................... *passim*

*Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.,*
77 F.4th 546 (7th Cir. 2023) ..................................................... 34, 36

*Kerbes v. Raceway Assocs., LLC,*
961 N.E.2d 865 (Ill. App. Ct. 2011) ......................................... 13, 16, 30

*Ladegaard v. Hard Rock Concrete Cutters, Inc.,*
No. 00-cv-5755, 2001 WL 1403007 (N.D. Ill. Nov. 9, 2001) ...................... 15

*Ladegaard v. Hard Rock Concrete Cutters, Inc.,*
No. 00-cv-5755, 2004 WL 1882449 (N.D. Ill. Aug. 18, 2004) ..................... 20

*Larson v. United Healthcare Ins. Co.,*
  723 F.3d 905 (7th Cir. 2013)........................................................ 31

*Leone v. Mobil Oil Corp.,*
  523 F.2d 1153 (D.C. Cir. 1975)................................................... 33

*Lewis v. Giordano's Enters., Inc.,*
  921 N.E.2d 740 (Ill. App. Ct. 2009)........................................ 13, 15, 16, 30

*Lora v. United States,*
  599 U.S. 453 (2023) .................................................................... 16

*Meadows v. NCR Corp.,*
  No. 16-cv-6221, 2017 WL 5192009 (N.D. Ill. Nov. 9, 2017) ........................ 19

*Mitchell v. JCG Indus., Inc.,*
  745 F.3d 837 (7th Cir. 2014)..................................................*passim*

*Molina v. First Line Sols. LLC,*
  566 F. Supp. 2d 770 (N.D. Ill. 2007) .......................................... 25

*Moore v. Chi. Park Dist.,*
  978 N.E.2d 1050 (Ill. 2012)........................................................ 16

*Nat'l Cycle, Inc. v. Savoy Reinsurance Co.,*
  938 F.2d 61 (7th Cir. 1991)........................................................ 37

*O'Brien v. Encotech Constr.,*
  No. 00-cv-1133, 2004 WL 609798 (N.D. Ill. Mar. 23, 2004)........................ 20

*Ochoa-Salgado v. Garland,*
  5 F.4th 615 (5th Cir. 2021) ........................................................ 19

*Perez v. Walmart, Inc.,*
  No. 21-cv-120, 2021 WL 5741484 (W.D. Mo. Oct. 25, 2021)...................... 32

*Pizano v. Big Top & Party Rentals, LLC,*
  No. 15-cv-11190, 2017 WL 1344526 (N.D. Ill. Apr. 12, 2017) .................... 19

*Porter v. Kraft Foods Global, Inc.,*
    985 N.E.2d 310 (Ill. 2013) ............................................................ 37

*Porter v. Kraft Foods Global, Inc.,*
    No. 4-12-0258, 2012 WL 7051311 (Ill. App. Ct. Dec. 10, 2012) ................ 22

*Rite of Passage v. Nev., Dep't of Bus. & Indus.,*
    No. 66388, 2015 WL 9484735 (Nev. Dec. 23, 2015) .................................... 30

*Rix v. UPS,*
    No. 06-cv-3148, 2007 WL 9813347 (N.D. Ill. Apr. 24, 2007) ...................... 20

*Roberts v. State,*
    512 P.3d 1007 (Ariz. 2022) ............................................................ 30

*Sandifer v. U.S. Steel Corp.,*
    571 U.S. 220 (2014) ...................................................................... 21

*Sehie v. City of Aurora,*
    432 F.3d 749 (7th Cir. 2005) ........................................................... 33

*State Farm Mut. Auto. Ins. Co. v. Pate,*
    275 F.3d 666 (7th Cir. 2001) ................................................... 3, 35, 36

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123,*
    321 U.S. 590 (1944) .................................................................. 31, 33

*Thomas v. Amazon.com Servs., Inc.,*
    462 F. Supp. 3d 828 (N.D. Ohio 2020) ..................................... 27, 28

*Urnikis-Negro v. Am. Fam. Prop. Servs.,*
    616 F.3d 665 (7th Cir. 2010) ............................................. 13, 16, 18

*Vance v. Amazon.com, Inc.,*
    852 F.3d 601 (6th Cir. 2017) ........................................................ 28

*Wagner v. Air Methods Corp.,*
    539 F. Supp. 3d 1157 (D. Colo. 2021) ........................................... 25

*Wheat v. J.B. Hunt Transp., Inc.*,
   No. 15-cv-2849, 2016 WL 1397673 (C.D. Cal. Apr. 5, 2016) ....................... 33

*Wren v. RGIS Inventory Specialists*,
   No. 06-cv-5778, 2009 WL 2612307 (N.D. Cal. Aug. 24, 2009) ................... 20

**Federal and State Statutes**

29 U.S.C.
   § 202 ................................................................................................. 15
   § 203 ................................................................................................. 21
   § 207 ................................................................................................. 14
   § 254 ............................................................................................ *passim*

820 ILCS
   105/2 ................................................................................................ 15
   105/4a .............................................................................................. 14
   105/10 .............................................................................................. 16

N.R.S.
   § 608.016 .......................................................................................... 30
   § 608.018 .......................................................................................... 30

Portal-to-Portal Act of May 14, 1947, ch. 52, 61 Stat. 84 ........................ *passim*

**Regulations**

29 C.F.R.
   § 778.223 ..................................................................................... 26, 27
   § 785.7 ........................................................................................ 26, 27
   § 785.24 ............................................................................................ 27
   § 785.33-.41 ...................................................................................... 28
   § 790.5 ........................................................................................ 24, 25
   § 790.7 .............................................................................................. 24

Ill. Admin. Code tit. 56,
   § 210.110 ..................................................................................... 26, 28
   § 210.120 ................................................................................ 15, 16, 27

**Rules**

7th Cir. R. 52 .................................................................... 34

Ill. S. Ct. R. 20 ................................................................. 34

**Other Authorities**

79th Ill. Gen. Assemb., H.R., Transcript of June 16, 1976, 169,
https://www.ilga.gov/house/transcripts/htrans79/
HT061676.pdf .............................................................. 14

U.S. Dep't of Labor, Occupational Safety & Health Admin.,
*Guidance on Preparing Workplaces for COVID-19* 9 (2020),
https://www.osha.gov/sites/default/files/publications/
OSHA3990.pdf ...............................................................7

Illinois Dep't of Public Health, *Guidance for Employers and
Employees on Workers' Rights and Safety During the Restore
Illinois Plan* 2 (Dec. 9, 2020), https://dhr.illinois.gov/content/
dam/soi/en/web/dhr/documents/guidance-on-workers-rights-
and-safety-12-9-20.pdf ....................................................6

# JURISDICTIONAL STATEMENT

Plaintiffs' jurisdictional statement is correct but incomplete. Under Circuit Rule 28(a)(1), when a party in a diversity case is an unincorporated association, a jurisdictional statement must identify all members' citizenship. Defendant-Appellee Amazon.com Services LLC is a limited liability company whose sole member is Amazon.com Sales, Inc. D. Ct. Dkt. 1, ¶¶ 29-30; D. Ct. Dkt. 1-8, ¶¶ 2, 7. Amazon.com Sales, Inc. is a citizen of Delaware (where it is incorporated) and Washington (where it is headquartered). D. Ct. Dkt. 1, ¶ 30; D. Ct. Dkt. 1-8, ¶ 8. The district court had jurisdiction over this removed action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). There is minimal diversity between Defendant-Appellee, a citizen of Delaware and Washington, and Plaintiffs, who are both Illinois citizens, D. Ct. Dkt. 1, ¶ 28; A9 (¶¶ 11-12). The amount in controversy exceeds $5 million. D. Ct. Dkt. 1, ¶¶ 32-60. The putative class includes at least 100 members. *Id.* ¶¶ 22-26.

