No. 24-1028

In the United States Court of Appeals
for the Seventh Circuit

———————————————

LISA JOHNSON, ET AL.
*Plaintiffs-Appellants,*

v.

AMAZON.COM SERVICES LLC,
*Defendant-Appellee.*

———————————————

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 1:23-cv-00685, Hon. Thomas M. Durkin

———————————————

**PLAINTIFFS-APPELLANTS' REPLY IN SUPPORT OF OPENING
BRIEF AND MOTION FOR CERTIFICATION TO THE ILLINOIS
SUPREME COURT PURSUANT TO CIRCUIT RULE 52**

———————————————

Maureen A. Salas
   *Counsel of Record*
Douglas M. Werman
John J. Frawley
WERMAN SALAS. P.C.
77 W. Washington St.
Suite 1402
Chicago, IL 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
msalas@flsalaw.com
dwerman@flsalaw.com
jfrawley@flsalaw.com

Don J. Foty
HODGES & FOTY, LLP
2 Greenway Plaza
Suite 250
Houston, TX 77046
Tel: (713) 523-0001
Fax: (713) 523-1116
dfoty@hftrialfirm.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................iii

INTRODUCTION .................................................................................... 1

ARGUMENT ........................................................................................... 3

I.    The Court should certify, to the Illinois Supreme Court, the question of whether the IMWL incorporates the PPA............................ 3

    A.    Amazon does not undermine Plaintiffs' argument that whether the IMWL incorporates the PPA is outcome determinative................................................................................... 4

    B.    There is genuine uncertainty regarding whether the IMWL incorporates the PPA notwithstanding Amazon's argument. ........................................................................................ 5

II.    If the Court does not certify Plaintiffs' question, then it should reverse the trial court because the IMWL does not adopt the PPA. ........................................................................................... 6

    A.    The IMWL's plain text shows it does not incorporate the PPA, which Amazon fails to dispute. ........................................... 7

    B.    Amazon fails to support its argument that the IMWL "adheres to" the PPA. .................................................... 8

        1.    Amazon's observation that the Illinois government "generally" construes the IMWL to be consistent with the FLSA does not show the IMWL incorporates the PPA. .......................................... 8

        2.    Amazon's claim that federal courts "construe the IMWL to be consistent with the PPA" is incomplete and does not support Amazon's argument....................... 12

        3.    Contrary to Amazon's argument, the IMWL's regulations support Plaintiffs' interpretation of the IMWL.............................................................................. 19

        4.    Plaintiffs' out-of-state authority provides persuasive support for Plaintiffs' interpretation of the IMWL. .......................................................................... 22

i

C.    There is no alternative basis for affirming the district court because, given that the IMWL rejects the PPA, Plaintiffs sufficiently allege IMWL violations...........................22

    1.    Absent the PPA's constraints, the IMWL requires employers to compensate workers for all mandatory, on-site time...................................................23

    2.    Plaintiffs sufficiently allege Amazon withheld pay for time spent in mandatory, on-site activities................25

CONCLUSION.................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Amaya v. DGS,*
479 Md. 515 (2022) ........................................................................ 18

*Anderson v. Mt. Clemens Pottery Company,*
328 U.S. 680 (1946)............................................................ 18, 19, 20, 24

*Barlett v. City of Chicago,*
No. 14-cv-7225, 2019 WL 4823532 (N.D. Ill. Oct. 1, 2019)........................ 17

*Beasley v. Hillcrest Medical Center,*
78 Fed. App'x. 67 (10th Cir. 2003)................................................... 25

*Bell v. Publix Super Markets, Inc.,*
982 F.3d 468 (7th Cir. 2020)......................................................... 25

*Bernard v. IBP, Inc. of Nebraska,*
154 F.3d 259 (5th Cir. 1998)......................................................... 25

*Bernardi v. Vill. of N. Pekin,*
135 Ill. App. 3d 589 (1985) ......................................................... 10

*Buero v. Amazon.com Servs., Inc.,*
370 Or. 502 (2022)................................................................... 20

*Chagoya v. City of Chicago,*
992 F.3d 607 (7th Cir. 2021)................................................... *passim*

*Commodity Trend Serv. v. CFTC,*
233 F.3d 981 (7th Cir. 2000)......................................................... 16

*County of Lake v. Board of Education of Lake Bluff School District No. 65,*
325 Ill. App. 3d 694 (2001) ......................................................... 15

*Del Rio v. Amazon.com Servs., Inc.,*
No. 3:21-cv-1152, 2023 WL 6141140,  (D. Conn. Sept. 20, 2023)................... 20

*Driver v. AppleIllinois,*
739 F.3d 1073 (7th Cir. 2014)...................................................... 9, 11

*Driver v. AppleIllinois,*
917 F. Supp. 2d 793 (N.D. Ill. 2013)................................................. 9

*Farmer v. DirectSat USA,*
No. 08-cv-3962, 2013 WL 12334777 (N.D. Ill. Oct. 17, 2013)...................... 17

*Gutierrez v. Kermon,*
722 F.3d 1003 (7th Cir. 2013)........................................................ 16

iii

*Guzman v. Laredo Sys.*,
No. 10-cv-1499, 2012 WL 5197792 (N.D. Ill. Oct. 19, 2012).......................17

*Haynes v. Tru-Green Corp.*,
154 Ill. App. 3d 967 (1987) ...........................................................................10

*Hughes v. UPS*,
677 S.W.3d 273 (Ky. 2023) ...........................................................................22

*In re I80 Equip.*,
938 F.3d 866 (7th Cir. 2019)............................................................................7

*In re Zimmer, NexGen Knee Implant Prod. Liab. Litig.*,
884 F.3d 746 (7th Cir. 2018).....................................................................6, 13

*Kean v. Wal-Mart Stores, Inc.*,
235 Ill. 2d 351 (2009) ...................................................................................21

*Kerbes v. Raceway Associates*,
2011 IL App (1st) 110318 (2011) ...............................................................9, 11

*Ladegaard v. Hard Rock Concrete Cutters*,
No. 00-cv-5755, 2004 WL 1882449 (N.D. Ill. Aug. 18, 2004).......................17

*Lax v. Mayorkas*,
20 F. 4th 1178 (7th Cir. 2021) ......................................................................25

*Leone v. Mobil Oil Corp.*,
523 F.2d 1153 (D.C. Cir. 1975)......................................................................24

*Lewis v. Giordano's Enterprises*,
397 Ill. App. 3d 581 (2009) .......................................................................10, 11

*Lora v. United States*,
599 U.S. 453 (2023).........................................................................................7

*Meadows v. NCR Corp.*,
No. 16-cv-6221, 2017 WL 5192009 (N.D. Ill. Nov. 9, 2017)..........................17

*Merk v. Jewel Companies*,
848 F.2d 761 (7th Cir. 1988).........................................................................15

*Metzger v. DaRosa*,
209 Ill. 2d 30 (2004) ........................................................................................7

