In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-1028

LISA JOHNSON and GALE MILLER ANDERSON,

*Plaintiffs-Appellants*,

*v.*

AMAZON.COM SERVICES LLC,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-00685 — **Thomas M. Durkin**, *Judge*.

———————————

ARGUED SEPTEMBER 25, 2024 — DECIDED JUNE 9, 2026

———————————

Before SCUDDER, KIRSCH, and MALDONADO, *Circuit Judges*.

MALDONADO, *Circuit Judge*. Lisa Johnson and Gale Miller Anderson ("Plaintiffs") worked for Amazon.com Services LLC ("Amazon") as hourly warehouse employees—moving, stacking, and loading packages—during the COVID-19 pandemic. Now, on behalf of a putative class, they seek overtime wages under the Illinois Minimum Wage Law ("IMWL") for time spent undergoing unpaid, mandatory pre-shift COVID-19 screenings. The district court dismissed Plaintiffs' IMWL

claim, finding that because the COVID-19 screenings were non-compensable preliminary activities, as defined by the federal Portal-to-Portal Act of 1947, 29 U.S.C. § 254(a)(2) ("PPA"), they were also not compensable under the IMWL.

Uncertain as to whether the IMWL incorporates the PPA's exclusion from compensation of preliminary activities, we certified the question to the Illinois Supreme Court, which answered in the negative. *See Johnson v. Amazon.com Servs. LLC*, 142 F.4th 932, 944 (7th Cir. 2025), *certified question answered*, 2026 IL 132016. Accordingly, we reverse and remand to the district court for further proceedings consistent with this opinion and the opinion of the Illinois Supreme Court.

## I.

In 2020, at the outset of the coronavirus pandemic, Amazon instituted a policy barring warehouse employees from clocking in to their shifts until they underwent a medical examination to screen for symptoms of COVID-19. These screenings took approximately 10 to 15 minutes. Because warehouse employees were not paid until they clocked in, that time was uncompensated. The screenings amounted to potentially one hour per week of uncompensated overtime on Amazon's property, under Amazon's control—a non-trivial imposition for those compensated on an hourly basis.

So, in 2023, Plaintiffs brought a putative class action on behalf of Amazon warehouse employees who were not paid for time spent undergoing the mandatory COVID-19 screenings. Plaintiffs relied on several theories in their complaint, only one of which is relevant here: that Amazon failed to pay them for overtime in violation of section 4a(1) of the IMWL, which requires employers to pay their hourly employees time-and-

a-half for all "employment in excess of" 40 hours in a work-week. 820 ILCS 105/4a(1).

Amazon moved to dismiss Plaintiffs' claims. Relevant here, Amazon argued that section 4a(1) of the IMWL incorporates the federal PPA, which relieves employers from paying wages for "activities which are preliminary to" the principal activity which the employee is employed to perform—namely, activities occurring "prior to the time on any particular workday at which such employee commences." *See* 29 U.S.C. § 254(a)(2). Construing the IMWL and the PPA together, the district court agreed with Amazon and dismissed Plaintiffs' IMWL claim, finding that the pre-shift COVID-19 screenings were non-compensable preliminary activities. *Johnson v. Amazon.com Servs., LLC*, No. 23 C 685, 2023 WL 8475658, at *2–3 (N.D. Ill. Dec. 7, 2023).

Plaintiffs appealed, asking us to certify to the Illinois Supreme Court whether section 4a(1) incorporates the preliminary activities exclusion set forth in the PPA. We agreed, explaining our decision to seek guidance from the Court in an opinion published at 142 F.4th 932,[1] with which we assume familiarity throughout the balance of this opinion. The Court accepted the certification pursuant to Ill. Sup. Ct. R. 20 and

---

[1] Specifically, we certified the following question:

> Does the Illinois Minimum Wage Law, 820 ILCS 105/4a, incorporate the exclusion from compensation for employee activities that are preliminary or postliminary to their principal activities, as provided under the federal Portal-to-Portal Act 29 U.S.C. § 254(a)(2)?

*Johnson*, 142 F.4th at 944.

answered in the negative. *Johnson v. Amazon.com Servs., LLC*, 2026 IL 132016, ¶¶ 18, 23.

Specifically, after thoroughly assessing the text of the IMWL, the Court concluded that "there is no mention or reference to the PPA or to preliminary or postliminary activities in section 4a or anywhere else in the [IMWL]." *Id.* at ¶ 14. Further, considering the administrative regulations set forth by the Illinois Department of Labor ("IDOL") defining "hours worked," *see* 56 Ill. Admin. Code § 210.110—adopted by the IMWL pursuant to 820 ILCS 105/10(a)—the Court observed:

> [T]here is no reference to the PPA or [United States Department of Labor ("USDOL")] regulations that establish a preliminary or postliminary exclusion from "hours worked." To the contrary, IDOL defines "hours worked" to include all time an employee is *required* to be on the employer's premises, which contradicts the potential applicability of any such exclusion.