This court has appellate jurisdiction under 28 U.S.C. § 1291. The district court entered final judgment on January 4, 2024. A40. Plaintiffs timely filed their notice of appeal on January 5, 2024. A5; Fed. R. App. P. 4(a)(1)(A).

**INTRODUCTION**

This lawsuit originally claimed that Amazon's failure to compensate Illinois employees for pandemic-era, pre-shift screenings for COVID symptoms violated the federal Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), the Illinois Wage Payment and Collection Act, and the common law. The district court followed settled authority in dismissing each claim. Now, having lost across the board, Plaintiffs try a different strategy on appeal. They have abandoned all but their IMWL claim. And for it, their lead argument is that this Court should certify a question to the Illinois Supreme Court. But Plaintiffs' case still fails, and a certification bid cannot salvage it.

Plaintiffs no longer dispute that pre-shift COVID screenings are not compensable under the FLSA as amended by the Portal-to-Portal Act of 1947 ("PPA"). That amendment clarified the fundamental concept of work, which underlies all wage-and-hour law, by making clear that employers normally need not pay for preliminary activities, unless they are integral and indispensable to employees' actual work. *See, e.g.*, *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31-35 (2014); *Chagoya v. City of Chicago*, 992 F.3d 607, 616-20 (7th Cir. 2021); 29 U.S.C. §§ 254(a)(2), (d). The district court properly held that the COVID screenings here are preliminary activities and are not integral and indispensable to Plaintiffs' principal activities as warehouse employees. A35-36. Plaintiffs do not contest that holding on appeal.

Instead, they argue that the IMWL departs from federal law by rejecting the PPA's definition of work. But they have no authority for that argument. So they ask this Court to certify the question to the Illinois Supreme Court, hoping this Court will abandon its recent decision in *Chagoya*, multiple federal district court and state appellate court decisions, and Illinois regulatory guidance that all make clear that the IMWL adheres to the PPA. That is no basis for certification. Rather, "[t[he most important consideration" for a request for certification "is whether [this Court] finds itself genuinely uncertain about a question of state law that is vital to a correct disposition of the case," *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001) (citation omitted), and Plaintiffs fail this standard twice over.

First, there is no genuine uncertainty on whether Illinois follows the PPA criteria. Federal courts have had no difficulty with that question. They have routinely applied the PPA's rules for preliminary and postliminary activities to the IMWL—including this Court in *Chagoya*. They have done so, in part, because Illinois appellate courts have repeatedly endorsed using federal FLSA decisions and regulations when construing the IMWL. And an Illinois regulation endorses that approach, too. Illinois law is perfectly free to make that choice. *See, e.g.*, *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 845 (7th Cir. 2014) (noting that "[t]here is a benefit, in simplified labor relations, from a degree of convergence" of the FLSA and IMWL).

Second, and in any event, the PPA question Plaintiffs propose to certify is not "vital to a correct disposition" of this claim. As Amazon explained in the court below, these COVID screenings would not qualify as work even under the *pre-PPA* definitions that Plaintiffs prefer. Those definitions require that the activity in question be "pursued necessarily and primarily for the employer's benefit." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 693 (1946). The COVID screenings here were not necessarily and primarily for Amazon's benefit. On the contrary, and as the district court ruled in dismissing Plaintiffs' common law claim, "the COVID screening conferred a benefit not just on Amazon, but on Plaintiffs, their co-workers, and society as a whole, because it—according to Plaintiffs' own allegations—helped mitigate a global pandemic." A38. Plaintiffs have not appealed that part of the district court's ruling, which independently forecloses Plaintiffs' sole remaining claim under the IMWL. As a result, asking the Illinois Supreme Court to address the PPA question would be an academic exercise. The Court should deny that request and affirm.

## STATEMENT OF THE ISSUES

1.      Whether Plaintiffs' allegations fail to state a claim under the Illinois Minimum Wage Law because the relevant state law tracks the federal Portal-to-Portal Act.

2.     Whether Plaintiffs' allegations fail to state a claim under the Illinois Minimum Wage Law, regardless of the Portal-to-Portal Act, because COVID screenings were not pursued necessarily and primarily for Amazon's benefit.

3.     Whether this Court should certify the first issue to the Illinois Supreme Court.

## STATEMENT OF THE CASE

### I.     In 2020, Amazon instituted pre-shift screenings for COVID symptoms to protect against possible spread of the virus.

Amazon operates "large warehouses" in Illinois "where Amazon stores the packages that are delivered to customers." A11 (SAC ¶ 26). Plaintiff Lisa Johnson allegedly worked at an Amazon facility in Chicago as an "order picker and packer" from January 2019 to May 2021. A12 (SAC ¶ 27). Plaintiff Gale Miller Anderson allegedly worked for Amazon in Chicago and Joliet as a "fulfillment center associate" from October 2017 to October 2021. *Id.* (SAC ¶ 29). Both Plaintiffs describe their job duties as "moving boxes, stacking packages, and loading boxes." *Id.* (SAC ¶¶ 27, 29).

The impetus for this lawsuit is that Amazon, "[f]ollowing the outbreak of the Coronavirus," required Plaintiffs and other Illinois employees "to screen for symptoms of COVID-19" before clocking in each day. A13 (SAC ¶¶ 33-34). The screening allegedly consisted of a "temperature check" of entering

employees and unspecified "questions about [their] health." *Id.* (SAC ¶ 38). Plaintiffs admit that Amazon took these measures "to ensure the safety of Amazon's workers" during the pandemic and keep each of its facilities "as safe of a workplace as possible given the circumstances of the global pandemic." A17 (SAC ¶ 53). As Plaintiffs themselves allege, the COVID-19 coronavirus "infected over 100 million Americans and caused the death of over one million Americans." A11 (SAC ¶ 25). Plaintiffs assert that "[i]f Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon." A15 (SAC ¶ 48). Had Plaintiffs "bec[o]me infected with the virus, their health would [have] suffer[ed]." *Id.*

Amazon's policy was hardly unique. Checking for elevated temperatures or other coronavirus symptoms was widely viewed as a best practice during the pandemic. For example, the recommendation from the Illinois state government was that "employers should conduct temperature and/or symptom screenings of all employees prior to their entry to the workplace." Illinois Dep't of Public Health, *Guidance for Employers and Employees on Workers' Rights and Safety During the Restore Illinois Plan* 2 (Dec. 9, 2020), https:// dhr.illinois.gov/content/dam/soi/en/web/dhr/documents/guidance-on-workers-rights-and-safety-12-9-20.pdf. Federal guidance likewise explained that

"[p]rompt identification and isolation of potentially infectious individuals is a critical step in protecting workers, customers, visitors, and others at a worksite." U.S. Dep't of Labor, Occupational Safety & Health Admin., *Guidance on Preparing Workplaces for COVID-19* 9 (2020), https:// www.osha.gov/sites/default/files/publications/OSHA3990.pdf.