*Mitchell v. JCG Industries, Inc.*,
745 F.3d 837 (7th Cir. 2014)................................................................ *passim*

*Moore v. Chicago Park Dist.*,
2012 IL 112788 (2012) .....................................................................................7

*Murphy v. Smith*,
844 F.3d 653 (7th Cir. 2016)............................................................................7

iv

*O'Brien v. Encotech,*
No. 00-cv-1133, 2004 WL 609798 (N.D. Ill. Mar. 23, 2004) ...................................... 17

*Perez v. Walmart, Inc.,*
No. 4:21-cv-00120-HFS, 2021 WL 5741484 (W.D. Mo. Oct. 25, 2021)...................... 24

*Pizano v. Big Top & Party Rentals,*
No. 15-cv-11190, 2017 WL 1344526 (N.D. Ill. Apr. 12, 2017) ................................... 17

*Porter v. Kraft Foods Global, Inc.,*
2012 IL App (4th) 120258-U (2012) .......................................................................... 15

*Rix v. UPS,*
No. 06-cv-3148, 2007 WL 9813347 (N.D. Ill. Apr. 24, 2007) ................................... 17

*Rumsfeld v. United Techs. Corp.,*
315 F.3d 1361 (Fed. Cir. 2003) ................................................................................. 15

*Samano v. Temple of Kriya,*
2020 IL App (1st) 190699 (2020) ................................................................................ 8

*Sandifer v. United States Steel Corp.,*
678 F.3d 590 (7th Cir. 2012) ..................................................................................... 15

*Soucek v. Breath of Life Pro. Servs.,*
2021 IL App (1st) 210413 (2021) ............................................................................. 8, 9

*Stinson v. Chicago Bd. of Election Comm'rs,*
407 Ill. App. 3d 874 (2011) ..................................................................................... 7, 18

*Tennessee Coal v. Muscoda Local No. 123*
321 U.S. 590 (1944)................................................................................................... 23

*Thomas v. Amazon.com Servs., Inc.,*
462 F. Supp. 3d 828 (N.D. Ohio 2020) ..................................................................... 20

*Upper Skagit Indian Tribe v. Sauk-Suiattle Indian Tribe,*
66 F.4th 766 (9th Cir. 2023) ..................................................................................... 16

*Urnikis-Negro v. Am. Fam. Prop. Servs.,*
616 F.3d 665 (7th Cir. 2010)............................................................................. 9, 15, 17

*Vance v. Amazon.com, Inc.,*
852 F.3d 601 (6th Cir. 2017)..................................................................................... 22

*W. & S. Life Ins. Co. v. Edmonson,*
397 Ill. App. 3d 146 (2009) ...................................................................................... 18

*Wheat v. J.B. Hunt Transp.,*
No. 15-cv-02849-MWF-AS, 2016 WL 1397673 (C.D. Cal. Apr. 5, 2016).................... 24

*Winebow, Inc. v. Capitol-Husting Co.,*
867 F.3d 862 (7th Cir. 2017)....................................................................................... 5

*Wren v. RGIS Inventory Specialists*,
No. 06-cv-05778 JCS, 2009 WL 2612307 (N.D. Cal. Aug. 24, 2009).........................17

*Zahn v. N. Am. Power & Gas, LLC*,
815 F.3d 1082 (7th Cir. 2016)...................................................................................4, 5

*Zahn v. N. Am. Power & Gas, LLC*,
847 F.3d 875 (7th Cir. 2017)............................................................................................5

**Statutes**

29 U.S.C. § 203(o).....................................................................................................13

29 U.S.C. § 254(a) ............................................................................................. *passim*

820 ILCS § 105/4a................................................................................... 12, 21, 23

Portal-to-Portal Act of 1947.......................................................................... *passim*

**Other Authorities**

2004 Ill. Legis. Serv. P.A. 93-672 (S.B. 1645) ............................................12

2015 Ill. Legis. Serv. P.A. 99-17 (S.B. 38) ...................................................12

79th Ill. Gen. Assem., Senate Proceedings,
June 4, 1975 ...................................................................................................................11

79th Ill. Gen. Assemb.,
H.R., Transcript of June 16, 1976 .........................................................................12

*Opinion Letter: Fair Labor Standards Act*,
U.S. DEPARTMENT OF LABOR (January 26, 1998), 1998 WL 852652 .........................26

**Regulations**

29 C.F.R. § 785.7.......................................................................................................18

29 C.F.R. § 785.14.....................................................................................................22

Ill. Admin. Code tit. 56, § 210.110.................................................................10, 23

Ill. Admin. Code tit. 56, § 210.120.................................................................11, 20

vi

## INTRODUCTION

This appeal asks whether the Illinois Minimum Wage Law ("IMWL incorporates the federal Portal-to-Portal Act ("PPA").  The question is of vital importance in Illinois.  If the IMWL is free of the PPA's influence, then Illinois employers must pay their hourly workers for all the time they require the workers to spend on the employers' premises.  If the PPA constrains the IMWL, then Illinois employers may withhold pay from workers for mandatory, on-site time they spend on activities "preliminary" or "postliminary" to their "principal activity or activities."  29 U.S.C. § 254(a)(2).  In practice, this would mean employers would not pay workers for completing lengthy start- and end-of-day tasks, like undergoing employers' required medical screenings before warehouse shifts.

Because this appeal presents only a state-law question, and it is a highly important one, the Court should certify that question to the Illinois Supreme Court.  Amazon disagrees.  It says Plaintiffs' question is not "outcome determinative" and there is no "genuine uncertainty" about it, as needed for certification.  But Amazon is wrong.  It misreads the outcome determinative requirement (which any *potentially* dispositive question—like Plaintiffs'—satisfies).  And it misinterprets the genuine uncertainty standard (which is met where, as here, state courts have not answered a question and federal courts have approached it in conflicting ways).  Certification is proper.

If the Court does not certify Plaintiffs' question to the Illinois Supreme Court, then it should hold that the IMWL does not incorporate the PPA.  The IMWL's plain

text permits no other outcome. It has no provision resembling the PPA and does not mention, cite, or allude to the PPA. This is dispositive because one law cannot adopt another through silence. Worse—for Amazon, that is—the IMWL expressly incorporates other parts of the federal law in which the PPA sits: the Fair Labor Standards Act ("FLSA"). By adopting some of the FLSA and leaving out the PPA, the IMWL shows a clear intent to reject the PPA.

Amazon has no answer for the IMWL's text. Rather than contest Plaintiffs' textual arguments, Amazon skips over them and points to general similarities between the FLSA and the IMWL. But courts may not read new, specific provisions into state laws based on their general parallels with federal ones. That would defy reason. And it would hamstring state legislatures, requiring them to expressly disavow federal laws touching on topics addressed in state statutes to prevent courts from rewriting those statutes to mirror federal ones.