*Johnson*, 2026 IL 132016, ¶ 16 (emphasis in original). As a result, the Court determined that the IMWL did not incorporate the preliminary activities exclusions set forth in the PPA, and in fact, "hours worked" seems to "necessarily *include*[] preliminary . . . activities." *Id.* at ¶¶ 18, 23 (emphasis added).

## II.

We now "apply the instructions of the state supreme court to the facts of this case, and thereby (we hope) come closer to resolving this long-running dispute." *St. Augustine Sch. v. Underly*, 21 F.4th 446, 448 (7th Cir. 2021).

As set forth in their position statements filed after the Illinois Supreme Court's decision, *see* CIR. R. 52(b), the parties

agree that remand is appropriate because the district court dismissed Plaintiffs' IMWL claim based on the faulty premise that section 4a(1) incorporates the PPA. But while Plaintiffs ask us to reverse the dismissal, Amazon asks us to vacate the dismissal and allow the district court to address in the first instance whether Plaintiffs' IMWL claim fails on a different basis: that the COVID-19 screenings were not compensable work under the IMWL because they were not pursued primarily for Amazon's benefit. Insofar as Amazon seeks to persuade us to incorporate the federal "benefit of the employer" test into the IMWL, its argument seems akin to that already rejected by the Illinois Supreme Court, which counseled against grafting explicit restrictions in federal statutes onto the plain, unambiguous language of state statutes. *See John-son*, 2026 IL 132016, ¶ 19. Therefore, both comity and judicial efficiency counsel that we decide this issue in the first instance to advance this litigation. Because the IMWL is silent as to whether compensable work excludes activities not undertaken primarily for the "benefit of the employer"—and indeed, can be construed as rejecting such an exclusion—we decline to read it into the statute's text.

The "benefit of the employer" test advocated by Amazon derives from *Tennessee Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590 (1944). There, the Supreme Court defined "work" under the Fair Labor Standards Act ("FLSA") as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598. Amazon argues that the COVID-19 screenings were not "necessarily and primarily" for Amazon's benefit, and as a result, were not compensable work under the IMWL.

But as we explained in our earlier opinion, "absent the exclusions under the PPA, it is not apparent that [P]laintiffs' IMWL claims would be subject to the 'primarily for the benefit of the employer' test for compensation from *Tennessee Coal*." *Johnson*, 142 F.4th at 944. Instead, we reasoned that the IMWL claim would "appear subject only to the limitation provided in the [IDOL] regulations." *Id.* We did not commit fully to this construction of the IMWL without the guidance of the Illinois Supreme Court, but now, with the benefit of the Court's opinion, we stand by our initial supposition. Plaintiffs' IMWL claim is limited solely by the text of section 4a(1) of the IMWL and IDOL's regulations implementing that section, namely, 56 Ill. Admin. Code § 210.110.

Amazon suggests that the Illinois Supreme Court's opinion was so narrowly tailored to the certified question that it cannot be deployed to read the "benefit of the employer" test out of section 4a(1). But that's slicing the Court's opinion a bit too thin. To discern whether section 4a(1) incorporated the PPA's exclusion from compensation for preliminary activities, the Court considered the text of the entire IMWL, as well as relevant IDOL regulations.

The Court began this portion of its analysis by explaining that section 10(a) of the IMWL mandates that IDOL make administrative regulations "to carry out the purposes" of the statute. *Johnson*, 2026 IL 132016, ¶ 15 (quoting 820 ILCS 105/10(a)). Critically, the Court explained that while IDOL's regulations *permit* reference to USDOL's "regulations and interpretations in administering the FLSA '[f]or guidance' in the interpretation of the [IMWL] and the regulations IDOL has promulgated thereunder, nothing in that section or any other provision *requires* IDOL to adopt USDOL's regulations and

interpretations of the FLSA." *Id.* at ¶ 17 (quoting 56 Ill. Admin. Code § 210.120) (emphasis added). The Court added that "there is no language in the [IMWL] that permits any provision of the FLSA or USDOL's regulations to override the definitions that IDOL has promulgated in accordance with the General Assembly's mandate." *Id.* And though the Court made these observations in the context of answering the specific question we certified, they apply broadly, shedding light on the applicability of the "benefit of the employer" test.

For several reasons, the Court's opinion suggests that, unencumbered by the FLSA and the USDOL's implementing regulations, nothing in the text of section 4a(1) of the IMWL, or the relevant IDOL regulations, reflects incorporation of *Tennessee Coal*'s "benefit of the employer" test.