Plaintiffs allege that they received no compensation for the COVID screenings because they did not clock in until afterward. A13 (SAC ¶¶ 33-35, 38). They contend that passing through screening "constitutes compensable time that was worked by [them]" and brought four causes of action to recover wages for that time only. A7-8, A13 (SAC ¶¶ 1-6, 37).

Plaintiffs' Count I sought overtime wages under the IMWL. A25-26 (SAC ¶¶ 96-104). Count II sought "all wages earned" under the Illinois Wage Payment and Collection Act. A26-28 (SAC ¶¶ 105-16). Count III sought overtime wages under the FLSA. A28-29 (SAC ¶¶ 117-24). And Count IV, pleaded in the alternative to Count II, sought "regular (but not overtime)" wages under a common-law theory of quantum meruit. A29-30 (SAC ¶¶ 125-34). Plaintiffs asserted these claims on behalf of a putative Rule 23 class and FLSA collective of thousands of other Amazon employees in Illinois. A9-10, A20 (SAC ¶¶ 13-15, 69).

## II. The district court held that Plaintiffs' allegations failed to state a claim for relief.

Amazon moved to dismiss the Second Amended Complaint, and the district court granted the motion. A32-39.

The court began with the FLSA claims, which proved dispositive of multiple counts of the complaint. Under the PPA, the FLSA's minimum wage and overtime compensation requirements do not apply to activities that are "preliminary" to the principal activities the employees are employed to perform. A34; 29 U.S.C. § 254(a). But an employee's compensable activities do include activities that are "integral and indispensable" to other principal activities. A34 (citation omitted).

To determine whether the COVID screenings here were integral and indispensable to Plaintiffs' principal activities, the district court turned to United States Supreme Court precedent. *Id.* The Supreme Court has specifically addressed the PPA's application to workers in Amazon warehouses. *Busk*, 574 U.S. at 29. In *Busk*, the Supreme Court recognized that the principal activities of these warehouse employees were "to retrieve products from warehouse shelves and package those products for shipment to Amazon customers." *Id.* at 35. The *Busk* Court held that post-shift antitheft security screenings are not integral and indispensable to those principal activities. *Id.* And it specifically likened such post-shift antitheft screenings

with *pre-shift safety screenings* designed to ensure that employees do not bring items into the workplace that would create unsafe working conditions—like cigarette lighters in a rocket-powder plant. *Id.* at 35-36. The district court found that the COVID screenings here are indistinguishable from the pre- and post-shift screenings that the *Busk* Court found not to require compensation. A35.

The district court next addressed the IMWL. It began with this Court's precedent observing that Illinois courts frequently endorse looking to the FLSA when interpreting the state's counterpart. A37 (citing *Mitchell*, 745 F.3d at 845). The district court further noted that this Court has already "applied *Busk*'s 'integral and indispensable' standard to claims under the IMWL." *Id.* (citing *Chagoya*, 992 F.3d at 615 n.21). And it identified many district court decisions analyzing IMWL claims under the federal PPA standards. *Id.* (collecting cases). Because Plaintiffs had no contrary authority, the district court held that the Illinois claim failed for the same reason as the federal claim. A38.

Finally, the district court dismissed Plaintiffs' remaining claims. As relevant here, the Court identified two reasons for dismissing the quantum meruit claim. In addition to being unavailable because it duplicated unmeritorious statutory claims, this claim failed because Plaintiffs did not sufficiently allege that "they spent time on the COVID screening for Amazon's

benefit and that Amazon unjustly retained this benefit." A38. In particular, "the COVID screening conferred a benefit not just on Amazon, but on Plaintiffs, their co-workers, and society as a whole, because it—according to Plaintiffs' own allegations—helped mitigate a global pandemic." *Id.*

The district court's dismissal order was originally without prejudice to filing an amended complaint. A39. But Plaintiffs declined the opportunity to amend. A5. The dismissal therefore converted to a with-prejudice dismissal. A39. Plaintiffs filed this appeal after the district court entered final judgment. A5; A40.

## SUMMARY OF ARGUMENT

Plaintiffs' only non-abandoned claim, under the IMWL, fails for the same reason as their abandoned FLSA claim. As the district court concluded, the state-law claim is governed by the same PPA test as the FLSA claim. And Plaintiffs no longer dispute the correct outcome under that test.

Plaintiffs have no support for their view that Illinois departs from the federal test. On the contrary, this Court has repeatedly recognized that the IMWL generally dovetails with the FLSA. The PPA is no exception. In its recent *Chagoya* decision, this Court considered an IMWL claim together with an FLSA claim and held that failure to satisfy the PPA test doomed both claims. Plaintiffs ask this Court to ignore *Chagoya* because the plaintiffs there

did not dispute the applicability of the PPA test. But the Court itself found support for that test. *Chagoya*, 992 F.3d at 615 n.21. It did not merely rest on the parties' agreement, as Plaintiffs claim. Besides, ten district court rulings from varied judges (including the judge below) have applied the PPA test to IMWL claims. Plaintiffs can cite no ruling that has done otherwise. Instead, they overread a state regulation (which itself derives from the FLSA) and invoke cases construing materially different laws from other states. These arguments provide no reason to revisit *Chagoya*'s conclusion.

Regardless of the PPA, moreover, Plaintiffs' IMWL claim cannot succeed. As Amazon explained below, there is a separate, independent problem with that claim. Even under the legal standards that preceded the PPA, only activities that primarily benefit the employer qualify as compensable work. The COVID screenings here, by Plaintiffs' allegations and the district court's own assessment, did not benefit Amazon primarily. They benefited Plaintiffs, their coworkers, their families, and society at large. Requiring Amazon to compensate Plaintiffs for those much broader benefits would be unwarranted even if the PPA fell from the picture.

For similar reasons, the Court should deny Plaintiffs' request for certification. Certification is inappropriate where, as here, the proposed question is not case-determinative. Even if Plaintiffs succeeded on their proposed question, Amazon's alternative ground for dismissal under the pre-

PPA definition would still stand in Plaintiffs' way.  Nor is certification appropriate where, as here, there are sufficient prior (federal and state) decisions to determine the answer.  This Court is especially reluctant to certify after it has already addressed the issue, as this Court did in *Chagoya*. Plaintiffs may see certification as their best hope at this stage.  But they have not given the Court reason to ask the Illinois Supreme Court to take this case.

## ARGUMENT

**I.   The district court correctly held that Plaintiffs failed to state a claim under the IMWL.**

Plaintiffs no longer dispute that their allegations fail to state a claim for relief under the PPA amendments to the FLSA.  And for good reason:  the Supreme Court of the United States definitively explained how to distinguish the principal activities of employees in Amazon warehouses from their non-compensable, preliminary or postliminary activities.  *Busk*, 574 U.S. at 35-36. Under *Busk*'s reasoning, COVID screenings are not integral and indispensable to Plaintiffs' principal activities as warehouse employees.  A34-36.  Plaintiffs' only remaining contention is that the IMWL does not follow the standards of *Busk* and the PPA.  The district court correctly rejected that claim.  The Court should therefore affirm its judgment dismissing Plaintiffs' action with prejudice.