Amazon's citations to federal precedent do not help its argument. Two federal cases are pertinent to this appeal: *Mitchell v. JCG Industries, Inc.*, 745 F.3d 837 (7th Cir. 2014) and *Chagoya v. City of Chicago*, 992 F.3d 607 (7th Cir. 2021). *Mitchell* correctly applies the IMWL as if it does not incorporate the PPA. *Chagoya* takes the opposite approach, though only because it accepts an agreement between the parties that the IMWL and FLSA claims, in that case, should rise or fall together. *Chagoya's* approach does not control because this Court may accept parties' unbriefed, uncontested stipulations of law without binding later panels to the parties' interpretation of the law. Only *Mitchell* independently considers whether the IMWL

2

has a provision parallel to the PPA, so only *Mitchell* applies.

This means the Court should reverse the trial court. The lower court dismissed Plaintiffs' IMWL claims because it assumed the IMWL incorporates the PPA. *Mitchell* and the IMWL's text show this was an error.

And no alternative ground justifies the district court's decision. As noted, absent PPA restrictions, the IMWL entitles workers to compensation for all time they must spend on employers' premises. Plaintiffs sufficiently allege Amazon violated the IMWL by requiring them to spend time in pre-shift, on-site COVID-19 screenings without paying for that time.

Amazon contends that time was non-compensable even if the IMWL rejects the PPA. It thinks employers need only compensate workers for time spent on activities that are primarily for an employer's benefit. But that is the IMWL's standard for off-site activities, not on-site ones, and Amazon's COVID-19 screenings took place on-site. Besides, Plaintiffs sufficiently allege the screenings were primarily for Amazon's benefit, so Plaintiffs state an IMWL claim regardless of the applicable standard.

## ARGUMENT

### I. The Court should certify, to the Illinois Supreme Court, the question of whether the IMWL incorporates the PPA.

Plaintiffs' opening brief explains why the Court should ask the Illinois Supreme Court to resolve whether the IMWL incorporates the PPA. Br. at 7–15.[1]

---

[1] Citations to "Br." are to Plaintiffs' opening brief. Citations to the opening brief's appendix are made using the appendix's page numbers (such as: "A1"). Citations to "Resp." are to Amazon's response to Plaintiffs' opening brief.

Amazon does not dispute that this question satisfies most certification requirements. Resp. at 34–37. Instead, it argues certification is improper because (1) the question is not "outcome determinative" and (2) there is no "genuine uncertainty" about it. *Id.* Both arguments fail.

### A. Amazon does not undermine Plaintiffs' argument that whether the IMWL incorporates the PPA is outcome determinative.

Amazon says Plaintiffs' proposed question is not outcome determinative because, even if the IMWL rejects the PPA, this appeal fails on alternative grounds. *Id.* at 34–36. Amazon is wrong because no alternative grounds support the district court's dismissal of Plaintiffs' IMWL claims. *Infra* Section II.C.

Regardless, the Court need not consider alternative grounds for dismissal to find Plaintiffs' proposed question is outcome determinative. A question is outcome determinative if *one* of its possible answers would resolve the appeal. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1086 (7th Cir. 2016), *certified question answered*, 2016 IL 120526. Plaintiffs' question qualifies because at least one answer to it would resolve this appeal, as Amazon admits. Resp. at 35 ("Plaintiffs' case certainly will end if they lose on the PPA question."). So, Amazon's (incorrect) claim that alternative grounds support dismissal is irrelevant to the certification inquiry.

*Zahn* proves this. There, the trial court dismissed a consumer's electricity overcharge claims "for lack of subject-matter jurisdiction, and in the alternative, for failure to state a claim." *Id.* To evaluate the jurisdictional holding, this Court had to determine whether the Illinois Commerce Commission had "exclusive jurisdiction

over [the consumer's] claims." *Id.* at 1087. That question merited certification because "a decision from the Illinois Supreme Court *could be* outcome determinative." *Id.* (emphasis added). That is: an affirmative answer would end the appeal and negate the need to assess the trial court's alternative basis for dismissal (failure to state a claim). *See id.* Of course, a negative answer would require the Court to evaluate the alternative basis later, which is exactly what the Court eventually did. *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 878 (7th Cir. 2017) (finding, after receiving answer to certified question, that trial court erred in dismissing suit for failure to state a claim). Like in *Zahn*, Amazon's proposed alternative ground for dismissal has no bearing on whether Plaintiffs' question is outcome determinative.

Lastly, Amazon's claim that the Court may not "appropriate[ly]" "broaden Plaintiffs' question" to address alternative grounds for dismissal is misguided. Resp. at 35. Certification of Plaintiffs' question, as Plaintiffs state it, is proper for reasons already discussed. Br. 7–16. And if the Court chose to broaden the question, that would be entirely appropriate. Whether and how to certify a question is up to the Court's discretion. *Winebow, Inc. v. Capitol-Husting Co.*, 867 F.3d 862, 870 (7th Cir. 2017), *certified question answered*, 2018 WI 60, 381 Wis. 2d 732.

## B. There is genuine uncertainty regarding whether the IMWL incorporates the PPA notwithstanding Amazon's argument.

Plaintiffs' question is ripe for certification because Illinois courts have not answered it and this Court has approached it in different ways, reflecting genuine uncertainty about it. Br. at 11–12. After all, *Mitchell* applies the IMWL as if it rejects

5

the PPA, and *Chagoya* does the opposite. *Id.*

Amazon argues there is no genuine uncertainty because *Chagoya* definitively resolves Plaintiffs' proposed question. *See* Resp. at 36. But *Chagoya* does not even evaluate the question. It assumes the IMWL incorporates the PPA based on an agreement between the parties without discussing or analyzing the issue at all. *Infra* Section II.B.2. Because *Chagoya* does not consider Plaintiffs' proposed question, *Chagoya* certainly does not resolve it.[2]

Amazon also implies federal district court decisions applying the IMWL consistent with the PPA undermine the case for genuine uncertainty. Resp. at 37. But those decisions assume the IMWL adopts the PPA without analyzing the issue, so they offer no persuasive guidance, and they support certification because they show the question is likely to recur. *Infra* Section II.B.2. Plus, because Plaintiffs' question is one of state law, the Court should look to state court decisions—not federal trial court opinions—for persuasive guidance. *In re Zimmer, NexGen Knee Implant Prod. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018). No Illinois decisions answer Plaintiffs' proposed question, so the Court should certify the question.

## II. If the Court does not certify Plaintiffs' question, then it should reverse the trial court because the IMWL does not adopt the PPA.

Alternatively, the Court should reverse the trial court on the basis that the IMWL does not incorporate the PPA. The IMWL's clear text demands this conclusion.

---

[2] This defeats all anti-certification arguments relying on the false premise that *Chagoya* resolves Plaintiffs' question. Resp. at 37–38 (arguing the "benefit" of certification "disappears after the first federal decision" answering the question).

6

And none of Amazon's counterarguments undermine it.