First, neither the plain, unambiguous text of section 4a(1), nor that of its implementing regulations, mentions the "benefit of the employer" or suggest a similar limit on compensable work. Instead, section 4a(1) says: "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed." 820 ILCS 105/4a(1). The IMWL does not define the scope of compensable work, deferring to IDOL's discretion. *See* 820 ILCS 105/10(a). But barring two context-specific exceptions discussed below, IDOL's definition of "hours worked" also makes no mention of the "benefit of the employer." *See* 56 Ill. Admin. Code § 210.110. Without any hint from the IMWL's plain text, or its implementing regulations, that the General Assembly sought to incorporate the "benefit of the employer" test, we may not read that test into the statute. As the Illinois

Supreme Court noted while rejecting Amazon's urging to "interpret section 4a of the [IMWL] coextensively" with the FLSA, "[i]t is the dominion of the legislature to enact laws and the courts to construe them, and we can neither restrict nor enlarge the meaning of an unambiguous statute." *Johnson*, 2026 IL 132016, ¶ 19 (quotation omitted); *see also Moore v. Chicago Park Dist.*, 978 N.E.2d 1050, 1054 (Ill. 2012) (we seek legislative "intent first from the plain language used in the statute, and if that language is clear and unambiguous, we are not at liberty to depart from its plain meaning.").

Second, IDOL has included the "benefit of the employer" test in two specific contexts within its definition of "hours worked," suggesting that outside of those contexts, the test does not apply. First, IDOL explained that "[a]n employee's meal periods and time spent on-call away from the employer's premise" can be "compensable hours worked when such time is spent predominantly for the benefit of the employer, rather than for the employee." 56 Ill. Admin. Code § 210.110. Second, IDOL explained that when "performed for the employer's benefit," an employee's travel can be "compensable work time." *Id*. Tellingly, IDOL places no such "benefit of the employer" limitation on its general definition of "hours worked." Therefore, we presume that for all other time "an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work," IDOL purposefully avoided application of the "benefit of the employer" test. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)) ("[W]here [the General Assembly] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that

[the Assembly] acts intentionally and purposely in the disparate inclusion or exclusion.").

Third, as the Illinois Supreme Court pointed out, there are sections of the IDOL regulations that expressly "reference[] specific provisions of the FLSA and regulations promulgated by USDOL thereunder in defining some terms." *Johnson*, 2026 IL 132016, ¶ 16; *see, e.g.*, 56 Ill. Admin. Code § 210.110 (defining "agriculture" with reference to the FLSA and USDOL regulations). But in its definition of "hours worked," IDOL makes no such reference to the FLSA and only references USDOL regulations in a single, specific scenario, irrelevant to this appeal. *Johnson*, 2026 IL 132016, ¶ 16. There, IDOL explains that employee travel "is compensable work time as defined in 29 C.F.R. §§ 785.33–785.41." 56 Ill. Admin. Code § 210.110. Those cited USDOL regulations clarify the specific circumstances under which an employee can be compensated for her commute to work, and thus, their applicability is confined to the context of employee travel. As the Court noted, IDOL's failure to reference USDOL regulations in the scope of its general definition of "hours worked" suggests that IDOL did not intend that definition to be informed by USDOL regulations. *See Johnson*, 2026 IL 132016, ¶ 16. That is, IDOL seems to have deemed it appropriate to carry out section 4a(1) independent of the FLSA's or USDOL's interpretive guidance, as is its prerogative under section 10(a). *See* 820 ILCS 105/10(a); *cf.* 29 U.S.C. § 218(a) (foreseeing states' exclusion of federal wage law guidance by establishing that no provision of the FLSA "shall excuse noncompliance" with a state law setting forth more generous protections than the FLSA provides).

Fourth, IDOL had a clear opportunity to adopt the "benefit of the employer" test when it set forth its definition of "hours worked," but IDOL declined to do so. As we noted in our prior opinion, *Johnson*, 142 F.4th at 944, IDOL's definition of "hours worked" "generally mirrors" the definition set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). *Compare Anderson*, 328 U.S. at 690–91 (defining the statutory workweek under the FLSA as "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace"), *with* 56 Ill. Admin. Code § 210.110 (defining "hours worked" as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time the employee is required or permitted to work for the employer."). But in *Anderson*, in addition to defining work as set forth above, the Supreme Court separately endorsed the benefit of the employer test. *See Anderson*, 328 at 691–92 (quoting *Tennessee Coal*, 321 U.S. at 598) (finding that "time spent in walking to work on the employer's premises" must be "included in the statutory workweek and compensated accordingly" because it was "pursued necessarily and primarily for the benefit of the employer and his business."). That IDOL mirrored only *Anderson*'s definition of work as time in which an employee is required to be on the employer's premises, and not its articulation of the "benefit of the employer" test, suggests a rejection of that test. "This fact only underscores our duty to refrain from reading a phrase into the statute when [the General Assembly] has left it out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).

In sum, the plain text of section 4a(1) of the IMWL, as well as the relevant IDOL regulations, demonstrate that section 4a(1) does not include the "benefit of the employer" test.

No. 24-1028                                    11

Thus, we decline to read the test into the statute. *See Hines v. Dep't of Pub. Aid*, 850 N.E.2d 148, 153 (Ill. 2006) ("Where, as here, the language of a statute is clear and unambiguous, the court must enforce it as written. It may not annex new provisions or substitute different ones, or read into the statute exceptions, limitations, or conditions which the legislature did not express.").

### III.

For the foregoing reasons, we REVERSE and REMAND to the district court for further proceedings consistent with this opinion.