## A. The IMWL adheres to the PPA amendments to the FLSA.

### 1. Each branch of the Illinois government construes the IMWL to be consistent with the FLSA generally.

As the district court explained, drawing from this Court's precedent, "Illinois courts frequently say that they look to the Fair Labor Standards Act for guidance in interpreting the state's minimum wage law." A37 (quoting *Mitchell*, 745 F.3d at 845). When Illinois law does not specifically address an issue, "Illinois courts (and likewise, therefore, federal courts administering Illinois law) seek guidance in the federal case law interpreting the Fair Labor Standards Act." *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014); *see also, e.g.*, *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010) ("The overtime provision of the Illinois Minimum Wage Law, 820 ILCS 105/4a(1), is parallel to that of the FLSA, and Illinois courts apply the same principles . . . to the state provision.").

The Appellate Court of Illinois has adhered to this approach for decades. *See, e.g.*, *Kerbes v. Raceway Assocs., LLC*, 961 N.E.2d 865, 870 (Ill. App. Ct. 2011) ("[C]ourts have recognized that in light of their substantial similarities, provisions of the FLSA and interpretations of that legislation can be considered in applying the Minimum Wage Law."); *Lewis v. Giordano's Enters., Inc.*, 921 N.E.2d 740, 745 (Ill. App. Ct. 2009) ("When, as in this case, there is an absence of Illinois case law interpreting an Illinois wage statute, a court may look for

guidance to federal cases interpreting an analogous federal statute, namely the Fair Labor Standards Act[.]"); *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. Ct. 1987) ("The same analysis which applies to a violation of the FLSA applies to State law."); *Bernardi v. Vill. of N. Pekin*, 482 N.E.2d 101, 102 (Ill. App. Ct. 1985) ("Illinois courts have held that in the absence of Illinois decisions dealing with a particular labor law issue, federal decisions dealing with a substantially similar law, while not controlling, may be helpful and relevant.").

Three main justifications support this approach. First, the language of the overtime provision in the Illinois statute mirrors the language of its counterpart in the FLSA:

| 820 ILCS 105/4a(1) | 29 U.S.C. § 207(a)(1) |
| --- | --- |
| Except as otherwise provided in this Section, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed. | Except as otherwise provided in this section, no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. |

In this overtime requirement, "[t]he Illinois law parallels the Federal law." *Haynes*, 507 N.E.2d at 951. And not by coincidence. The representative who sponsored House Bill 3318, to add the overtime provision to the IMWL in 1976, explained at the time that "th[e] Bill is just a makeup bill to catchup and make

us even with federal laws that cover most employees in Illinois." 79th Ill. Gen. Assemb., H.R., Transcript of June 16, 1976, 169, https://www.ilga.gov/house/transcripts/htrans79/HT061676.pdf.

Second, the purposes of the two statutes are materially identical. That is evident from their similarly worded declarations of legislative policy. *Compare* 820 ILCS 105/2, *with* 29 U.S.C. § 202. And it is confirmed by the case law. *See, e.g.*, *Lewis*, 921 N.E.2d at 746 (noting "the similarity in the language and the underlying purposes and public policy of the federal and state statutes"); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00-cv-5755, 2001 WL 1403007, at *5 (N.D. Ill. Nov. 9, 2001) ("Not only is the language of [820 ILCS 105/2] strikingly similar to the language found in . . . 29 U.S.C. § 202(a), but the purpose of the IMWL as set forth by Illinois courts is similar to that of the FLSA." (footnote omitted)).

Third, the applicable Illinois regulations expressly endorse "the use of federal definitions of various terms" for purposes of state law. Ill. Admin. Code tit. 56, § 210.120 (capitalization omitted). The Illinois Department of Labor instructs that "[f]or guidance in the interpretation of the Act and this Part, the Director [of the Department of Labor] may refer to the Regulations and Interpretations of the Administrator, Wage and Hour Division, U.S. Department of Labor, administering the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 et seq.)." *Id.* This regulation is an exercise of the

Department's statutory authority to make "administrative regulations, including definitions of terms, as [it] deems appropriate to carry out the purposes of" the IMWL. 820 ILCS 105/10(a). As numerous courts have observed, this regulation reinforces the propriety of construing the Illinois and federal overtime laws harmoniously. *See, e.g.*, *Kerbes*, 961 N.E.2d at 870; *Lewis*, 921 N.E.2d at 745-46; *Mitchell*, 745 F.3d at 846; *Driver*, 739 F.3d at 1075.

These striking similarities—in language, legislative purpose, and administrative policy—explain why "the Minimum Wage Law and its implementing regulations are generally interpreted in dovetail with the FLSA." *Kerbes*, 961 N.E.2d at 874. Plaintiffs, however, ignore this large body of precedent and direction from each branch of Illinois government. They instead cite generic interpretive principles addressing other state (and occasionally federal) statutes. Pls. Br. 16-17 (citing, among others, *Moore v. Chi. Park Dist.*, 978 N.E.2d 1050, 1054 (Ill. 2012), and *Lora v. United States*, 599 U.S. 453, 459 (2023)). The Court should reject Plaintiffs' effort to override this well-settled Illinois law. It should adhere to Illinois precedent specifically explaining how to interpret the IMWL, as the Court has done many times. *E.g.*, *Chagoya*, 992 F.3d at 615 n.21; *Mitchell*, 745 F.3d at 845-46; *Driver*, 739 F.3d at 1075; *Urnikis-Negro*, 616 F.3d at 672.

### 2. Courts construe the IMWL to be consistent with the PPA's definition of work.

Given the strong default rule, Plaintiffs would need a compelling justification to distinguish the PPA from the other parts of the FLSA. They have none. The PPA's approach to principal and preliminary activities is no exception to the normal Illinois rule. Indeed, federal courts have consistently applied the PPA standards on preliminary (or postliminary) activities to the IMWL.

This Court did so just a few years ago in *Chagoya*. There, employees contended that pre- and post-shift transportation and storage of their work equipment was compensable work under the FLSA and IMWL entitling them to overtime pay. 992 F.3d at 614. The Court disagreed. It held that these pre- and post-shift activities were "not integral and indispensable, but rather preliminary and postliminary activities to the workday, and explicitly excluded in the [PPA]." *Id.* at 623. Importantly, the Court determined that this conclusion, resting in the Supreme Court's recent decision in *Busk*, applied equally to the employees' FLSA claims and their IMWL claims, which the Court "consider[ed] together." *Id.* at 615.

That recent, on-point decision from this Court resolves this appeal. This Court has already applied *Busk* to reject IMWL claims as a matter of law. So, as the district court held, these two points—*Busk*'s applicability and the

undisputedly correct result under *Busk*—foreclose Plaintiffs' IMWL claim. A37-38.