### A. The IMWL's plain text shows it does not incorporate the PPA, which Amazon fails to dispute.

Plaintiffs' opening brief advances two textual arguments showing the IMWL does not adopt the PPA. Br. at 16–20. First, the IMWL is silent as to the PPA, and one statute cannot incorporate another through silence. *Moore v. Chicago Park Dist.*, 2012 IL 112788, ¶ 13 (2012); *Lora v. United States*, 599 U.S. 453, 459 (2023). Second, the IMWL expressly incorporates non-PPA provisions of the FLSA—but not the PPA itself—so its exclusion of the PPA is purposeful. *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (2004). Amazon does not contest either argument directly. Resp. at 12–31. In fact, it offers *no* text-based argument that the IMWL incorporates the PPA. *Id.*

This is fatal to Amazon's opposition. The Court must determine whether the IMWL adopts the PPA as it predicts the Illinois Supreme Court would decide that issue, using Illinois precedent as a guide. *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016). "In Illinois courts, statutory construction starts with the statutory language itself." *In re I80 Equip.*, 938 F.3d 866, 870 (7th Cir. 2019). "If that language—given its plain and ordinary meaning—is clear and unambiguous, the court must give it effect and should not look to extrinsic aids for construction." *Id.* (citation and quotation omitted). The IMWL's silence as to the PPA shows a clear and unambiguous intent *not to* adopt it. *Stinson v. Chicago Bd. of Election Comm'rs*, 407 Ill. App. 3d 874, 877 (2011) (statute silent regarding notice requirement was "plain, clear and unambiguous" in that it did not incorporate notice requirement).

The Court should give that language effect without looking to other sources.

**B.    Amazon fails to support its argument that the IMWL "adheres to" the PPA.**

Because it cannot win based on the IMWL's text, Amazon runs from it. Amazon argues the IMWL "adheres to" the PPA for a variety of non-textual reasons. Resp. at 13–26.  Its arguments are unavailing.

**1.    Amazon's observation that the Illinois government "generally" construes the IMWL to be consistent with the FLSA does not show the IMWL incorporates the PPA.**

To show that the IMWL adopts the PPA, Amazon points out that "[e]ach branch of the Illinois government construes the IMWL to be consistent with the FLSA generally."  Resp. at 13.  This is a red herring.  Yes, the IMWL and the FLSA are "generally" consistent.  And yes, FLSA precedent informs IMWL analyses where the two statutes overlap.  But where, as here, the statutes differ, all branches of the Illinois government give those differences effect.

*First*, Illinois courts enforce differences between the FLSA and the IMWL. They often emphasize that the "Illinois minimum wage law is not identical to the FLSA."  *Soucek v. Breath of Life Pro. Servs.,* 2021 IL App (1st) 210413, ¶ 68 (2021) (citation and quotation omitted); *Samano v. Temple of Kriya*, 2020 IL App (1st) 190699, ¶ 62 (2020) (IMWL "is not identical to the FLSA"); *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 111 (2005) (noting a "critical difference" between the IMWL and FLSA).  To be sure, FLSA precedent is sometimes "used to determine whether an employer has committed a violation under the [IMWL]."  *Soucek,* 2021 IL App (1st)

210413, ¶ 68 (quotation omitted). But "this is true only for the [IMWL] provisions that incorporate the FLSA." *Id.* Where, as here, IMWL provisions "do not contain such an express incorporation of the FLSA's language or regulations," FLSA cases are "not binding" on Illinois courts. *Id.* (quotation omitted).

Amazon fails to show otherwise. It implies courts use the FLSA as an all-purpose gap-filler "[w]hen Illinois law does not specifically address an issue." Resp. at 13. Not so. Courts do look to FLSA precedent when they cannot find IMWL cases interpreting *existing* IMWL provisions that are equivalent to FLSA provisions, which is what Amazon's authority shows. *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010) (precedent regarding FLSA overtime provision is guidance for interpreting IMWL overtime provision because both are "parallel"); *Driver v. AppleIllinois*, 739 F.3d 1073, 1075 (7th Cir. 2014) (denying petition to appeal class certification ruling in IMWL case concerning parallel IMWL and FLSA tip provisions). But courts do not use FLSA precedent to add *new* provisions to the IMWL where the IMWL is silent, which is what Amazon asks the Court to do. *Driver v. AppleIllinois*, 917 F. Supp. 2d 793, 800 (N.D. Ill. 2013) (court could not add, to the IMWL, a "greater obligation" from the FLSA).

Amazon cites no Illinois case adopting the latter approach, despite its claim that the "Appellate Court of Illinois has adhered to this approach for decades." Resp. at 13–14. The cases it cites concern issues on which the FLSA and IMWL uniformly speak or are uniformly silent. *Kerbes v. Raceway Associates*, 2011 IL App (1st) 110318, ¶¶ 22, 26 (2011) (IMWL and FLSA regulations both barred schedule changes

9

"designed to evade" their "overtime requirements"); *Haynes v. Tru-Green Corp.*, 154 Ill. App. 3d 967, 977 (1987) (IMWL and FLSA regulations were "precisely parallel[]"); *Lewis v. Giordano's Enterprises*, 397 Ill. App. 3d 581, 588–89, 597 (2009) (neither IMWL nor FLSA expressly voided releases); *Bernardi v. Vill. of N. Pekin*, 135 Ill. App. 3d 589, 591 (1985) (neither IMWL nor FLSA gave express direction regarding dispatchers' entitlement to hourly minimum wage). None of these cases support importing an explicit FLSA provision into the IMWL when it is silent regarding the provision and when doing so would conflict with IMWL regulations.

Yet Amazon wants to add the PPA to the IMWL, which is silent as to the PPA, even though the PPA conflicts with IMWL regulations. The IMWL's compensable hours rule requires employers to pay for "all the time an employee is required to be . . . on the employer's premises" regardless of whether the time is spent on principal activities. Ill. Admin. Code tit. 56, § 210.110 (defining "hours worked"). Conversely, the PPA requires compensation for on-site time *only* if the time is spent on a "principal activity or activities." 29 U.S.C. § 254(a)(2). These rules cannot be reconciled.

Amazon tries to distract the Court from this by pointing to similar language in the overtime provisions of the IMWL and FLSA. Resp. at 14. Prima facie, these similarities do not justify reading a provision found outside the FLSA's overtime provision (the PPA) into a rule found outside the IMWL's overtime provision (the compensable hours rule). Nor is that justified by the "similarly worded declarations of legislative policy" in the IMWL and FLSA. Resp. at 15. If such generic similarities

rendered the two laws identical, courts would never—as they often do—give effect to the laws' differences.