Plaintiffs argue, however, that this Court should disregard its recent decision in *Chagoya* and adopt the opposite approach. According to Plaintiffs, *Chagoya* merely "assumed" that the IMWL tracked the PPA based on the *Chagoya* parties' mutual agreement that it did. Pls. Br. 27. The *Chagoya* plaintiffs' unwillingness to make Plaintiffs' argument is hardly a point in Plaintiffs' favor. Besides, Plaintiffs' characterization is incorrect. The Court did not merely defer to the parties' view. It endorsed two reasons for that view:

> Because the IMWL parallels the language of the FLSA, the parties agree that the same standard applies to the operators' claims under the FLSA and the IMWL. Accordingly, we analyze the FLSA and IMWL claims together. *See, e.g.*, *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010).

*Chagoya*, 992 F.3d at 615 n.21. First, the Court itself recognized that the IMWL "parallels the language of the FLSA." *Id.* Second, it cited Seventh Circuit precedent justifying its decision to "analyze the FLSA and IMWL claims together." *Id.* That precedent recognized that the IMWL's "overtime provision . . . is parallel to that of the FLSA, and Illinois courts apply the same principles . . . to the state provision." *Urnikis-Negro*, 616 F.3d at 672 n.3. By recognizing the parallel between the statutory provisions, and authority for

"apply[ing] the same principles" because of the parallel, this Court gave reasoned consideration to the issue and agreed with the parties.

*Chagoya* thus is not an example of what the Fifth Circuit discussed in the case Plaintiffs highlight, Pls. Br. 27, where a court "relies on [parties'] concession, without further analysis." *Ochoa-Salgado v. Garland*, 5 F.4th 615, 620 (5th Cir. 2021). The Court itself found justification for treating the two laws together—which may explain why, in the part of their brief that requests certification, Plaintiffs grudgingly attribute *Chagoya*'s "approach[]" to this Court. Pls. Br. 12. There is no justification to jettison *Chagoya*. When this Court determines an issue of state law, the "conclusion binds [the Circuit] until the state's supreme court says otherwise." *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 714 (7th Cir. 2024) (citation omitted).

In any event, *Chagoya* was far from the first decision to apply the PPA to IMWL claims. As the district court noted, many courts have done so. A37. By Amazon's count, there are at least nine other decisions applying the PPA to determine the compensability of pre- or post-shift activities under the IMWL. *See Barlett v. City of Chicago*, No. 14-cv-7225, 2019 WL 4823532, at *4 (N.D. Ill. Oct. 1, 2019), *aff'd sub nom. Chagoya*, 992 F.3d at 615 & n.21; *Meadows v. NCR Corp.*, No. 16-cv-6221, 2017 WL 5192009, at *4-8, *4 n.13 (N.D. Ill. Nov. 9, 2017); *Pizano v. Big Top & Party Rentals, LLC*, No. 15-cv-11190, 2017 WL 1344526, at *1-3, *1 n.1 (N.D. Ill. Apr. 12, 2017); *Farmer v. DirectSat USA,*

*LLC*, No. 08-cv-3962, 2013 WL 12334777, at *2-3 (N.D. Ill. Oct. 17, 2013) (Lee, J.); *Guzman v. Laredo Sys., Inc.*, No. 10-cv-1499, 2012 WL 5197792, at *5 (N.D. Ill. Oct. 19, 2012); *Wren v. RGIS Inventory Specialists*, No. 06-cv-5778, 2009 WL 2612307, at *13-14 (N.D. Cal. Aug. 24, 2009); *Rix v. UPS*, No. 06-cv-3148, 2007 WL 9813347, at *4 (N.D. Ill. Apr. 24, 2007) (St. Eve, J.); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00-cv-5755, 2004 WL 1882449, at *3-4 (N.D. Ill. Aug. 18, 2004); *O'Brien v. Encotech Constr.*, No. 00-cv-1133, 2004 WL 609798, at *4-6, *4 n.8 (N.D. Ill. Mar. 23, 2004).

Against *Chagoya* and these nine other rulings, plus the district court's below, Plaintiffs identify not even one decision that the IMWL rejects the PPA's exclusions for pre- and post-shift activities. Their lead authority is purportedly this Court's decision in *Mitchell*. But Plaintiffs get *Mitchell* backwards. As noted above, *Mitchell* strongly embraces looking to federal law when interpreting the IMWL. 745 F.3d at 845-46. It explains that this practice not only is commanded by Illinois appellate authority and administrative regulation, but also has the "benefit" of simplifying labor relations by harmonizing state and federal standards. *Id.* It was the *Mitchell* dissent—as the district court noted, A37-38—that took the opposite view and criticized the majority for finding "that Illinois law must be read the same way as the federal law." *Mitchell*, 745 F.3d at 852 (Wood, C.J., dissenting).

Plaintiffs defend their backwards reading of *Mitchell* on the theory that the majority "*implicitly* acknowledged the IMWL does not . . . incorporate the PPA." Pls. Br. 17 (emphasis added). Plaintiffs are wrong. For starters, *Mitchell* did not even involve the PPA, much less the provision that figured here and in *Busk* and *Chagoya*, 29 U.S.C. § 254(a). *See* Act of May 14, 1947, ch. 52, § 4(a), 61 Stat. 84, 86-87. *Mitchell* involved a separate FLSA amendment adopted two years after the PPA, in 1949, which is codified in a different part of the statute, 29 U.S.C. § 203(*o*). Unlike the PPA's general rule for analyzing pre- and post-shift activities, Section 203(*o*) narrowly "provides that the compensability of time spent changing clothes or washing is a subject appropriately committed to collective bargaining." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 226 (2014). Most of the *Mitchell* case turned on activities during meal breaks, although the plaintiffs raised a claim solely under Illinois law about activities at the start of their morning shift and end of their afternoon shift. *Mitchell*, 745 F.3d at 846. In the end, this Court held that *none* of the activities was compensable under either federal or state law, both because the employees' union had agreed with the employer not to make them compensable and because the amount of time at issue was so short as to qualify as "*de minimis.*" *Id.* Nothing in the Court's opinion suggests that Illinois law would reject the federal test for preliminary activities articulated in 29 U.S.C. § 254(a) and recently applied in *Busk* and *Chagoya*.

*Mitchell* also refutes Plaintiffs' claim that federal standards must not be used under the IMWL without state law's express adoption of those standards. Pls. Br. 16-18. The *de minimis* standard applied in *Mitchell* emerged from federal wage-and-hour law and is not mentioned directly in the IMWL or any of its regulations. *Mitchell*, 745 F.3d at 844-45. As this Court recognized, however, the Illinois Appellate Court used the same federal standard to dismiss IMWL claims in *Porter v. Kraft Foods Global, Inc.*, No. 4-12-0258, 2012 WL 7051311, at *9 (Ill. App. Ct. Dec. 10, 2012), *appeal denied*, 985 N.E.2d 310 (Ill. 2013).[1]

Particularly given the general convergence between Illinois and federal wage-and-hour law, Illinois lawmakers would have spoken clearly had they meant to reject the federal test for preliminary activities. The test for preliminary and postliminary activities adopted through 29 U.S.C. § 254(a) is not some tangential or obscure provision of the federal statute. That test defines the boundaries of the foundational concept in wage-and-hour law—the definition of work—and was major legislation designed to repudiate the Supreme Court's original broad understanding of work. The Supreme Court recounted this history in *Busk*, and this Court reviewed it in *Chagoya*.