*Second*, Illinois' executive branch enforces differences between the IMWL and the FLSA. Amazon is correct that the Illinois Department of Labor (the "Department") "may refer to" FLSA regulations for "guidance in the interpretation of" the IMWL. Ill. Admin. Code tit. 56, § 210.120. But the Department does not—and could not—use that discretion to interpret the IMWL as paralleling the FLSA in all respects. It interprets the IMWL to adopt select parts of the FLSA and to exclude others, including the PPA rules Amazon wants to add to the IMWL. Br. at 20–24.

Thus, Amazon's regulatory argument is pure misdirection. Amazon says "numerous courts" believe § 210.120 "reinforces the propriety of construing the Illinois and federal overtime laws harmoniously." Resp. at 16. Yet the cases it cites (*Kerbes*, *Lewis*, *Mitchell*, and *Driver*) only support parallel construction of the IMWL and FLSA where the underlying laws are—in fact—in harmony, as Plaintiffs discuss above and below. These cases are inapposite because the IMWL and the FLSA are not in harmony with respect to the PPA.

*Third*, Illinois' legislature has purposefully written differences from the FLSA into the IMWL. The IMWL's legislative history makes this clear. *E.g.*, 79th Ill. Gen. Assem., Senate Proceedings, June 4, 1975,[3] at 118 (Statement of Representative Hanahan) ("If we just followed the Federal Act, we wouldn't need a state law."). So

---

[3] Plaintiffs' opening brief identified the date for this proceeding as "June 4, 1976." Br. at 25, 26. The correct date for the proceeding is June 4, 1975.

does the IMWL's text.  *Supra* Section II.A.

Amazon's citation to a 1976 bill amending the IMWL does not change this.  The bill did not "make [the IMWL] even with federal laws," as Amazon implies.  Resp. at 14–15 (quotation omitted).  It just conformed the IMWL's minimum wage rates to the FLSA's rates.  79th Ill. Gen. Assemb., H.R., Transcript of June 16, 1976, 169–170 (Statement of Representative Hanahan) (bill would make IMWL "rate of minimum pay" "$2.30 an hour" as of "July 1st 1976," consistent with federal rate).

With this in mind, it speaks volumes that Illinois has never passed a law adjusting the IMWL to account for the PPA.  Illinois obviously knows how to match the IMWL to the FLSA when it so desires.  It did so in 1976, as Amazon highlights.  It also did so in 1977, when it adopted the FLSA's white collar exemptions; in 2004, when it incorporated the 2003 versions of those same exemptions; and in 2016, when it adopted, in part, an FLSA exemption related to collective bargaining units.  79th Ill. Gen. Assem., Senate Proceedings, December 16, 1976, at 59 (Statement of Senator Bruce) (stating, regarding white collar exemptions, that "we just picked [language] right up out of the [FLSA] and put it here"); 2004 Ill. Legis. Serv. P.A. 93-672 (S.B. 1645); 2015 Ill. Legis. Serv. P.A. 99-17 (S.B. 38); 820 ILCS §§ 105/4a(2)(E), (J).  Illinois has passed no law adopting the PPA because it rejects the PPA.

>    **2.    Amazon's claim that federal courts "construe the IMWL to be consistent with the PPA" is incomplete and does not support Amazon's argument.**

Amazon asks the Court to read the PPA into the IMWL because "federal courts have consistently applied" the PPA to the IMWL.  Resp. at 17.  Amazon's focus on

federal jurisprudence is inherently misguided. This appeal presents a state-law question, and to resolve it, the Court should look first to Illinois precedent. *In re Zimmer*, 884 F.3d at 751; Br. at 16–19.

Regardless, federal courts do not uniformly apply the IMWL as if it incorporates the PPA. Consider *Mitchell*. It applies the PPA standard from 29 U.S.C. § 203(o) to FLSA claims, but it does not apply that standard to parallel IMWL claims, because the IMWL "contains no counterpart to section 203(o)." 745 F.3d at 843–44. *Mitchell* thereby recognizes the IMWL does not adopt the PPA.

Amazon claims *Mitchell* is inapposite because it does "not even involve the PPA." Resp. at 21. It does. Congress passed the PPA in 1947 and, in 1949, amended the PPA with § 203(o)'s language, which *Mitchell* addresses. Fair Labor Standards Amendments of 1949, § 16(b), 63 Stat. 920.[4] Amazon's belief that § 203(o) is not part of the PPA because Congress passed it "two years after the PPA" is senseless. Resp. at 21. An amendment to an act becomes part of the act. Amazon knows this; it recognizes the PPA is part of the FLSA even though Congress enacted the PPA nine years after the FLSA. *Id.* at 2.

---

[4] The 1949 act amending the FLSA says it should not "be construed as amending, modifying, or repealing any provision of the Portal-to-Portal Act of 1947," "[e]xcept as provided in section 3(o)" of the 1949 act, which is codified in 29 U.S.C. § 203(o). Fair Labor Standards Amendments of 1949, § 16(b), 63 Stat. 920. Thus, the act makes clear § 203(o) *does* amend the PPA. So does the statutory language. The original version of the PPA amends the FLSA such that employers need not pay for time employees spend "(1) walking, riding, or traveling to and from the actual place of performance of the [employee's] principal activity" and "(2) activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a); *Chagoya*, 992 F.3d at 617. The 1949 amendments add to this list, providing that employers also need not pay for certain types of "time spent in changing clothes or washing" at the start or end of the day. 29 U.S.C. § 203(o).

Amazon's other attempts to distinguish *Mitchell* are also flawed.  Amazon contends that "*Mitchell* strongly embraces looking to federal law when interpreting the IMWL."  Resp. at 20.  It does not.  *Mitchell* says the FLSA "does not preempt the [IMWL] if the latter is more generous to employees, so even if . . . the employer has not violated the federal law, [courts] can find it has violated the state law."  745 F.3d at 838 (citation omitted).  It also says federal courts' preferences do not "bind the Illinois courts or regulators" when dealing with Illinois law.  *Id.* at 844.  And , of course, *Mitchell* does not apply the federal § 203(o) standard to state-law IMWL claims.  *Id.*

Next, Amazon quotes a single word from *Mitchell*—"benefit"—to argue *Mitchell* sees the merit in "harmonizing state and federal standards."  Resp. at 20.  Context is key here.  The sentence from which Amazon quotes reads as follows: "There is a benefit, in simplified labor relations, from a degree of convergence of federal and state law in regard to the scope of *exemptions* from mandatory provisions of those different bodies of law *when both are applicable* to the same workforce."  *Mitchell*, 745 F.3d at 845 (emphasis).  Put differently: *if* parallel exemptions exist in state and federal law, there is merit to unifying the exemptions' scopes.  That is irrelevant here.  The FLSA has the PPA; the IMWL has no parallel exemption.

Amazon also argues "*Mitchell* refutes Plaintiffs' claim that federal standards must not be used under the IMWL without express adoption of those standards."  Resp. at 22.  In support, Amazon states that the "*de minimis* standard applied [to the IMWL claims] in *Mitchell* emerged from federal wage-and-hour law and is not

14

mentioned directly in the IMWL or any of its regulations." *Id.* at 23. That statement is wrong. The *de minimis* doctrine that *Mitchell* applies originates in Illinois common law, not federal wage-and-hour law.[5]  *Mitchell* does not endorse using federal law to invent new state labor law exemptions.