---

[1] *Porter* is an unpublished decision, which strongly suggests that the Illinois Appellate Court did not think it was "creating new law" by using federal standards for the IMWL. *Mitchell*, 745 F.3d at 845.

In a nutshell, the original "FLSA did not define 'work' or 'workweek,' and [the Supreme] Court interpreted those terms broadly." *Busk*, 574 U.S. at 31. The Supreme Court's definitions were too broad in the eyes of Congress, which "responded swiftly" to the resulting "flood of litigation," which Congress perceived as creating an "emergency." *Id.* at 31-32. The PPA directly addressed the pre- and post-shift activities that the Supreme Court had deemed "work," like travel and walking time, by excluding such activities from the definition of work as well as "activities which are preliminary to or postliminary to" the "principal activity or activities which [the covered] employee is employed to perform." *Id.* at 32 (quoting 29 U.S.C. § 254(a)); *see also Chagoya*, 992 F.3d at 616-17.

Plaintiffs thus err when they assert that the PPA "only excepted certain work activities from being compensable under the FLSA and did not alter the definition of the terms 'work' or 'workweek.'" Pls. Br. 22. For that claim, Plaintiffs quote a snippet from *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005). *See* Pls. Br. 22-23. But they omit key language from the relevant passage, which contradicts their characterization:

> *Other than its express exceptions* for travel to and from the location of the employee's "principal activity," and for activities that are preliminary or postliminary to that principal activity, the [PPA] does not purport to change this Court's earlier descriptions of the terms "work" and "workweek," or to define the term "workday."

*IBP*, 546 U.S. at 28 (emphasis added). In stating that the PPA did not change the Supreme Court's earlier definitions *other than* to exclude preliminary activities and the like, the *IBP* Court necessarily acknowledged that the amendment's exclusion of such activities did change the definitions to that extent.

The text of the PPA itself confirms that the statute changed the basic definition of worktime. It states that the exclusions for preliminary and postliminary activities affect how to properly compute work time: "in determining *the time for which an employer employs an employee* with respect to walking, riding, traveling, or other preliminary or postliminary activities described in [29 U.S.C. § 254(a)], there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable [under 29 U.S.C. §§ 254(b)-(c)]." 29 U.S.C. § 254(d) (emphasis added). From the outset, the U.S. Department of Labor recognized that 29 U.S.C. § 254 focuses on "the determination of whether time spent in such 'preliminary' or 'postliminary' activities . . . *must be included or excluded in computing time worked.*" 29 C.F.R. § 790.5(a) (emphasis added) (footnote omitted); *see also id.* § 790.5(b) ("[I]f there is no . . . contract, custom, or practice [requiring compensation for the excluded activities], such time will be *excluded in computing worktime* for purposes of the Act." (emphasis added)).

In short, the relevant PPA provision aimed to correct a notorious misinterpretation of the foundational concept in wage-and-hour law. As a result, the Illinois legislature would have seen little reason in 1976, when passing the overtime provision, to go out of its way to disavow the Supreme Court's original misconception of work, which had been forcefully repudiated almost three decades earlier. In this respect, this issue differs from the examples Plaintiffs highlight, which concern much more peripheral subjects, often with significant differences between the relevant federal and state provisions. *See Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 798-800 (N.D. Ill. 2013) (holding that alleged violation of federal requirement to inform employees about tip credit did not amount to a violation of the IMWL where the employer's informational summary had received approval from the Illinois Department of Labor); *Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 783 (N.D. Ill. 2007) (holding that defendant failed to qualify for IMWL's motor carrier exemption because it imposed an additional requirement on top of the FLSA exemption's requirements); *Wagner v. Air Methods Corp.*, 539 F. Supp. 3d 1157, 1160 (D. Colo. 2021) (holding that an FLSA regulation's "sleep time" rule, for employees working 24-hour shifts, did not apply in Illinois).

### 3. Plaintiffs' reliance on Ill. Admin. Code tit. 56, § 210.110 does not advance their cause.

With no support in precedent, Plaintiffs rely heavily (Pls. Br. 20-24) on a regulation. That regulation states: "'Hours worked' means all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time the employee is required or permitted to work for the employer." Ill. Admin. Code tit. 56, § 210.110. This regulation does not, as Plaintiffs contend, impliedly signal a rejection of the PPA.

As Plaintiffs acknowledge, the definition in this regulation itself comes from federal law. True, the definition originated in *Anderson*, a case that helped precipitate the PPA. *See* 328 U.S. at 690-91 ("[T]he statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace[.]"). But the PPA did not jettison this definition altogether or eradicate it from federal law. The same definition remains on the books in current federal regulations. 29 C.F.R. § 778.223(a) ("As a general rule the term 'hours worked' will include: (1) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) All time during which an employee is suffered or permitted to work whether or not he is required to do so."); 29 C.F.R. § 785.7 ("The workweek ordinarily includes 'all

the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place.'" (citation omitted)).  The same federal regulations observe, however, that the PPA changed this general rule for "preliminary and postliminary activities."  29 C.F.R. § 785.7.  Now, courts must construe the *Anderson* definition in light of the PPA amendments and laws implementing those amendments.  29 C.F.R. § 778.223(b) (cross-referencing, among others, 29 C.F.R. §§ 785.24, 790.7).

The same framework applies under Illinois law.  Courts considering whether a state-law reference to the basic *Anderson* definition precludes the PPA test have held that such a reference is not dispositive; rather, courts should account for how the PPA modified the *Anderson* definition particularly when, as here, other provisions of state law support doing so.  *See, e.g.*, *Buero v. Amazon.com Servs., Inc.*, 521 P.3d 471, 479-80 (Or. 2022) (Oregon law); *Del Rio v. Amazon.com Servs., Inc.*, No. 21-cv-1152, 2023 WL 6141140, at *5 (D. Conn. Sept. 20, 2023) (Connecticut law); *Thomas v. Amazon.com Servs., Inc.*, 462 F. Supp. 3d 828, 835-36 (N.D. Ohio 2020) (Ohio law).  Although Plaintiffs ignore it, another Illinois regulation—the one discussed above endorsing use of federal standards—shows that the other regulation restating the *Anderson* definition cannot be read in a vacuum.  This second regulation commends reference to federal regulations administering the FLSA "as amended."  Ill. Admin. Code tit. 56, § 210.120.  It thus refutes Plaintiffs' suggestion that the

Illinois Department of Labor has adopted the *unamended* FLSA as the definitive federal source for Illinois wage-and-hour law. "Courts unequivocally regard the [PPA] as an amendment to the FLSA." *Thomas*, 462 F. Supp. 3d at 835-36 (holding that Ohio regulation's reference to the FLSA "as amended" justified reliance on PPA). Plaintiffs ask the Court to defer to Illinois administrative regulations. But the Court must take those regulations as a whole rather than follow only the one Plaintiffs prefer to read in isolation. *See Mitchell*, 745 F.3d at 844-46 (even if Ill. Admin. Code tit. 56, § 210.110 "standing alone would encompass time spent changing during a meal break," such time is not compensable under the IMWL for the same reason as under the FLSA).