Recognizing this, Amazon asks the Court to follow *Chagoya* instead of *Mitchell*. Resp. at 17. But *Chagoya* only applies a PPA framework to the IMWL based on an agreement between the parties. A footnote in the opinion states:

> Because the IMWL parallels the language of the FLSA, the parties agree that the same standard applies to the operators' claims under the FLSA and the IMWL. Accordingly, we analyze the FLSA and IMWL claims together. *See, e.g.*, *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010).

*Chagoya*, 992 F.3d at 615 n.21.

"Such a decision, merely accepting the parties' agreement, is not binding on later panels." *Rumsfeld v. United Techs. Corp.*, 315 F.3d 1361, 1373 n.16 (Fed. Cir. 2003). This supports the Court's practice of "resolv[ing] [a] case on the terms on which it [is] presented" and avoiding issues "the parties have not briefed." *Merk v. Jewel Companies*, 848 F.2d 761, 764 (7th Cir. 1988). After all, "judges are not like pigs"; they need not go "truffle hunting through all of the laws applicable" to a case if the

---

[5] *Mitchell* notes the *de minimis* doctrine "is a common law doctrine, both state and federal." 745 F.3d at 844. It cites *Porter v. Kraft Foods Global, Inc.*, 2012 IL App (4th) 120258-U (2012) to show the doctrine's adoption in "Illinois labor law." *Mitchell*, 745 F.3d at 844. *Porter* itself cites the Illinois Supreme Court as authority for the common law *de minimis* doctrine. 2012 IL App (4th) 120258-U, ¶ 41 (citing *County of Lake v. Board of Education of Lake Bluff School District No. 65*, 325 Ill. App. 3d 694, 702 (2001)). It does also rely on federal precedent in *Sandifer v. United States Steel Corp.*, 678 F.3d 590 (7th Cir. 2012), but only as "persuasive" authority. *Porter*, 2012 IL App (4th) 120258-U, ¶ 46.

15

parties do not raise them. *Gutierrez v. Kermon*, 722 F.3d 1003, 1012 n.3 (7th Cir. 2013) (cleaned up). The *Chagoya* parties did not raise the issue of whether the IMWL incorporates the PPA, so their interpretation of the law, as accepted in *Chagoya*, does not bind this panel.

Amazon says *Chagoya* does control because, in reality, *Chagoya* gives "reasoned consideration" to whether the IMWL adopts the PPA. Resp. at 18–19. Amazon relies on a hyper-technical interpretation of *Chagoya's* above, two-sentence footnote. *Id.* This is unwarranted. "Because opinions, unlike statutes, are not usually written with the knowledge or expectation that each and every word may be the subject of searching analysis, [courts] do not follow statutory canons of construction with their focus on textual precision when interpreting judicial opinions." *Upper Skagit Indian Tribe v. Sauk-Suiattle Indian Tribe*, 66 F.4th 766, 770 (9th Cir. 2023) (citation, quotation, and brackets omitted). Thus, when evaluating a judicial opinion, a court simply "reads the language of the decision in the context of the decision as a whole" and gives it its natural effect. *Id. Chagoya*, read as a whole, does not give reasoned consideration to whether the IMWL incorporates the PPA because it includes no analysis of that issue. 992 F.3d at 615–25.

Besides, Amazon's technical interpretation of the *Chagoya* footnote is inaccurate. If one reads the footnote like a statute, then one must apply the rule against "surplusage." *Commodity Trend Serv. v. CFTC*, 233 F.3d 981, 989 (7th Cir. 2000). That is the "interpretive canon that all words in a statute should, if possible,

16

be given effect." *Id.* *Chagoya* says it analyzes the FLSA and IMWL claims together because "the parties agree that the same standard applies." 992 F.3d at 615 n.21. This would be surplusage if *Chagoya* independently considered and found that the FLSA and IMWL claims should be interpreted together.[6]

Beyond *Chagoya*, Amazon also cites district court decisions purportedly supporting its argument that the IMWL adopts the PPA. Resp. at 19–20. The problem is that these decisions do not specifically evaluate whether the IMWL incorporates the PPA. They affirm the IMWL and FLSA are "generally" parallel. *Barlett v. City of Chicago*, No. 14-cv-7225, 2019 WL 4823532, at *4 (N.D. Ill. Oct. 1, 2019); *Meadows v. NCR Corp.*, No. 16-cv-6221, 2017 WL 5192009, at *4 n.13 (N.D. Ill. Nov. 9, 2017); *Pizano v. Big Top & Party Rentals*, No. 15-cv-11190, 2017 WL 1344526, at *1 n.1 (N.D. Ill. Apr. 12, 2017); *Farmer v. DirectSat USA*, No. 08-cv-3962, 2013 WL 12334777, at *2 (N.D. Ill. Oct. 17, 2013); *Guzman v. Laredo Sys.*, No. 10-cv-1499, 2012 WL 5197792, at *5 (N.D. Ill. Oct. 19, 2012); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2009 WL 2612307, at *13 (N.D. Cal. Aug. 24, 2009); *Rix v. UPS*, No. 06-cv-3148, 2007 WL 9813347, at *4 (N.D. Ill. Apr. 24, 2007); *Ladegaard v. Hard Rock Concrete Cutters*, No. 00-cv-5755, 2004 WL 1882449, at *4 (N.D. Ill. Aug. 18, 2004); *O'Brien v. Encotech*, No. 00-cv-1133, 2004 WL 609798, at *7 (N.D. Ill. Mar. 23, 2004). Because they are trial court decisions with no reasoning to

---

[6] The *Chagoya* footnote's citation to *another* footnote—from *Urnikis-Negro*—does not save Amazon's interpretation. *Urnikis-Negro* does not evaluate whether the IMWL incorporates the PPA, nor does it require coextensive construction of the IMWL and FLSA in all cases. 616 F.3d at 665–84.

adopt, these decisions are both non-binding and non-persuasive.

Amazon follows its discussion of federal precedent by claiming that "given the general convergence between Illinois and federal wage-and-hour law, Illinois lawmakers would have spoken clearly had they meant to reject the [PPA]." *Id.* Amazon has it backwards. The legislature need not speak clearly to prevent courts from inventing new statutory provisions. *Stinson*, 407 Ill. App. 3d at 877; *W. & S. Life Ins. Co. v. Edmonson*, 397 Ill. App. 3d 146, 152 (2009) (a "court cannot rewrite a statute" by "reading into it exceptions, limitations or conditions not expressed by the legislature"). It must only speak clearly to create new statutory provisions. *Id.* As one court explained in a highly similar case:

> The General Assembly's omission of any mention of the PPA speaks for itself and means that the PPA is not part of Maryland law. To conclude differently would be to require that the General Assembly expressly disavow the adoption or incorporation of federal laws or run the risk of being deemed to have incorporated the law in Maryland.