Plaintiffs also err in drawing a negative implication from the regulation's cross-reference to the FLSA travel time regulations. *See* Pls. Br. 21 (citing Ill. Admin. Code tit. 56, § 210.110, and 29 C.F.R. §§ 785.33-785.41). As Plaintiffs admit, those FLSA regulations are themselves PPA rules grounded in 29 U.S.C. § 254(a)(1). That provision is the original source for the "principal activities" concept that undergirds *Busk*. 29 U.S.C. § 254(a)(1). So, as other courts have held, this sort of express reference to the PPA standards for travel times supports applying its standards for preliminary activities as well. *See, e.g.*, *Vance v. Amazon.com, Inc.*, 852 F.3d 601, 613-14 (6th Cir. 2017) (holding that Kentucky regulation's reference to the federal travel time regulations

supported application of *Busk* despite any explicit reference to preliminary or postliminary activities); *Hughes v. UPS Supply Chain Sols., Inc.*, 677 S.W.3d 273, 279-80 (Ky. 2023) (same).

### 4. Plaintiffs' comparisons to select other states do not shed light on Illinois law.

The preceding discussion shows that the laws of many states have been construed, like the IMWL, as tracking the PPA's test for pre- and post-shift activities. Plaintiffs focus on a few cases reaching the opposite conclusion for certain other states. Pls. Br. 26-28. But, if anything, differences between those states' approaches and Illinois's approach underscore why the cases Plaintiffs prefer are bad guides here.

For none of the states Plaintiffs highlight was there a long and unbroken line of cases applying the PPA standards based on the parallel language and purposes of the state and federal statutes. *See supra* Section I.A.2. For instance, in *Frlekin v. Apple Inc.*, 457 P.3d 526, 532-33 (Cal. 2020), the court noted that California's lawmakers in 1947 "purposely abandoned the narrower standard" that federal law was adopting after the PPA. Similarly, in *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191, 201 (Pa. 2021) (emphasis added), the Pennsylvania Supreme Court highlighted its repeated prior holdings that it would "*not* follow the interpretation of similarly applicable provisions of the federal FLSA." In *Amaya v. DGS Construction, LLC*, 278 A.3d 1216, 1240-41,

1243 (Md. 2022), the court recognized that "[t]he purpose and language of the [Maryland Wage and Hour Law] are different from that of the PPA," and highlighted the legislature's reference to the *unamended* version of the FLSA. In *Busk v. Integrity Staffing Solutions, Inc.* ("*Busk II*"), 905 F.3d 387, 403 (6th Cir. 2018) (citation omitted), the court construed certain provisions of Nevada law as "in direct conflict with the [PPA]."[2] Finally, in *Roberts v. State*, 512 P.3d 1007, 1013, 1015-16 (Ariz. 2022), the court held that the statute's overtime provision made "no reference to federal law" and did not lawfully delegate authority to the administrative agency to follow federal law as a matter of state constitutional law.

Here, on the other hand, the settled practice is the opposite. State courts interpret Illinois law "in conformity with the FLSA." *Kerbes*, 961 N.E.2d at 873. And they do so because of the statutes' similar "language," "purposes," and "policy." *Lewis*, 921 N.E.2d at 746. So federal courts in turn apply the Illinois statute using the standards of the PPA, and appropriately so. *Chagoya*, 992 F.3d at 615 & n.21.

---

[2] Amazon respectfully maintains that *Busk II* was wrongly decided. It was issued over a strong dissent by Judge Batchelder, and its holding is inconsistent with two unpublished Nevada Supreme Court decisions. *See Rite of Passage v. Nev., Dep't of Bus. & Indus.*, No. 66388, 2015 WL 9484735, at *1 (Nev. Dec. 23, 2015) (deciding the meaning of "work" under N.R.S. § 608.016 based on the FLSA and federal case law); *Csomos v. Venetian Casino Resort, LLC*, 381 P.3d 605, *3 (Nev. 2012) (finding that N.R.S. § 608.018 tracks the FLSA).

**B. These COVID screenings would not qualify as work even if the IMWL rejected the PPA.**

Even if the PPA test did not apply, Plaintiffs still would have no right to compensation for the COVID screenings. Under the pre-PPA understanding of work that they favor, employers need only pay wages for time spent on activities "pursued necessarily and primarily for the benefit of the employer and his business." *Anderson*, 328 U.S. at 691-92 (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944)). Plaintiffs do not dispute that this definition, deriving from the Supreme Court's *Tennessee Coal* ruling, applies to their IMWL claim if the PPA test does not. Plaintiffs' inability to satisfy the *Tennessee Coal* definition of work supplies an alternative basis for affirmance. *See, e.g.*, *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 917 (7th Cir. 2013) ("We may 'affirm on any ground that the record supports and that appellee has not waived.'" (citation omitted)).

Although the district court did not resolve Plaintiffs' statutory claims on this ground, it did rely on this line of reasoning as one basis for dismissing Plaintiffs' common law claim. Plaintiffs failed to sufficiently allege that "they spent time on the COVID screening for Amazon's benefit." A38. On the contrary, "the COVID screening conferred a benefit not just on Amazon, but on Plaintiffs, their co-workers, and society as a whole, because it—according to Plaintiffs' own allegations—helped mitigate a global pandemic." *Id.*

Many of Plaintiffs' allegations demonstrate that Plaintiffs, their coworkers, and others in their communities were primary beneficiaries of the screenings. For instance, Plaintiffs acknowledge that COVID killed over one million Americans, including 40,000 Illinoisans, and infected millions more. A11 (SAC ¶ 25 & n.1). They concede that the "purpose[]" of Amazon's screening program was to "prevent Plaintiffs and the Class Members from inadvertently and unintentionally infecting Amazon facilities" and "causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon," as well as the millions of Amazon customers. A15-16 (SAC ¶¶ 47-48). Screening reduced the chance they "would suffer" the symptoms of the virus. A15 (SAC ¶ 48). In all these ways, Plaintiffs make clear that the intended benefit of screening was reducing the risk of death or illness from COVID, and that Plaintiffs and countless community members inside and outside of Amazon facilities received that benefit.

True, Amazon also benefited from having a healthy workforce. But that at most shows a "mutual benefit" from screening, which is not enough. *See, e.g.*, *Perez v. Walmart, Inc.*, No. 21-cv-120, 2021 WL 5741484, at *2-3 (W.D. Mo. Oct. 25, 2021) (dismissing retail store employee's unjust enrichment claim based on unpaid COVID screening time because "the benefits of a healthy and safe working environment have been conferred on both parties," and "there is little doubt that plaintiff, defendants, and their consumers, contractors, and

all persons entering the stores were the beneficiaries of the early detection health and safety protocols"); *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1163 (D.C. Cir. 1975) (recognizing that while "furthering industrial safety benefits the employer," this type of benefit "does not require a finding that the activity is [p]rimarily for the employer's benefit" under the *Tennessee Coal* standard); *Wheat v. J.B. Hunt Transp., Inc.*, No. 15-cv-2849, 2016 WL 1397673, at *3-4 (C.D. Cal. Apr. 5, 2016) (determining that sleep apnea testing and treatment for employer's truck driver was "primarily for her own benefit, not Defendant's" under *Tennessee Coal*).[3]

Pandemic-era COVID screening served an important societal purpose and was hardly unique to Amazon. Indeed, state and federal governments encouraged such practices precisely because they benefited society at large. *See supra* at 6-7. The district court agreed with that conclusion in dismissing Plaintiffs' common law claim, and Plaintiffs have not challenged that ruling. For this alternative and independent reason too, Plaintiffs' IMWL claim fails.