*Amaya v. DGS*, 479 Md. 515, 560 (2022).

Next, Amazon makes a semantic argument. It takes issue with Plaintiffs' observation that the PPA "only excepted certain work activities from being compensable under the FLSA" without changing the basic definition of FLSA compensable hours from *Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680 (1946). Resp. at 23 (quoting Br. at 22). Amazon thinks the PPA is better read as altering *Anderson's* definition, rather than creating exceptions to it. *Id.* at 24. Amazon is incorrect. 29 C.F.R. § 785.7 ("The Portal-to-Portal Act did not change the [*Anderson*] rule except to provide an exception for preliminary and postliminary

activities."). But it does not matter either way. The IMWL creates its own definition of compensable hours, which resembles *Anderson's* definition for FLSA compensable hours *without* adding language from the PPA. *Infra* Section II.B.3. The IMWL's definition controls because only IMWL claims are at issue.

Finally, Amazon says the PPA must be part of the IMWL because the former alters a "foundational concept in wage-and-hour law"—the definition of compensable hours. Resp. at 25. But the PPA only changes this concept in federal law. It only restricts the FLSA's compensable hours definition, and states are free to write their own definitions that are "more generous to employees." *Mitchell*, 745 F.3d at 838.

### 3. Contrary to Amazon's argument, the IMWL's regulations support Plaintiffs' interpretation of the IMWL.

IMWL regulations are consistent with Plaintiffs' argument that the IMWL eschews the PPA. As discussed, the regulations do not limit compensable hours to those spent on an employee's "principal activity or activities" like the PPA, thereby signaling a rejection of the PPA. *Supra* Section II.B.1.

Amazon thinks IMWL regulations send no such signal. It says the regulations' definition of compensable hours "comes from" *Anderson*, which defined FLSA compensable hours to include "all time during which an employee is necessarily required to be on the employer's premises." Resp. at 26 (quoting *Anderson*, 328 U.S. at 690–91). Accordingly, per Amazon, Illinois courts "must construe the *Anderson* definition in light of the PPA." Resp. at 27.

But courts need not look to *Anderson* at all when interpreting IMWL claims. True, the definition from the IMWL's compensable hours regulation parallels the *Anderson* definition. Yet the regulation does not adopt *Anderson*, or *Anderson* as amended by the PPA, or any federal law in its definition. Ill. Admin. Code tit. 56, § 210.110. Thus, the IMWL has a definition of compensable hours independent of federal law, and that is the only definition courts must review when evaluating the IMWL.

Amazon cites no cases showing courts must refer to *Anderson*—let alone *Anderson* as modified by the PPA—to evaluate IMWL claims. Resp. at 27. Two of the cases it cites apply out-of-state wage rules consistent with the PPA based on the rules' express text. *Thomas v. Amazon.com Servs., Inc.*, 462 F. Supp. 3d 828, 836 (N.D. Ohio 2020) (Ohio law expressly incorporating the FLSA and PPA); *Buero v. Amazon.com Servs., Inc.*, 370 Or. 502, 517 (2022) (Oregon regulation whose text "mirrors" the PPA). The other case only applies a Connecticut law consistent with the PPA based on a Connecticut Supreme Court decision. *Del Rio v. Amazon.com Servs., Inc.*, No. 3:21-cv-1152, 2023 WL 6141140, at *5 (D. Conn. Sept. 20, 2023).

Amazon also argues the Court should read the IMWL's compensable hours regulation with an eye toward the PPA based on "another Illinois regulation." Resp. at 27. The second regulation says the Department "may refer to" FLSA regulations administering the FLSA "as amended" for "guidance" regarding the IMWL. Ill. Admin. Code tit. 56, § 210.120. This is irrelevant because, as previously discussed, the Department has not exercised this discretion to incorporate the at-issue PPA

rules into IMWL regulations.[7]

Moving on, Amazon claims Plaintiffs "err in drawing a negative implication" from IMWL regulations' adoption of narrow travel-time rules that stem from the PPA. Resp. at 28. There is no error. The "rules that govern construction of statutes also apply to the construction of administrative regulations." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 368 (2009). The "expression of one thing" in a statute implies "the exclusion of another." *Metzger*, 209 Ill. 2d at 44. IMWL regulations adopt travel-time rules that are based on the PPA but no other rules that are based on the PPA; this means IMWL regulations intentionally exclude the latter.

Amazon only reinforces Plaintiffs' properly-drawn, negative implication by pointing out the travel-time rules the Department adopts are based on 29 U.S.C. § 254(a), the "original source" for the "principal activities" language Amazon hopes to import into the IMWL. Resp. at 28. It defies reason to think the Department would adopt *all* rules stemming from § 254(a) by expressly naming a *limited set* of them.

Moreover, Amazon ignores the distinction between § 254(a)(1) and § 254(a)(2). The federal travel-time rules that IMWL regulations adopt stem from § 254(a)(1), which renders time spent "walking, riding, or traveling to and from [work]" non-compensable. 29 U.S.C. § 254(a)(1). The PPA standard Amazon wants to add to the IMWL comes from § 254(a)(2), which broadly makes "preliminary" and "postliminary"

---

[7] Nor would it make sense to do so. Looking to rules interpreting the FLSA "as amended" is only prudent where, unlike here, IMWL provisions point to the FLSA "as amended" through direct reference or parallel language. *E.g.*, 820 ILCS § 105/4a(2)(F) (incorporating FLSA exemption "as now or hereafter amended").

activities at work non-compensable.  29 U.S.C. § 254(a)(2).  IMWL regulations purposefully exclude those rules by adopting only rules based on § 254(a)(1).

Finally, Amazon's authority construing Kentucky law consistent with the PPA is distinguishable.  Resp. at 28–29 (citing *Hughes v. UPS*, 677 S.W.3d 273 (Ky. 2023) and *Vance v. Amazon.com, Inc.*, 852 F.3d 601 (6th Cir. 2017)).  Kentucky's wage regulations broadly mirror and incorporate PPA rules, including the PPA rules at issue here.  *Hughes*, 677 S.W.3d at 280 ("Kentucky's wait-time regulation" "imports the Portal-to-Portal Act rule" from "29 C.F.R. §§ 785.14–16," which itself stems from 29 U.S.C. § 254(a)(2)).  Illinois' regulations do not.

### 4.    Plaintiffs' out-of-state authority provides persuasive support for Plaintiffs' interpretation of the IMWL.

The out-of-state cases Plaintiffs have cited are instructive here.  Br. at 26–28. They hold state wage laws silent as to the PPA—like the IMWL—do not incorporate the PPA.  *Id.*  Amazon says "none of the states Plaintiffs highlight" have "a long and unbroken line of cases applying the PPA" to state wage laws.  Resp. at 29.  But this does not distinguish Plaintiffs' cases because Illinois also has no "long and unbroken" history of applying the PPA to the IMWL.  *Supra* Section II.B.1.