---

[3] In the trial court, Plaintiffs cited *Sehie v. City of Aurora*, 432 F.3d 749, 752 (7th Cir. 2005), for the notion that treatments that enable an employee to stay on the job primarily benefit the employer. The *Sehie* case does not go nearly so far. On the contrary, this Court disclaimed any suggestion "that every time an employer gets help for its employees, the employee must be compensated for hours worked." *Id.* It stressed that its holding was "very fact-specific." *Id.* Because the employer mandated counseling for a particular employee, but would not let her see her own therapist, the Court held that it was not "clearly erroneous" to conclude that the counseling was for the employer's benefit and not the employee's. *Id.*

**II. There is no basis to certify a question to the Illinois Supreme Court.**

The foregoing discussion shows why the Court should deny Plaintiffs' request for certification to the Illinois Supreme Court. To be sure, this Court has authority "to certify state-law questions to a state supreme court when the answer will control the outcome of a case and the state court accepts such certifications." *Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.*, 77 F.4th 546, 556 (7th Cir. 2023) (citation omitted). But even when the Court can certify, that "does not mean that [it] should." *Id.* Unnecessary certifications expend time and resources not just of the parties, but also of the Court's "esteemed colleagues in the state supreme courts." *Id.* In addition to limiting certification to questions that will control the case outcome, the most important consideration is whether the Court remains "'genuinely uncertain' about the answer to the state-law question." *Id.* (citations omitted). Plaintiffs cannot justify certification under these standards.

**A. Plaintiffs' proposed question will not control the outcome.**

Under the Court's rules, certification is limited to "questions arising under the laws of that state which will control the outcome of a case." 7th Cir. R. 52(a). The Illinois Supreme Court similarly requires that the questions have the potential to be "determinative of the . . . cause." Ill. S. Ct. R. 20(a). So, "if

a question may not be dispositive to a case, then it is a weak candidate for certification." *State Farm*, 275 F.3d at 672.

Plaintiffs apparently tried to clear this requirement for certification by dropping the bulk of their case between the district court and appeal. *See* Pls. Br. 8. But they still fall short. While Plaintiffs' case certainly will end if they lose on the PPA question, the converse is not true. Plaintiffs face an independent alternative basis for dismissal based on the district court's expressed view that the COVID screenings conferred a benefit on Plaintiffs, their coworkers, and society as a whole. *See supra* Section I.B. This is not a situation where the "action can continue" if the certified question gets resolved in Plaintiffs' favor, but "otherwise, it fails." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1166 (7th Cir. 2021). Resolving the certified question in Plaintiffs' favor would just require addressing Amazon's alternative ground for dismissal. And if the litigation proceeded beyond that, Plaintiffs would face additional obstacles—such as an argument that the relevant COVID screenings occupied a *de minimis* amount of time. *See, e.g.*, *Mitchell*, 745 F.3d at 845 ("[T]he *de minimis* rule is alive and well in Illinois's law of employee compensation[.]"). For these reasons, certification would ask the Supreme Court to resolve a question that is likely to become academic in this litigation.

Nor would it be appropriate to broaden Plaintiffs' question to ask more definitively whether COVID screening qualifies as work under Illinois law.

That would merely turn Plaintiffs' narrow legal question into a unique and fact-bound question that has diminishing importance going forward. *See, e.g.*, *Cothron*, 20 F.4th at 1166 ("It's . . . important that the dispositive legal question is general and likely to recur rather than unique and fact bound."); *State Farm*, 275 F.3d at 672 ("[F]act specific, particularized decisions that lack broad, general significance are not suitable for certification to a state's highest court." (citation omitted)).

**B. The Court already has ample judicial guidance.**

Finally, for the reasons given above, existing precedent—including from this Court—dispels any genuine doubt about the correct answer under settled law. This Court declines to "waste" a state supreme court's time unless it is "genuinely uncertain" about the correct outcome. *Jadair Int'l*, 77 F.4th at 557 (citation omitted). This consideration is the "most important" one for the exercise of the Court's discretion, and the Court does not take it lightly. *State Farm*, 275 F.3d at 671 (citation omitted). While "[t]here is always a chance that a state supreme court, if it had the same case before it, might decide the case differently," that "ever-present possibility is not sufficient to warrant certification." *Id.* at 672. Because this Court has often noted convergence between Illinois and federal law in this context and has specifically applied the PPA standards to an Illinois claim like Plaintiffs', there is no cause for uncertainty.

In fact, given the ample federal precedent on the PPA question Plaintiffs propose, certification would depart from this Court's usual approach. The Court has long maintained that "the right time to certify a question is before the first federal decision on the point." *Nat'l Cycle, Inc. v. Savoy Reinsurance Co.*, 938 F.2d 61, 64 (7th Cir. 1991). Certification ideally enables federal courts to avoid sinking time and effort into discerning the content of state law. *See id.* That benefit disappears after the first federal decision. *Id.*; *see also Cannon*, 92 F.4th at 715 ("As a prudential matter, sending to the state court questions we have already answered renders our earlier effort a waste— especially without signs from the state court that we got [the issue] wrong."). This limiting principle can apply even when a Member of the Court thinks the Court should have certified the question in the earlier case. *See, e.g.*, *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 673 (7th Cir. 2023) (Kirsch J., concurring) ("The majority in *Gociman* did not certify this important question to the Illinois Supreme Court, and now it's too late to do so.").

As the dissent in *Mitchell* noted, this Court did not ask the Illinois Supreme Court to resolve the convergence (or not) of state and federal law in that case, even when the Illinois Attorney General expressly requested certification. 745 F.3d at 852-53. And just a few years before that, the Illinois Supreme Court denied a petition to appeal the Illinois Appellate Court's decision in *Porter* to dismiss IMWL claims using the FLSA *de minimis* rule.

985 N.E.2d 310 (Ill. 2013). This case presents a far weaker occasion for certification. The Court has already decided the question. Neither the state of Illinois nor any amicus has appeared in support of certification. And the question would not be dispositive. The Court should deny Plaintiffs' request.

## CONCLUSION

For all these reasons, the Court should affirm the dismissal of Plaintiffs' Second Amended Complaint.

Dated: April 19, 2024

Respectfully submitted,

s/ Michael E. Kenneally
SARI M. ALAMUDDIN
KEVIN F. GAFFNEY
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

*Counsel for Defendant-Appellee Amazon.com Services LLC*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as modified by Circuit Rule 32(c). This brief contains 8,740 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) as modified by Circuit Rule 32(b) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 13-point Century Schoolbook font.

Dated: April 19, 2024                     s/ Michael E. Kenneally
                                          MICHAEL E. KENNEALLY
                                          *Counsel for Defendant-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Michael E. Kenneally

MICHAEL E. KENNEALLY
*Counsel for Defendant-Appellee*