### C.    There is no alternative basis for affirming the district court because, given that the IMWL rejects the PPA, Plaintiffs sufficiently allege IMWL violations.

Amazon argues time spent in COVID-19 screenings is not compensable regardless of whether the IMWL incorporates the PPA, meaning an alternative ground justifies dismissal of Plaintiffs' claims.  Resp. at 31–34.  Amazon is wrong.

1. **Absent the PPA's constraints, the IMWL requires employers to compensate workers for all mandatory, on-site time.**

Because the IMWL rejects the PPA, only the IMWL governs Plaintiffs' unpaid overtime claims. The IMWL entitles employees to overtime compensation for all hours worked above forty per week. 820 ILCS § 105/4a(1). And as explained, IMWL regulations define compensable "hours worked" to include "all the time" an employee must spend "on the employer's premises." Ill. Admin. Code tit. 56, § 210.110.

Amazon claims such hours must be spent "necessarily and primarily for the benefit of the employer" to be compensable and further claims Plaintiffs cannot meet this standard. Resp. at 31. That is not true for two reasons.

*One*, Illinois purposefully excludes the "necessarily and primarily" language from its general definition of compensable hours. *See* Ill. Admin. Code tit. 56, § 210.110. It only includes that language in the definition for a narrow sub-type of compensable hours. *Id.* Specifically: "An employee's meal periods and time spent on-call away from the employer's premise are compensable hours worked when such time is spent *predominantly for the benefit of the employer*." *Id.* (emphasis added). So, all mandatory, on-site time is compensable, whereas off-site time and meal break time is only compensable if spent predominantly for an employer's benefit.

*Two*, even if federal standards governed here (they do not), Amazon mischaracterizes the pre-PPA definition of work under the FLSA. Although the U.S. Supreme Court initially defined work in *Tennessee Coal v. Muscoda Local No. 123* as activities "controlled or required by the employer and pursued necessarily and

23

primarily for the benefit of the employer and his business," 321 U.S. 590, 598 (1944), two years later the Court expounded on this principle when it defined the term "workweek" to "include all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson*, 328 U.S. at 691–92. The Court explained that it follows that the time employees are required to be on the employer's premises is time that is necessarily and primarily for the benefit of the employer and his business. *Id.* Amazon misapplies *Tennessee Coal* and *Anderson* by suggesting that activities that are "primarily for the benefit of the employer" is separate and distinct from the time employees are required to be on the employer's premises. They are one and the same.

Amazon offers zero authority supporting its arguments that (1) the IMWL requires Plaintiffs to allege they spent on-site time primarily for Amazon's benefit or that (2) Plaintiffs have no right to compensation under the IMWL if the PPA does not apply. The cases Amazon cites as support do not involve the IMWL. They concern a claim for unjust enrichment, an FLSA claim for time union representatives voluntarily participated in OSHA walkaround inspections, and FLSA and California claims for time employees spent in sleep studies away from the employer's premises. *Perez v. Walmart, Inc.*, No. 4:21-cv-00120-HFS, 2021 WL 5741484, at *1 (W.D. Mo. Oct. 25, 2021) (unjust enrichment); *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1154 (D.C. Cir. 1975) (voluntary OSHA walkaround inspections); *Wheat v. J.B. Hunt Transp.*, No. 15-cv-02849-MWF-AS, 2016 WL 1397673, at *1 (C.D. Cal. Apr. 5, 2016) (sleep study).

### 2. Plaintiffs sufficiently allege Amazon withheld pay for time spent in mandatory, on-site activities.

Plaintiffs sufficiently allege Amazon violated the IMWL by failing to pay them for mandatory, on-site overtime hours. Specifically, Plaintiffs allege they worked over forty hours per week; Amazon required them to undergo on-site, pre-shift COVID-19 screenings; and Amazon did not pay for time spent in those screenings. A11–12, A14–15, A18, A26. Even if the IMWL requires Plaintiffs to demonstrate time spent in COVID-19 screenings was primarily for Amazon's benefit, that is a question of fact unsuitable for resolution at the pleadings stage. *Beasley v. Hillcrest Medical Center*, 78 Fed. App'x. 67, 70 (10th Cir. 2003); *Bernard v. IBP, Inc. of Nebraska,* 154 F.3d 259, 265 (5th Cir. 1998); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483 (7th Cir. 2020). Plaintiffs allege the screenings were not optional, confined employees to Amazon's premises, compelled employees to follow Amazon's instructions, and subjected employees to Amazon's control. A14. Plaintiffs further allege the screenings "allowed Amazon's operations to continue," "increased the efficiency of Amazon's operations," and helped Amazon "make billions in profits during the pandemic." A16–17. Reading these allegations in Plaintiffs' favor, as is required, shows Amazon's COVID-19 screenings primarily benefited Amazon. *Lax v. Mayorkas*, 20 F. 4th 1178, 1181 (7th Cir. 2021) (courts construe complaints "in the light most favorable to the plaintiff" on motions to dismiss); *Opinion Letter: Fair Labor Standards Act*, U.S. DEPARTMENT OF LABOR (January 26, 1998), 1998 WL

852652, at *1 ("Time spent undergoing a physical examination is . . . primarily for the benefit of the employer.").

## CONCLUSION

The Court should certify this matter to the Illinois Supreme Court or reverse the dismissal of Plaintiffs' IMWL claims.

Dated: May 10, 2024

Respectfully submitted,

/s/ *John J. Frawley*

Maureen A. Salas
Douglas M. Werman
John J. Frawley
WERMAN SALAS P.C.
77 W. Washington St.
Suite 1402
Chicago, IL. 60602
Tel: (312) 419-1008
Fax: (312) 419-1025
msalas@flsalaw.com
dwerman@flsalaw.com
jfrawley@flsalaw.com

Don J. Foty
HODGES & FOTY, LLP
2 Greenway Plaza
Suite 250
Houston, TX 77046
Tel: (713) 523-0001
Fax: (713) 523-1116
dfoty@hftrialfirm.com

*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32(c) because this brief contains 7,000 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a) and Local Rule 32(b).  It uses proportionally spaced, 12-point Century Schoolbook font in the body of the brief.  And it uses proportionally spaced, 11-point Century Schoolbook font in footnotes.

Dated: May 10, 2024                     */s/ John J. Frawley*
                                        John J. Frawley

## CERTIFICATE OF SERVICE

I certify that on May 10, 2024, I caused the foregoing Plaintiffs-Appellants'
Reply in Support of Opening Brief and Motion for Certification to the Illinois Supreme
Court Pursuant to Circuit Rule 52 to be served on all parties, or their counsel, by
filing it via the Court's electronic filing system.

/s/ *John J. Frawley*
John J. Frawley